THOMAS R. BURKE (State Bar No. 141930)
JEFF GLASSER (State Bar No. 252596)
JONATHAN L. SEGAL (State Bar No. 264238)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California 94111
Telephone: (415) 276-6500
Facsimile: (415) 276-6599
Email: thomasburke@dwt.com; jeffglasser@dwt.com; jonathansegal@dwt.com

Attorneys for Plaintiff
FIRST AMENDMENT COALITION

IN THE UNITED STATES DISTRICT COURT

THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| FIRST AMENDMENT COALITION,<br><br>Plaintiff,<br><br>vs.<br><br>U.S. DEPARTMENT OF JUSTICE,<br><br>Defendant. | Case No. **CV 12-01013 DMR**<br>Assigned to the Hon. Claudia Wilken]<br><br>**PLAINTIFF FIRST AMENDMENT COALITION'S OPPOSITION TO DEFENDANT'S MOTION FOR A STAY OF PROCEEDINGS**<br><br>Date: July 19, 2012<br>Time: 2:00 p.m.<br>Place: Courtroom 2 - 4th Floor |

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

## TABLE OF CONTENTS

Page

I. INTRODUCTION AND FACTUAL BACKGROUND ....................................................2

II. THE COURT SHOULD DENY THE GOVERNMENT'S MOTION FOR A STAY....................................................................................................................5

A. Legal Standard.....................................................................................................5

B. The Government Has Not Met the Heavy Burdens Imposed by the Ninth Circuit in *Lockyer*..........................................................................................6

1. Granting a Stay Will Damage Plaintiff by Delaying, Indefinitely, Its Ability to Vindicate Its Rights Under FOIA.......................6

2. The Government Does Not Show Any Hardship Caused by Moving Forward...........................................................................8

3. Any Interest in "the Orderly Course of Justice" Does Not Justify Staying This Case ..............................................................10

III. CONCLUSION ...........................................................................................................12

## TABLE OF AUTHORITIES

Page

**CASES**

*AmerisourceBergen Corp. v. Roden*,
495 F.3d 1143 (9th Cir. 2007) .......... 9

*Arch Ins. Co. v. Mitchell Eng'g Co.*,
2011 U.S. Dist. LEXIS 13029 (N.D. Cal. Jan. 24, 2011) .......... 5

*Beck v. U.S. Dept. of Justice*
1991 WL 519827 (D.D.C.1991) .......... 12

*Big Lagoon Rancheria v. California*,
759 F. Supp. 2d 1149 (N.D. Cal. 2010) .......... 9

*Church of Scientology v. United States Dep't of Army*,
611 F.2d 738 (9th Cir. 1979) .......... 12

*Edmonds v. F.B.I.*,
2002 WL 32539613 (D.D.C. December 03, 2002.) .......... 7

*Elec. Privacy Info. Ctr. v. DOJ*,
416 F. Supp. 2d 30 (D.D.C. 2006) .......... 7

*Favish v. Office of Indep. Counsel*,
217 F.3d 1168 (9th Cir. 2000) .......... 12

*Hall v. C.I.A*,
2005 WL 850379 (D.D.C.) (D.D.C. 2005) .......... 9

*I.K. v. Sylvan Union Sch. Dist.*,
681 F. Supp. 2d 1179 (E.D. Cal. 2010) .......... 7, 9

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936) .......... 5, 6, 7, 9

*Leadership Conf. on Civil Rights v. Gonzales*,
404 F. Supp. 2d 246 (D.D.C. 2005) .......... 7

*Leyva v. Certified Grocers of California, Ltd.*,
593 F.2d 857 (9th Cir. 1979) .......... 6, 12

*Lockyer v. Mirant Corp.*,
398 F.3d 1098 (9th Cir. 2005) .......... 5, 6, 7, 9

DAVIS WRIGHT TREMAINE LLP

*Mediterranean Enters. v. Ssangyong Corp.*, 708 F.2d 1458 (9th Cir. 1983) ........ 12

*Montez v. Chase Home Fin. LLC*, 2011 U.S. Dist. LEXIS 75563 (S.D. Cal. July 13, 2011) ........ 9

*Nielsen v. United States BLM*, 252 F.R.D. 499 (D. Minn. 2008) ........ 12

*Palomar Medical Center v. Sebelius*, 2010 WL 2985839 (S.D. Cal. 2010) ........ 8

*Smith v. Bayer Corp.*, 131 S. Ct. 2368 (2011) ........ 11

*Taylor v. Sturgell*, 553 U.S. 880 (2008) ........ 5, 10, 11

*Teague v. Alternate Energy Holdings, Inc.*, 2011 U.S. Dist. LEXIS 145844 (D. Idaho Dec. 19, 2011) ........ 8

**OTHER AUTHORITIES**

Anna Stolley Persky, Washington Lawyer, Cover Story: Lethal Force, March 2012, *available at* http://www.dcbar.org/for_lawyers/resources/publications/washington_lawyer/march_2012/lethal_force.cfm ........ 2

Letter from 25 Public Advocacy Groups to the Hon. Eric J. Holder Jr., June 18, 2012, *available at http://www.citizensforethics.org/page/-/PDFs/Legal/Letters/6-18-12_Holder_Letter_OLC_Memo.pdf?nocdn=1* ........ 2

Richard Brust, ABA Journal, Uneasy Targets: How Justifying the Killing of Terrorists Has Become a Major Policy Debate, April 1, 2012, *available at http://www.abajournal.com/magazine/article/uneasy_targets_how_justifying_the_killing_of_terrorists_has_become_a_debate/* ........ 2

DAVIS WRIGHT TREMAINE LLP

## I. INTRODUCTION AND FACTUAL BACKGROUND

Defendant United States Department of Justice ("Defendant" or "the Government") seeks a stay of this FOIA lawsuit, which involves a *single* document, pending the outcome of FOIA suits that involve different and larger amounts of government records, and are being litigated by other parties in the Southern District of New York. The Government's stay request continues a pattern of delay that is contrary to Plaintiff First Amendment Coalition's ("Plaintiff" or "FAC") rights under FOIA to pursue the expeditious release of a document that would likely give FAC *and* the general public valuable insights into the Government's prosecution of the global war on terror. Granting the Government's request for a stay would, at best, condone what appears to be a blatant attempt at forum shopping and indefinitely table Plaintiff's independent FOIA action, resulting in substantial prejudice to Plaintiff and the public. Additionally, when the district court in the Southern District of New York rendered a decision denying access to the documents, the ruling would merely be persuasive, non-binding authority on this Court. Put simply, even after a ruling in the Southern District, unless mooted, this case will move forward. Aside from any limited efficiency gained by a stay, the Government has proffered *no evidence or argument* that allowing this action to continue subjects it to in *any* hardship. Nor has the Government satisfied the other two prongs of the three-prong test for granting a discretionary stay. Accordingly, the Court should deny the Government's stay request.

On February 29, 2011, Plaintiff filed this action with a narrow objective: to obtain the expeditious release of a legal memorandum, written in early or mid-2010, concerning legal issues raised by the government's targeted killing of terrorists who are U.S. citizens living overseas. The U.S.'s actions have been subject to widespread media attention, prompting intense and widespread legal and policy debates.[1] However, these debates have lacked a critical element: the

---

[1] *See*, *e.g.*, Richard Brust, ABA Journal, Uneasy Targets: How Justifying the Killing of Terrorists Has Become a Major Policy Debate, April 1, 2012, *available at http://www.abajournal.com/magazine/article/uneasy_targets_how_justifying_the_killing_of_terrorists_has_become_a_debate/*; Anna Stolley Persky, Washington Lawyer, Cover Story: Lethal Force, March 2012, *available at* http://www.dcbar.org/for_lawyers/resources/publications/washington_lawyer/march_2012/lethal_force.cfm; Letter from 25 Public Advocacy Groups to the Hon. Eric J. Holder Jr., June 18, 2012, *available at http://www.citizensforethics.org/page/-/PDFs/Legal/Letters/6-18-12_Holder_Letter_OLC_Memo.pdf?nocdn=1*.

DAVIS WRIGHT TREMAINE LLP

memorandum that offered the Government's justification for the extra-judicial killing of Americans. That memo, prepared by the Justice Department's Office of Legal Counsel ("OLC memo"), offered a legal analysis and justification for the U.S. government's targeted killing of al-Awlaki, according to news reports. (Compl. ¶ 4.) In its original FOIA request, sent to the Government *eight months ago*, Plaintiff made clear that it was "interested only in the memorandum's discussion of the legal issues posed by prospective military action against a dangerous terrorist who also happens to be a US citizen," and disclaimed any interest in "sensitive factual information," "technology," "the country or countries involved, the extent of foreign government's cooperation, or the identity of participating government agencies." (Compl., Ex. A.) FAC intentionally kept the scope of its FOIA request and its Complaint narrow, so that its focus on the release of a single document that is central to this public controversy would expedite its public release in some fashion. Despite those efforts, and delay, the Government now seeks to stay this case indefinitely in order to adjudicate a much broader and complicated matter involving different parties in the Southern District of New York (the "New York Cases").

      The New York Cases involve separate plaintiffs, the New York Times and the American Civil Liberties Union, who are seeking a variety of documents related to the Government's targeted killing of United States citizens overseas. (*See* Request for Judicial Notice, Exs. A and B.) These cases have been filed by parties that are independent from Plaintiff's FOIA action. The defendants in the consolidated cases pending in New York include not only the United States Department of Justice, but also the United States Department of Defense, and the Central Intelligence Agency. (RJN, Exs. C and D (case dockets).) Additionally, the scope of the materials sought in the consolidated cases is far broader than the mere release of a single redacted memorandum sought by Plaintiff here. For example, the ACLU seeks the release of a veritable laundry list of records which, according to the ACLU's complaint, may include documents addressing the process by which the Government adds names to a kill list; the standards under which Americans may be put to death; and the evidentiary bases on which it concludes those standards are satisfied. (RJN Ex. 2.) Illustrating these differences, in the

parties' recently filed Joint Case Management Conference Statement, the Government affirmatively acknowledged that it was *not appropriate for these cases to be combined as Multi-District Litigation*. (Joint Case Management Conference Statement, Docket No. 23, ¶ 12.)

To date, the Government's conduct of the New York Cases has been predominantly marked by delay. The Government's summary judgment briefing in the New York Cases was initially due on April 13, 2012. On the eve of the due date – April 9, 2012 – the Government sought a 10-day extension to file its motion. (RJN Ex. D, Docket No. 6.) The court granted the extension, but noted that the Government would not receive another extension. (*Id.*) However, on April 23, 3012 – the day its briefing was due – the Government again requested an extension, this time to May 21, 2012, which the Court granted. (*Id.* at Docket No. 7, 8.) At a case management conference on May 21, 2012, the Court again gave the Government additional time to file its briefing, extending the filing deadline to June 20, 2012. (*Id.*) The Government finally filed its (47-page) summary judgment motion on June 20, 2012, more than two months after the Court's initial deadline and a full six months after the New York Times filed its original complaint. (*Id.*)

After successfully delaying the New York Cases, the Government now seeks to subject FAC to what would likely be years of delay. However, Plaintiff offers no justification for delaying Defendant's narrowly focused action.

*First*, it is clear that granting this stay will prejudice FAC by denying it the opportunity to expeditiously litigate its own case for the release of the OLC Memorandum, undistracted by the additional parties, documents and issues involved in the New York Cases. Indeed, it appears the Government is engaging in a heads-we-win/tails-you-lose litigation strategy: if it wins the New York Cases, the Government will seek to use that ruling as precedent to summarily dismiss the instant case, but if it loses the New York Cases at the district level, the Government will seek to continue the stay of this case until it can resolve the New York Cases on appeal, depriving FAC of its day in court indefinitely.

*Second*, the Government has not put forth *any* evidence or argument that moving forward with this case will cause it any hardship. Thus, the Government has failed to make out the "clear

case" required for "a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Lockyer*, 398 F.3d at 1109-10 (9th Cir. 2005) (*quoting Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)).

*Third*, the Government does not, and cannot, show that a stay is necessary to preserve the "orderly course of justice." Indeed, the United States Supreme Court has made it clear that a court should not "proscribe or confine successive FOIA suits by different requesters," stating that "Congress' provision for FOIA suits with no statutory constraint on successive actions counsels against judicial imposition of constraints," even where parties are allegedly colluding. *Taylor v. Sturgell*, 553 U.S. 880, 903-04 (2008). No such allegation of collusion exists in this case, making it even clearer that FAC has the right to proceed with its own action.

As *none* of the three factors in deciding whether to grant a discretionary stay favor the Government, the motion to stay should be denied.

## II. THE COURT SHOULD DENY THE GOVERNMENT'S MOTION FOR A STAY

### A. Legal Standard

As this Court stated in *Arch Ins. Co. v. Mitchell Eng'g Co.*, Case No. 10-04558, 2011 U.S. Dist. LEXIS 13029, 3-4 (N.D. Cal. Jan. 24, 2011), it is well-established that the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time, effort for itself, for counsel, and for litigants. The party seeking a stay must make out a clear case of hardship or inequity in being required to go forward. The Ninth Circuit requires courts to consider the competing interests at stake, including: (1) the possible damage that may result from granting the stay; (2) the hardship the party seeking the stay may suffer if required to go forward; and (3) the orderly course of justice as it relates to simplifying or complicating issues, evidence or questions of law presented in the case. *Lockyer v. Mirant Corp*., 398 F.3d 1098, 1110 (9th Cir. 2005). Quoting the United States Supreme Court in *Landis*, the Ninth Circuit stated that "A party seeking a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else. Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another

DAVIS WRIGHT TREMAINE LLP

settles the rule of law that will define the rights of both." *Id.* at 1109-10. Additionally, a "stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court." *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979).

**B. The Government Has Not Met the Heavy Burdens Imposed by the Ninth Circuit in *Lockyer***

The Government has not put forward clear arguments regarding *any* of the three factors laid out by the *Lockyer* court, let alone made the "clear case" that a discretionary stay is compelled.

**1. Granting a Stay Will Damage Plaintiff by Delaying, Indefinitely, Its Ability to Vindicate Its Rights Under FOIA**

By seeking a stay of this action until the New York Cases are resolved, whenever that may be, the Government hopes to delay this action until it receives a favorable ruling, or until the end of the appeals process, potentially years from now. In either of these scenarios, Plaintiff's rights under FOIA will be prejudiced. The Supreme Court in *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936), cautioned that "if there is even a fair possibility that the stay . . . will work damage to some one else," the party seeking the stay "must make out a clear case of hardship or inequity." FAC has been focused on eliminating delay: in order to obtain expeditious review, and likely release, of the desired information, Plaintiff framed its FOIA request and Complaint narrowly. (Compl. Ex. A.) Plaintiff seeks a specific type of information that is allegedly contained in one specific document. (Compl. ¶ 5.) Instead of moving forward with adjudication of the narrow question of whether the single slice of information sought here should be public under FOIA, the Government argues that this case should wait while another district, in another circuit, adjudicates far more detailed FOIA requests involving numerous other issues and additional parties.

The Government has already managed to delay the New York Cases by presenting Judge Colleen McMahon with sealed memoranda from the Director of the CIA and appeals for additional time directly from Attorney General Eric Holder. Given this pace, the interest in rapid adjudication of this case is more vital. FAC and the public have a substantial interest in the swift

adjudication of this litigation as cases like this one, are the subject of "widespread and exceptional media interest," and deal with "public confidence" in government institutions. *Edmonds v. F.B.I.*, Case No. 02-1294, 2002 WL 32539613 (D.D.C. December 03, 2002.) *See also Elec. Privacy Info. Ctr. v. DOJ*, 416 F. Supp. 2d 30, 41 (D.D.C. 2006) (recognizing a compelling interest in "obtaining in a timely fashion information vital to the current and ongoing debate surrounding the legality of the Administration's warrantless surveillance program," and finding that "President Bush has invited meaningful debate about the warrantless surveillance program . . . [t]hat can only occur if DOJ processes its FOIA requests in a timely fashion and releases the information sought."); *Leadership Conf. on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005) ("The importance of this issue is paramount and expedition of these documents could advance the current debate over the Voting Rights Act."). Like those cases, this case has been the subject of substantial coverage by the news media, and is a source of ongoing public debate. (*See* Joint Case Management Statement, Docket No. 23, at 2:25-3:2; 3:19-4:7; *supra* Sec. I, n.1.)

The prejudice FAC will suffer is a delay in the vindication of its statutory rights and its ability to obtain injunctive relief for years to come. Delays of this nature, as opposed to a delay in recovery of monetary damages, are the kind of prejudice that justifies the denial of a *Landis* stay. For example, in *Lockyer*, the Ninth Circuit held that the damage to a Plaintiff weighed against granting a stay because the plaintiff in that case, unlike plaintiffs who sought only damages for past harm, "seeks *injunctive relief* against ongoing and future harm." *Lockyer*, 398 F.3d at 1112 (emphasis added). Similarly, a district court held that delay in vindication of statutory rights under IDEA constituted damage to a plaintiff. *I.K. v. Sylvan Union Sch. Dist.*, 681 F. Supp. 2d 1179, 1191 (E.D. Cal. 2010) ("Plaintiffs, however, have a claim under the IDEA which provides a remedy that is different from ordinary money damages.") Like *I.K.* and *Lockyer*, the stakes in the present case are higher than mere money damages: Plaintiff seeks an injunction in order to vindicate its right to timely access information being withheld by the Government about the legality of the Government's ongoing program of targeting U.S. citizens

abroad for execution without being tried. A delay weighs heavily against granting a motion for a stay.

The possible length of the stay shows the extent of damage that Plaintiff could suffer, and further shows why a stay should be denied. Given the Attorney General's personal requests for extensions, it remains uncertain when briefing will be completed and a final ruling issued by the Court in the New York Cases. In the event the SDNY court finds for the Government, the Government will undoubtedly seek to use that opinion to dispose of this case on an expedited basis, depriving Plaintiff of its day in court. If the Government loses the SDNY case at the district level, it will likely seek a further stay of this action so that this Court could receive guidance from the Second Circuit Court of Appeals. Thus, practically speaking, the length of the stay the Government seeks is indefinite, and will likely involve years of delay. In such cases, involving shorter delays, courts have refused to issue stays. *Teague v. Alternate Energy Holdings, Inc.*, Case No. 10-cv-00634, 2011 U.S. Dist. LEXIS 145844 (D. Idaho, Dec. 19, 2011) ("The Court is not willing to impose such a lengthy stay; even if trial begins as scheduled, this matter would be stayed for nearly a year."); *Palomar Medical Center v. Sebelius*, 09-CV-605, 2010 WL 2985839, 2 (S.D. Cal., July 28, 2010) ("Because the stay requested is lengthy and its term indefinite, a greater showing of hardship or inequity is required. Palomar has not shown hardship or inequity in proceeding.").

**2. The Government Does Not Show Any Hardship Caused by Moving Forward**

Against the backdrop of the severe prejudice that FAC will face, the Government has not put forward *any* evidence or argument that moving forward in this case will cause it to suffer hardship. The requirement that a party seeking a stay make such a showing is heightened in cases, such as this one, where a party can show that issuing a stay will cause it damage. Instead of making such a showing, Defendant merely offers vague references to the interests of "judicial economy," and the "possibility of conflicting judicial decisions." (Def.'s Mot at 4.)

However, such generic concerns do not make for the "clear case" necessary for staying an action. Conflict does not constitute hardship. "[I]nsofar as the two cases are similar and conflicting findings may be reached, the mere potential for conflict in the results of adjudications

does not, without more, warrant staying exercise of federal jurisdiction. [T]he possibility of a race to judgment . . . alone is insufficient to overcome the weighty interest in the federal courts exercising their jurisdiction over cases properly before them." *I.K. v. Sylvan Union Sch. Dist.*, 681 F. Supp. 2d 1179, 1194 (E.D. Cal. 2010) *quoting AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1151 (9th Cir. 2007).

Nor does the Government's claim that "defendants may be unnecessarily defending an additional lawsuit without the benefit of a related ruling that could substantially affect the parties' positions in this matter" justify granting a stay in this instance. This Court rejected such a position in *Big Lagoon Rancheria v. California*, 759 F. Supp. 2d 1149, 1160 (N.D. Cal. 2010). In *Big Lagoon*, this Court denied the Government's request to grant a discretionary stay while the Government waited for a decision on a certiorari petition in a Ninth Circuit case which could have disposed of the issues. *Id.* Here, the Government asks the Court to delay its cases while it awaits another ruling, yet in this case, the ruling would merely be persuasive, and not controlling on the Court's resolution of this litigation. Accordingly, the Court should reject the Government's argument. *See also Hall v. C.I.A*, Case No. 04-00814, 2005 WL 850379, 5 (D.D.C., April 13, 2005) (refusing to grant the Central Intelligence Agency's motion for a stay when the CIA attempted to justify its delay because it lacked "final guidance from the Court" regarding the plaintiff's prior FOIA request).

The only actual "hardship" the Government can show is the hardship that results from having to litigate one more case. While the Government dismisses *Lockyer's* strictures as mere dicta, other courts have stated that it is "the Ninth Circuit's unequivocal holding in *Lockyer* that 'being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*." *Montez v. Chase Home Fin. LLC*, Case No. 11-CV-530, 2011 U.S. Dist. LEXIS 75563, 4-5 (S.D. Cal. July 13, 2011) (collecting cases). Because no real harm will result from moving forward here, the Government has no choice but to insist that merely being required to defend a suit causes it hardship. But its insistence is empty. The Government has vast resources, and a great number of capable attorneys available to defend both FOIA actions at once.

**3. Any Interest in "the Orderly Course of Justice" Does Not Justify Staying This Case**

The Government argues that the "particularly compelling reason" for granting a stay in this case is the fact that the New York Cases may have a "substantial impact" on the present case, assumedly because a ruling in the New York Cases will dispose of the claims here as well, or at least simplify "issues, proof, and questions of law." (Def.'s Mot. At 3.) The Government's assertion is possibly based an exaggerated notion of the importance of a ruling in the New York Cases–such a ruling, even from the Second Circuit, would merely be persuasive authority, and would not have any power to bind this court. Indeed, the Government's argument is factually and legally unjustified because of the differences between the New York Cases and the present case *and* because FOIA, as interpreted by the United States Supreme Court, clearly allows successive cases seeking the same records. Additionally, Plaintiff offers no persuasive authority for staying cases when they do not involve the same parties.

*First*, there are substantial differences between the New York Cases and the present case. Plaintiff here seeks a much narrower scope of materials than the New York plaintiffs seek there. The ACLU is seeking a panoply of information, including documents addressing the process by which the Government adds names to a kill list; the standards under which Americans may be put to death; and the evidentiary bases on which it concludes those standards are satisfied. (RJN Ex. 2.) In contrast, Plaintiff seeks specific information contained in a single memorandum. FAC's FOIA case is extremely narrow and involves only two parties. Additionally, the New York Cases involve different plaintiffs and defendants. The plaintiffs in the New York Cases, the New York Times and the ACLU, are wholly independent of Plaintiff, which is neither a media outlet nor a broad-based advocacy group. The New York Cases also have two additional parties as defendants: the United States Department of Defense and the Central Intelligence Agency. While all of the defendants in the New York Cases are federal entities, it is undeniable that each agency has a different mission and different interests.

*Second*, even when two related parties seek the same documents in successive suits, the second party is entitled to go forward with its suit. *See e.g. Taylor v. Sturgell*, 553 U.S. 880

DAVIS WRIGHT TREMAINE LLP

(2008). Thus, here, where there *is no relationship between the parties*, it is abundantly clear that FAC is not to be precluded from seeking relief even as other parties seek the same document.

In *Taylor*, the United States Supreme Court recently clarified that FOIA is designed to allow multiple actions to seeking the same information, as relief under FOIA is geared toward individual litigants and not the public at large. The Court considered whether to bar the FOIA action of an individual who sought the same records as his friend, who had unsuccessfully attempted to acquire the records in a previous FOIA action. The Court overturned lower court judgments that the FOIA suit was barred by a judgment in earlier litigation seeking the same records. *Id.* at 885. In doing so, the Court embraced the individualized nature of relief under FOIA, stating that the "Act, however, instructs agencies receiving FOIA requests to make the information available not to the public at large, but rather to the 'person' making the request." *Id.* at 902. "[A] successful FOIA action results in a grant of relief to the individual plaintiff, not a decree benefiting the public at large." *Id.* at 902-903. Accordingly, the Court found that Congress never meant to preclude successive actions seeking the same records, essentially undercutting Defendant's argument in favor of granting the stay. *See id.* ("Indeed, Congress' provision for FOIA suits with no statutory constraint on successive actions counsels against judicial imposition of constraints through extraordinary application of the common law of preclusion.").

Decisions following *Taylor* further support the embrace of an individual FOIA plaintiff's right to have its case heard, and undercut the Government's argument that "In FOIA cases, unlike other matters involving multiple cases with different plaintiffs, the release of information in one jurisdiction discloses the information in all jurisdictions, regardless of the law of particular circuits." (Def.'s Mot. at 4.) In *Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2381 (2011), the Court stated explicitly that a "series of repetitive lawsuits' demanding the selfsame documents" were allowed "even though the payoff in a single successful FOIA suit – disclosure of documents to the public – could 'trum[p]' or 'subsum[e]' all prior losses." The law on this issue is clear: the mere possibility of conflicting rulings, even when successive plaintiffs may be colluding, is not sufficient reason to deny a plaintiff its day in court, even when other rulings conflict with the

DAVIS WRIGHT TREMAINE LLP

relief sought. *See Nielsen v. United States BLM*, 252 F.R.D. 499, 509-511 (D. Minn. 2008) ("The general rule is that a litigant is not bound by a judgment to which he was not a party."); *Favish v. Office of Indep. Counsel*, 217 F.3d 1168, 1171 (9th Cir. 2000) (Rejecting collateral estoppel in *where the same attorney sought the same records in two successive cases* for different clients, because the "identity of interest between" the two clients is "an abstract interest in enforcement" of FOIA, an interest insufficient to create privity) (overturned on other grounds).

*Third*, the Government provides no compelling authority to support its argument that a stay is justified by the pursuit of the "orderly course of justice." The two FOIA cases cited by the Government are easily distinguished from the present case. In both *Church of Scientology v. United States Dep't of Army*, 611 F.2d 738, 750 (9th Cir. 1979), and *Beck v. U.S. Dept. of Justice*, Case No. 88-3433, 1991 WL 519827, 1 (D.D.C., January 31, 1991), courts deferred to other court's rulings in FOIA cases when the cases involved *the same plaintiffs seeking the same documents in two different venues*. In the present case, FAC is independent from the plaintiffs in the New York Cases, and seeks only one document, which may or may not be subsumed within the New York Cases requests.

The other two cases cited by Plaintiff in support of its argument are similarly inapplicable: both *Mediterranean Enters. v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983), and *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 860 (9th Cir. 1979) are not dispositive, as they are cases being stayed during pendency of an arbitration between *the same two parties*. Here, the cases all involve different parties. More importantly, while an arbitration ruling on a specific issue carved out of a larger case would likely be binding on a trial court, any finding in the New York Cases, save for a Supreme Court ruling, would not be binding on this Court, as the New York Cases are outside the Ninth Circuit.

## III. CONCLUSION

The Government has failed to make a "clear case" justifying a discretionary stay, and cannot meet its burden to do so, because no compelling reason exists to delay FAC's action indefinitely. Additionally, unlike the litigants in the New York Cases, FAC's FOIA request is extremely narrow and limited. Unlike FAC, who suffers the risk of indefinite delay, the

Government has not, and cannot, show that it will be prejudiced by moving forward. Accordingly, the Court should deny the Government's motion for a stay and instead, set a briefing schedule for the parties' cross-motions for summary judgment.

DATED: This 26 day of June, 2012　　　　　DAVIS WRIGHT TREMAINE LLP

By: /s/ Thomas R. Burke
　　Thomas R. Burke
　　Attorneys for Plaintiff
　　FIRST AMENDMENT COALITION