IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

FIRST AMENDMENT COALITION,            No. C 12-1013 CW

    Plaintiff,                    ORDER DENYING IN
                                      PART, AND GRANTING
  v.                                  IN PART, MOTION TO
                                      STAY PROCEEDINGS
U.S. DEPARTMENT OF JUSTICE,           (Docket No. 20)
                                      AND DIRECTING
    Defendant.                    PARTIES TO MEET
                                      AND CONFER
_____/

Defendant United States Department of Justice (DOJ) moves to stay this case pending resolution of two related cases ongoing before the United States District Court for the Southern District of New York. Plaintiff First Amendment Coalition (FAC) opposes DOJ's motion. The Court takes the motion under submission on the papers. Having considered the papers submitted by the parties, the Court GRANTS the motion in part and DENIES it in part.

## BACKGROUND

In September 2011, Anwar al-Awlaki, a United States citizen and a supporter and propagandist for Al Qaeda in the Arabian Peninsula, was killed. Compl. ¶ 3; Answer ¶ 3. FAC alleges that his death was the result of a United States drone strike in Yemen. Compl. ¶ 3. Al-Awlaki was believed by United States officials to have taken on an operational role in organizing terrorist attacks against the United States. Compl. ¶ 3; Answer ¶ 3. President Obama, in multiple statements, addressed al-Awlaki's death. Compl. ¶ 3. The President said that the killing of al-Awlaki was a "success" that is a "tribute to our intelligence community."

Id.  The President also said, of the attack on al-Awlaki, that "we were able to remove him from the field."  Compl. ¶ 3.

In October 2011, the New York Times, the Washington Post and other news organizations reported on a purported DOJ legal memorandum, written in early or mid-2010, concerning legal issues raised by the government's targeted killing of terrorists who are United States citizens.  Compl. ¶ 4.  According to news reports, the memorandum was prepared by DOJ's Office of Legal Counsel (OLC) and provided a legal analysis and justification for the United States government's targeted killing of al-Awlaki.  Compl. ¶ 4.

On October 5, 2011, FAC made a written Freedom of Information Act (FOIA) request to DOJ, seeking

> A legal memorandum prepared by OLC concerning the legality of the lethal targeting of Anwar al-Aulaqi, an American-born radical cleric who, according to federal government officials, was killed September 30, 2011 in a U.S. drone strike in Yemen.  The memorandum was the subject of a story ("Secret U.S. memo sanctioned killing of Aulaqi") in the September 30, 2011 Washington Post, in which multiple (albeit unnamed) administration officials discussed the memorandum and internal government debates on the legal issues addressed in it.

Compl. ¶ 11, Ex. A, 1.  FAC acknowledged, "The memorandum is almost certainly classified," and noted that it was "not interested in factual information about intelligence sources and methods or US military capabilities," but rather "only in the memorandum's discussion of the legal issues posed by prospective military action against a dangerous terrorist who also happens to be a US citizen."  Id.  It asked that "all sensitive factual information" be redacted and that the "discussion of legal issues" be released.  Id.

2

On October 25, 2011, DOJ responded to the FAC's request. Compl. ¶ 12, Ex. B. It stated that it "neither confirms nor denies the existence of the document described in your request, . . . because the very fact of the existence or nonexistence of such a document is itself classified, protected from disclosure by statute, and privileged." Id.

On December 12, 2011, FAC filed an administrative appeal of DOJ's denial of its FOIA request. Compl. ¶ 13. DOJ did not respond within the time allowed by statute. Compl. ¶ 14.

On February 29, 2012, FAC filed this case, seeking release the OLC memorandum. Docket No. 1.

On June 12, 2012, DOJ filed the instant motion, seeking to stay the proceeding before this Court, until the SDNY reaches a decision on a pending motion for summary judgment in the two related FOIA actions currently before that court. Docket No. 20.

In the first SDNY case, filed on December 20, 2011, the plaintiffs, the New York Times and two of its reporters, seek documents pursuant to two FOIA requests. See New York Times Co. v. United States Dept. of Justice, Case No. 11-9336 (SDNY) (New York Times). The first request, originally made on June 11, 2010, sought release of "copies of all Office of Legal Counsel opinions or memoranda since 2001 that address the legal status of targeted killing, assassination, or killing of people suspected of ties to Al Qaeda or other terrorist groups by employees or contractors of the United States government." New York Times Compl. ¶ 37. The second New York Times request, made on October 7, 2011, sought a copy of "all Office of Legal Counsel memorandums analyzing the circumstances under which it would be lawful for United States

3

armed forces or intelligence community assets to target for killing a United States citizen who is deemed to be a terrorist." Id. at ¶ 44. DOJ denied both requests on October 27, 2011, stating that it neither confirmed nor denied the existence of documents described in the requests. Id. at ¶¶ 38-40, 45-46.

In the second SDNY case, filed on February 1, 2012, the plaintiffs, the American Civil Liberties Union and the American Civil Liberties Union Foundation (collectively referred to hereinafter as the ACLU), pursue one broad record request made to DOJ, as well as to the Department of Defense (DOD) and the Central Intelligence Agency (CIA). See American Civil Liberties Union v. United States Dept. of Justice, Case No. 12-794 (SDNY) (ACLU). In that request, made on October 19, 2011, the ACLU sought multiple categories of documents, including records related to the "legal authority and factual basis for the targeted killing" of al-Awlaki and two other United States citizens. ACLU Compl. ¶ 30. On October 27, 2011, DOJ informed the ACLU that it would not be able to respond to the request within the statutory deadline. Id. at ¶ 33. The ACLU received no further correspondence from DOJ. Id. at ¶ 34.

After the government requested and received three extensions of time, it filed a joint motion for summary judgment in the ACLU and New York Times cases. The plaintiffs filed their oppositions and cross-motions for summary judgment on July 18, 2012. Defendant represents that "it seems likely that any additional briefing will be completed before the end of August." Mot. at 20.

4

LEGAL STANDARD

It is well-established that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time, effort for itself, for counsel, and for litigants." Landis v. North Am. Co., 299 U.S. 248, 254 (1936). The Supreme Court in Landis explained that the party seeking a stay bears the burden of proving "a clear case of hardship or inequity" if it is required to go forward in this action. Id. at 255. Based on Landis, the Ninth Circuit requires courts to consider the competing interests at stake, including (1) the possible damage that may result from granting the stay; (2) the hardship the party seeking the stay may suffer if required to go forward; and (3) the orderly course of justice as it relates to simplifying or complicating issues, evidence or questions of law presented in the case. Lockyer v. Mirant Corp., 398 F.3d 1098, 1110 (9th Cir. 2005).

DISCUSSION

DOJ has not established that it will face a hardship if the instant case proceeds prior to the resolution of the pending motion for summary judgment in the SDNY cases. DOJ argues that it "is faced with the possibility of conflicting judicial decisions in multiple circuits related to identical information, making it difficult to manage conflicting decisions and litigation in varying stages." Mot. at 4; Reply at 4. It further contends, "Conflicting decisions can effectively nullify the holdings of other circuits, and unnecessarily compromise the Government's ability to protect privileged information," resulting in hardship to it. Reply at 4. The government, however, does not explain how

5

1 multiple FOIA cases "unnecessarily compromise" its "ability to
2 protect privileged information." The only way that these
3 proceedings will compromise the government's ability to withhold
4 information is if a court determines that the information is not
5 subject to a FOIA exemption, in which case the government does not
6 have a legitimate interest in withholding it from public
7 disclosure.

8 Further, the Supreme Court has clearly stated that
9 "conflicting decisions," such as those described by the
10 government, are acceptable in FOIA cases. In Taylor v. Sturgell,
11 553 U.S. 880 (2008), the Court held that a party is not barred
12 from bringing a successive suit seeking the same documents under
13 FOIA that were the subject of an adverse ruling in a prior suit
14 against a previous requester. Id. at 903-04. In describing its
15 ruling in Taylor, the Supreme Court said recently, "The Government
16 there cautioned that unless we bound nonparties a 'potentially
17 limitless' number of plaintiffs, perhaps coordinating with each
18 other, could 'mount a series of repetitive lawsuits' demanding the
19 selfsame documents. . . . But we rejected this argument, even
20 though the payoff in a single successful FOIA suit--disclosure of
21 documents to the public--could 'trum[p]' or 'subsum[e]' all prior
22 losses, just as a single successful class certification motion
23 could do." Smith v. Bayer Corp., 131 S. Ct. 2368, 2381 (2011).
24 In the case at hand, FAC is ready to proceed with this
25 action, including by filing a motion for summary judgment.
26 Because DOJ has already filed a summary judgment motion in the
27 SDNY cases, in which the plaintiffs pursue broader document
28 requests that include the single document at issue here, it should

6

1 not be difficult for DOJ to file a cross-motion for summary
2 judgment here.

3     Thus, the Court declines to stay the proceedings completely
4 and requires the parties to file cross-motions for summary
5 judgment.  However, in the interest of judicial economy, the Court
6 will stay ruling on the motions until the SDNY has issued its
7 ruling on the motion already pending before it.  If the SDNY
8 orders disclosure of the memorandum, this case may be rendered
9 moot.  However, as DOJ acknowledges, if the SDNY declines to
10 require disclosure of the memorandum, this Court will be required
11 to address separately the merits of this suit.  See Reply at 4
12 n.2.  See also Taylor, 553 U.S. at 903 (recognizing that there are
13 no legislative constraints on successive FOIA suits by different
14 requesters and declining to impose a judicial constraint through
15 preclusion).

16     CONCLUSION

17     For the reasons set forth above, DOJ's motion to stay is
18 GRANTED IN PART and DENIED IN PART (Docket No. 20).

19     The parties are directed to meet and confer regarding a
20 briefing schedule for their cross-motions for summary judgment.
21 The schedule shall provide that the parties' briefs are filed in
22 series, not simultaneously, with as little repetition as possible.
23 FAC shall move for summary judgment first, in a brief of twenty-
24 five pages or less.  The government shall then file its opposition
25 to FAC's motion and its cross-motion for summary judgment, both
26 contained in a single brief of twenty-five pages or less.  FAC
27 shall then file its reply in support of its motion and its
28 opposition to the government's cross-motion, in a single brief of

7

fifteen pages or less.  The government shall then file its reply in support of its cross-motion, in a brief of fifteen pages or less.  Within two weeks of the date of this Order, the parties shall file a stipulated briefing schedule or, if they are not able to reach an agreement, their separate proposals.

The Court will not rule on the cross-motions for summary judgment until the SDNY issues its decision resolving the motions currently pending before it.  The parties shall notify the Court of the SDNY's ruling within three days of the date on which it is issued.  The Court will set a hearing date on the cross-motions for summary judgment at that time, and may request supplemental briefing addressing the SDNY's opinion prior to the hearing.

IT IS SO ORDERED.

Dated: 7/24/2012

CLAUDIA WILKEN
United States District Judge