EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————— x

THE NEW YORK TIMES COMPANY, et al.,

              Plaintiffs,

    v.                                        11 Civ. 9336 (CM)

U.S. DEPARTMENT OF JUSTICE, et al.,

              Defendants.

———————————————————— x

AMERICAN CIVIL LIBERTIES UNION et al.,

              Plaintiffs,

    v.

U.S. DEPARTMENT OF JUSTICE, et al.,          12 Civ. 794 (CM)

              Defendants.             **ECF CASE**

———————————————————— x

## DECLARATION OF JOHN E. BIES

I, John E. Bies, declare as follows:

      1.    I am a Deputy Assistant Attorney General in the Office of Legal Counsel ("OLC") of the United States Department of Justice (the "Department"). My responsibilities include the supervision of OLC's responses to requests it receives under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. I submit this declaration in support of the Government's Motion for Summary Judgment in these consolidated proceedings. These statements are based on my personal knowledge, on information provided to me by OLC attorneys and staff working under my direction, and on information provided to me by others

within the Executive Branch of the Government. I have also provided a classified declaration *ex parte* and under seal with additional information for the Court.

## OLC'S RESPONSIBILITIES

2.      The principal function of OLC is to assist the Attorney General in his role as legal adviser to the President of the United States and to departments and agencies of the Executive Branch. OLC provides advice and prepares opinions addressing a wide range of legal questions involving the operations of the Executive Branch. OLC does not purport to make policy decisions, and in fact lacks authority to make such decisions. OLC's legal advice and analysis may inform the decision-making of Executive Branch officials on matters of policy, but OLC's legal advice is not itself dispositive as to any policy adopted.

3.      Although OLC publishes some opinions and makes discretionary releases of others, OLC legal advice is generally kept confidential. One important reason OLC legal advice often needs to stay confidential is that it is part of a larger deliberative process—a process that itself requires confidentiality to be effective. If government agencies and OLC had to conduct deliberations with knowledge that their deliberations were open to public view, such discussions would naturally be chilled or inhibited, and the efficiency of government policy making would suffer as a result.

4.      These deliberative confidentiality concerns apply with particular force to OLC advice because of OLC's role in the decision-making process: OLC is often asked to provide advice and analysis with respect to very difficult and unsettled issues of law. Frequently, such issues arise in connection with highly complex and sensitive activities of the Executive Branch on matters that can be quite controversial. So that Executive Branch officials may continue to request, receive, and rely on candid legal advice from OLC on such sensitive matters, it is

essential that OLC legal advice provided in the context of internal deliberations not be inhibited by concerns about public disclosure.

5.     The foregoing considerations regarding the need for confidential Executive Branch deliberations are particularly compelling in the context of the provision of legal advice, given the nature of the attorney-client relationship.  There is a special relationship of trust between a client and an attorney when the one seeks and the other provides independent legal advice.  When the advice is provided in confidence, it is protected from compelled disclosure. As the Supreme Court has observed, "[t]he attorney-client privilege is the oldest of the privileges for confidential communications known to the common law.  Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).  It is critical to protect this relationship of trust in the governmental context, to ensure such full and frank communication between governmental attorneys and their clients, and thereby promote such broader public interests in the government's observance of law and the administration of justice.  The free and candid flow of information between agency decision-makers and their outside legal advisers depends on the decision-makers' confidence that such advice will remain confidential.  Moreover, disclosure of legal advice may often reveal confidential communications from agency clients made for the purposes of securing advice.

6.     When requested to provide counsel on the law, OLC attorneys stand in a special relationship of trust with their agency clients.  Just as disclosure of client confidences in the course of seeking legal advice would seriously disrupt the relationship of trust so critical when attorneys formulate legal advice to their clients, disclosure of the advice itself would be equally disruptive to that trust.  Thus, the need to protect the relationship of trust between OLC and the

3

client seeking its legal advice provides an additional reason OLC legal advice often needs to stay confidential.

       7.     The interests protected by the deliberative process and attorney-client privileges continue to apply fully to confidential OLC legal advice in circumstances where the Executive Branch or one of its departments or agencies elects, in the interest of transparency, to explain publicly the Executive Branch's understanding of the legal basis for current or contemplated Executive Branch conduct. There is a fundamental distinction between an explanation of the rationale and basis for a decision, which would not be privileged, and advice received prior to making a decision, which is privileged. Thus, there is no disclosure of privileged legal advice, and therefore no waiver of attorney-client privilege, when, as part of explaining the rationale for its actions or policies, the Executive Branch explains its understanding of their legal basis without reference to any confidential legal advice that Executive Branch decisionmakers may have received before deciding to take the action or adopt the policy. Likewise, confidential advice does not lose the protection of the deliberative process privilege simply because the Executive Branch explains the basis or rationale for its actions or policies without referring to that advice; rather, confidential deliberative advice loses this protection only through adoption, *i.e.*, if the advice is expressly adopted as part of the explanation of the rationale for the decision. I strongly believe that if merely explaining publicly the legal basis for Executive Branch conduct were understood to remove the protection of the deliberative process and attorney-client privileges from the confidential legal advice provided as part of the Executive Branch's internal deliberations, it would substantially harm the ability of Executive Branch decisionmakers to request, receive, and rely upon full and frank legal advice from government lawyers as part of

the decisionmaking process, and it would also harm the public by discouraging the Executive

Branch from explaining its understanding of the legal basis for its actions publicly in the future.

## PLAINTIFFS' FOIA REQUESTS

### *The New York Times' FOIA Requests*

8.     On June 24, 2010, OLC received a request dated June 11, 2010 from New York

Times reporter Scott Shane. See Ex. A, attached (the "Shane Request"). The Shane Request

sought "copies of all Office of Legal Counsel opinions or memoranda since 2001 that address the

legal status of targeted killing . . . of people suspected of ties to Al Qaeda or other terrorist

groups by employees or contractors of the United States government." The Shane Request

specifically encompassed "legal advice . . . to the military [or] the Central Intelligence Agency."

9.     By letter dated October 27, 2011, OLC Special Counsel Paul Colborn responded

to the Shane Request on behalf of OLC. *See* Ex. B, attached. Insofar as the Shane Request

pertains to the Department of Defense, OLC responded that it had searched its files and

processed responsive records, and was withholding all such records pursuant to Exemptions One,

Three, and Five. OLC further responded that, insofar as the Shane Request pertains to any other

agencies of the United States Government, pursuant to FOIA Exemptions One, Three, and Five,

OLC neither confirmed nor denied the existence of the documents described in the request.

10.     On October 7, 2011, OLC received a request dated the same day from New York

Times reporter Charlie Savage, seeking "a copy of all Office of Legal Counsel memorandums

analyzing the circumstances under which it would be lawful for United States armed forces or

intelligence community assets to target for killing a United States citizen who is deemed to be a

terrorist." *See* Ex. C, attached (the "Savage Request"). Mr. Savage asserted in his request that

"this matter is of pressing public interest because of the recent death in Yemen of Anwar Al-

Awlaki, a United States citizen who has been accused of being an 'operational' terrorist with the group Al Qaeda in the Arabian Peninsula."

11.     By letter dated October 27, 2011, Mr. Colborn responded to the Savage Request on behalf of OLC. *See* Ex. D, attached.  Interpreting the request as seeking OLC opinions pertaining to al-Aulaqi, OLC neither confirmed nor denied the existence of such documents, pursuant to FOIA Exemptions One, Three, and Five.

12.     On November 4, 2011, the New York Times Company ("the New York Times") filed an appeal of OLC's decision with the Department of Justice's Office of Information Policy ("OIP") on behalf of Messrs. Shane and Savage.

13.     On December 20, 2011, before OIP had ruled on the New York Times' administrative appeal, the New York Times and its reporters filed this lawsuit.

### *The ACLU FOIA Request*

14.     On October 24, 2011, OLC received a FOIA request dated October 19, 2011, from Nathan Freed Wessler on behalf of the American Civil Liberties Union Foundation (together with the American Civil Liberties Union, hereinafter the "ACLU"), requesting all records "pertaining to the legal basis in domestic, foreign, and international law upon which U.S. citizens can be subjected to targeted killings" and "the process by which U.S. citizens can be designated for targeted killings, including who is authorized to make such determinations and what evidence is needed to support them," as well as a variety of records relating to three individuals alleged to have been targeted, Anwar al-Aulaqi, Samir Kahn, and Adbulrahman al-Aulaqi. *See* Ex. E, at 5-6 (ACLU FOIA Request (October 19, 2011)).

15.     By letter dated November 14, 2011, Mr. Colborn responded to Mr. Wessler on behalf of OLC, interpreting the request as seeking OLC opinions pertaining to those three

individuals and informing him that, pursuant to FOIA Exemptions One, Three, and Five, OLC

"neither confirms nor denies the existence of the documents described in your request" because

"the very fact of the existence or nonexistence of such documents is itself classified, protected

from disclosure by statute, and privileged." *See* Ex. F (OLC Response (November 14, 2011)).

Mr. Colborn also informed Mr. Wessler that he had the right to appeal OLC's processing of the

request to OIP. On December 6, 2011, the ACLU filed an appeal of OLC's decision with OIP.

16.     On February 29, 2012, before OIP had ruled on the ACLU's administrative

appeal, the ACLU filed this lawsuit.

17.     By letter dated April 3, 2012, Eric A. O. Ruzicka, counsel to the ACLU, informed

Sarah Normand, an Assistant United States Attorney for the Southern District of New York who

represents the government in this matter, that the ACLU "agrees to exclude from the first

category of its request all draft legal analyses," but that the ACLU did not agree "to exclude

internal communications, including e-mails." *See* Ex. G (ACLU Letter (April 3, 2012)).

## OLC'S SEARCH

18.     There are a number of locations where OLC's substantive records are stored.

OLC's unclassified substantive records may be located in the paper files of individual OLC

employees or stored electronically in two types of electronic systems: a shared central storage

system for the office's final unclassified work product and the computer accounts of individual

employees. The central storage system consists of documents in their original file format (e.g.,

Microsoft Office, WordPerfect, PDF) collected in folders, which are organized by date, on a

shared network drive on the Department of Justice electronic file server. It is OLC's practice to

save all final unclassified work product to this central storage system; accordingly, if OLC has

provided any unclassified written advice or has memorialized any unclassified oral advice in

writing, that advice should be accessible through this system. OLC uses a sophisticated search engine, called Isys Search Software ("Isys"), to perform keyword searches of this collection of final work product files. Isys searches the full text of documents (including PDF files) within this collection of final work product, as opposed to searching only document titles or e-mail subject lines.

19.     In addition, OLC may have classified substantive records that could be responsive to a FOIA request. Paper files containing classified documents must be stored either in individual safes or in OLC's Sensitive Compartmented Information Facility ("SCIF"). These paper files include classified records that are not part of any individual custodian's files but rather are maintained as a part of the Office's records regarding final classified legal advice that has been provided by OLC. Electronic classified records might also be stored in a secure computer system, in which records might be located in the accounts of individual users, in shared folders, or in the classified email accounts of individual users.

*The Search for Documents Responsive to the New York Times' FOIA Requests*

20.     In October 2011, an OLC attorney initiated a search for records responsive to the Shane and Savage requests, including any final legal advice provided by OLC with respect to the subjects of these requests located either in the Isys database or in secure locations identified by a senior career OLC attorney as locations that possibly could contain potentially responsive records. All such locations identified were searched.

21.     Insofar as the Shane request pertains to the Department of Defense ("DoD"), OLC's search identified one responsive document. This document is also responsive to the Savage request. The document is exempt from disclosure pursuant to FOIA Exemptions One,

Three, and Five, 5 U.S.C. § 552(b)(1), (3), and (5), because it is classified, protected from disclosure by statute, and protected by the deliberative process and attorney-client privileges.

22.     With respect to documents responsive to the Shane or Savage requests that relate to the activity of any agencies of the United States Government other than the Department of Defense, OLC has not acknowledged the existence or nonexistence of any additional responsive documents. I understand that John Bennett of the Central Intelligence Agency ("CIA") will file a declaration with the Court in support of the position that the existence or nonexistence of documents responsive to these requests relating to the activities of the CIA is exempt from disclosure under FOIA.

### *The Search for Documents Responsive to the ACLU's FOIA Request*

23.     In October or early November 2011, an OLC attorney initiated a search for records responsive to the ACLU's request, including any final legal advice provided by OLC with respect to the subjects of these requests located either in the Isys database or in secure locations identified by a senior career OLC attorney as locations that possibly could contain potentially responsive records. All such locations identified were searched.

24.     In April 2012, a paralegal employed at OLC used Isys to perform additional keyword searches of OLC's central storage system of all unclassified, final OLC advice. The keyword terms used in those searches are listed in Exhibit H, attached hereto. In performing these searches, the paralegal ran a separate search with each of the listed terms or phrases, without connectors joining the separate terms or phrases. OLC's paralegals use Isys on a regular basis and are experienced in running searches such as the ones conducted here.

25.     OLC is a very small component of the Department of Justice, employing approximately twenty to twenty-five attorneys at any one time. In consultation with OLC

attorneys likely to be familiar with the assignment of OLC attorneys on national security matters, OLC identified four current and four former attorneys as individual custodians who might potentially have records responsive to the ACLU's request.[1]

26.    With each of the four current employees identified as potential custodians of responsive records, an OLC attorney discussed locations where potentially responsive documents might be located, and the paper files of each attorney were searched for potentially responsive documents. Where the current employee indicated specific locations in his or her electronic or e-mail files where potentially responsive materials might be found, those locations were also searched for potentially responsive documents. In addition, an OLC attorney discussed with each of the identified custodians who are current employees if there were secure locations in individual safes or in the SCIF that should be searched for potentially responsive classified records, and any locations so identified were also searched for potentially responsive documents. An OLC paralegal also reviewed any individual paper files left by the four departed custodians for potentially responsive documents.

27.    An OLC attorney or paralegal also conducted keyword searches of the e-mails of the four current employees identified as potential custodians. The same keyword searches were also conducted for the departed user e-mail accounts of the four identified employees who were no longer employed at OLC at the time of the searches. The keyword terms used in these searches are listed in Exhibit H, attached hereto. Using the identified search terms with no connectors, the paralegals used the Microsoft Outlook program to search the e-mail files of the identified custodians. These searches included both the custodian's unclassified e-mail account well as any classified e-mail accounts the custodian had.

---

[1]  A fifth employee identified as potentially having responsive records, an attorney adviser, was on maternity leave at the time of the search. That attorney indicated that any potentially responsive records in her files would almost certainly be duplicates of materials in the possession of the custodians who were searched.

28.     The searches identified 62 documents as responsive to the ACLU's request that
are not classified or specifically protected from disclosure under FOIA by statute. Two of those
documents were referred to OIP for processing. The remaining 60 documents are exempt from
disclosure under Exemption Five of FOIA, 5 U.S.C. § 552(b)(5), because they are protected by
the deliberative process and attorney-client privileges. The searches also identified additional
responsive records marked as classified or protected from disclosure by statute, which are all
exempt from disclosure under FOIA Exemptions One, Three, and/or Five, 5 U.S.C. § 552(b)(1),
(3), and (5). In addition, I have been advised that certain information relating to the personnel of
other agencies reflected in the documents is also protected by FOIA Exemption Six, 5 U.S.C.
§ 552(b)(6).

## DOCUMENTS AT ISSUE

29.     I am personally familiar with the withheld documents that are at issue in this case.

*Withholdings Pursuant to Exemption Five for the New York Times Requests*

30.     OLC identified one OLC opinion pertaining to the Department of Defense marked
classified as responsive to the Shane and Savage requests. That OLC opinion contains
confidential legal advice to the Attorney General, for his use in interagency deliberations,
regarding a potential military operation in a foreign country. This document is wholly exempt
from disclosure under Exemption Five because it is protected by the deliberative process and
attorney-client privileges.

31.     This document is protected by the deliberative process privilege because it is
confidential, pre-decisional, and deliberative. The document is pre-decisional because it was
prepared in advance of Executive Branch decisions regarding a potential military operation in a
foreign country, and it is deliberative because it contains confidential legal advice by OLC

11

attorneys to other Executive Branch officials in connection with potential decisions regarding such an operation. Consequently, this document falls squarely within the protection of the deliberative process privilege. Compelled disclosure of this document would undermine the deliberative processes of the Government and chill the candid and frank communications necessary for effective governmental decision-making.

32.     As confidential legal advice provided by OLC to an Executive Branch client, this document is also protected by the attorney-client privilege. The foregoing considerations regarding the need for confidential deliberations are particularly compelling in the context of the provision of legal advice by OLC. The document reflects confidential communications between OLC and Executive Branch clients made for the purpose of providing legal advice. In providing the legal advice contained in the opinion, OLC was serving an advisory role as legal counsel to the Executive Branch. Having been requested to provide counsel on the law, OLC stood in a special relationship of trust with the Attorney General, as well as other participants in the interagency deliberations in connection with which the advice was prepared. Just as disclosure of client confidences in the course of seeking legal advice would seriously disrupt the relationship of trust so critical when attorneys formulate legal advice to their clients, disclosure of the advice itself would be equally disruptive to that trust.

### *Withholdings Pursuant to Exemption Five for the ACLU Request*

33.     All of the unclassified documents not protected from disclosure by statute identified as responsive to the ACLU's request are exempt from disclosure under Exemption Five because they are protected by the deliberative process and the attorney-client privileges. These documents are described in greater detail in the index attached as Exhibit I to this declaration.

12

34.     As delineated in that index, Documents 1 and 2 are Department of Justice or Executive Branch interagency e-mails containing legal deliberations concerning potential statements regarding the legal basis for the use of lethal force in a foreign country against U.S. citizens in certain circumstances.

35.     Documents 3 to 8 are Department of Justice or Executive Branch interagency e-mails containing legal deliberations regarding draft question & answer talking points on the legal basis for the use of lethal force in a foreign country against U.S. citizens in certain circumstances.

36.     Documents 46 to 48 are internal OLC, Department of Justice, or Executive Branch interagency e-mails containing legal deliberations concerning draft legal analysis regarding the application of domestic and international law to the use of lethal force in a foreign country against U.S. citizens in certain circumstances.

37.     Documents 9 to 45 and 49 to 60 are Department of Justice or Executive Branch interagency e-mails containing legal deliberations concerning draft legal analysis and potential public statements regarding the legal basis for the use of lethal force in a foreign country against U.S. citizens in certain circumstances. All but three of these documents related to precursors of, and culminated in, the Attorney General's March 5, 2012 speech at Northwestern University School of Law, available at http://www.justice.gov/iso/opa/ag/speeches/2012/ag-speech-1203051.html.

38.     In addition to these documents, OLC's search also located responsive documents marked classified or protected from disclosure by statute. The documents marked classified include one OLC opinion related to DoD operations. This material is being withheld in full, and OLC has been advised that it cannot be further identified or described on the public record,

pursuant to Exemptions One and Three, 5 U.S.C. § 552(b)(1), (3). I understand that John
Hackett of the Office of the Director of National Intelligence ("ODNI") will file a declaration
with the Court that will provide further information regarding this determination.

39.     All of the unclassified OLC documents—and, except as noted in my classified *ex
parte* declaration, all of the classified OLC documents—are protected by the deliberative process
privilege because they are confidential, pre-decisional, and deliberative. As legal deliberations
or legal advice, these documents are (a) pre-decisional, *i.e.*, were prepared in advance of
Executive Branch decisionmaking; and (b) deliberative, *i.e.*, reflect advice, the preparation of
advice, or other deliberations by OLC attorneys or other Executive Branch officials in
connection with that decisionmaking. Consequently, these documents fall squarely within the
protection of the deliberative process privilege. Compelled disclosure of these documents would
undermine the deliberative processes of the Government and chill the candid and frank
communications necessary for effective governmental decision-making.

40.     Many of these documents are deliberations regarding and comments on draft legal
analysis. There is a strong need for confidentiality with respect to drafts and other preliminary
work product. By their very nature, these drafts are pre-decisional and deliberative—part of the
exchange of ideas and suggestions that accompanies careful Executive Branch decisionmaking.
Drafts are especially sensitive in the deliberative process within OLC, where OLC attorneys
make extensive use of drafts to focus, articulate, and refine their legal advice and analysis.
Compelled disclosure of such preliminary analysis would seriously inhibit the candor and
effectiveness of the advisers engaged in this highly deliberative process, and the quality and
integrity of the final result would inevitably suffer.

41.     As part of its deliberative process in the preparation of legal advice for client agencies, OLC seeks and receives input from client agencies concerning legal theories and arguments and sometimes will share aspects of draft legal analysis with client agencies for input and comment. When formulating its legal advice, OLC depends upon these submissions and input by officials of the client agencies with knowledge or expertise in relevant subject matters. The confidentiality of this input allows OLC to receive candid and fully reasoned legal arguments from client agencies. Like draft legal analysis, the confidentiality of this input also is integral to the deliberative processes of the Office, and such input is likewise protected by the deliberative process privilege.

42.     In addition, all 60 documents listed in Exhibit I—and, except as noted in my classified *ex parte* declaration, all of the classified OLC documents—are protected by the attorney-client privilege. The responsive documents either (a) are confidential legal advice provided to OLC's Executive Branch clients; (b) reflect confidential communications between OLC and Executive Branch clients made for the purpose of providing legal advice; and/or (c) are internal drafts by OLC attorneys that contain confidences OLC received from its Executive Branch clients for the purpose of providing legal advice. As such, these documents fall squarely within the attorney-client privilege. The foregoing considerations regarding the need for confidential deliberations are particularly compelling in the context of the provision of legal advice by OLC.

### *Withholdings Pursuant to Exemptions One and Three*

43.     In connection with seeking advice from OLC, OLC's Executive Branch clients sometimes provide OLC with classified information or other information specifically protected from disclosure under FOIA by statute. OLC does not have original classification authority, but

15

when it receives or makes use of classified information provided to it by its clients, OLC is required to mark and treat that information as derivatively classified to the same extent as its clients have identified such information as classified. Accordingly, all classified information in OLC's possession or incorporated into its products has been classified by another agency or component with original classifying authority.

44.     I am familiar with the documents marked classified that are at issue in this case. These documents are marked as classified because they were marked as classified when OLC received them or because they contain information OLC received from other components or agencies that was marked as classified. OLC has also been informed that information contained in these documents is protected from disclosure under FOIA by statute.

45.     Accordingly, OLC also withheld these documents at issue pursuant to Exemptions One and Three. Exemption One, 5 U.S.C. § 552(b)(1), exempts documents classified in the interest of national defense or foreign policy pursuant to an Executive Order from disclosure under FOIA. Exemption Three, 5 U.S.C. § 552(b)(3), exempts documents "specifically exempted from disclosure by statute" from disclosure under FOIA. *See* Paragraph 38, *supra.*

### *Withholdings Pursuant to Exemptions Six*

46.     I have been advised that some of the identified responsive OLC documents include the names of employees at other departments and agencies whose identity is protected by Exemption Six, which exempts the disclosure of records which would otherwise constitute a "clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The names of these employees are withheld on this additional basis as well. *See* Declaration of John Hackett, ODNI, at ¶ 32.

16

* * * * * * *

47.     In conclusion, I respectfully submit that, except as noted in my classified *ex parte*
declaration, all of the identified responsive documents are covered by the deliberative process
privilege and/or the attorney-client privilege, and accordingly fall squarely within Exemption
Five.  The compelled disclosure of these documents would harm the deliberative processes of the
government and would disrupt the attorney-client relationship between OLC and its clients
throughout the Executive Branch.

I declare under penalty of perjury that the foregoing is true and correct.

Executed: June 20, 2012

_____
JOHN E. BIES