STUART DELERY
Assistant Attorney General

ELIZABETH J.  SHAPIRO
Deputy Director

AMY POWELL
Trial Attorney
Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W., Room 5377
Washington, D.C. 20001
Telephone: 202-514-9836
Facsimile: 202-616-8517
Amy.Powell@usdoj.gov
*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIRST AMENDMENT COALITION, | No. CIV 12-1013 - CW |
| Plaintiff, | |
| v. | DEFENDANT'S REPLY MEMORANDUM AND OPPOSITION TO CROSSMOTION |
| UNITED STATES DEPARTMENT OF JUSTICE, | DATE:   December 5, 2013 |
| Defendant. | TIME:    2:00pm |
| | PLACE:  Oakland Courthouse, Courtroom 2 |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PLAINTIFF'S CROSS-MOTION**

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION ...................................................................................................1

ARGUMENT ........................................................................................................2

I.      DOJ PROPERLY CONSTRUED PLAINTIFF'S REQUEST ...........................................2

II.     DOJ PROPERLY WITHHELD THE RESPONSIVE DOCUMENT
        PERTAINING TO DOD UNDER EXEMPTIONS 1, 3 and 5...........................................3

        A.      Exemption One .....................................................................................3

        B.      Exemption Three....................................................................................4

        C.      Exemption Five .....................................................................................5

                1.      The DOD Memorandum Has Not Been Adopted as
                        Working Law .............................................................................5

                2.      The Attorney-Client Privilege Has Not Been Waived................................8

        D.      DOJ Has Not Officially Disclosed Contents of the DoD Memorandum..............10

        E.      There is No Segregable Information in the DOD Memorandum .........................11

III.    DOJ PROPERLY REFUSED TO CONFIRM OR DENY THE EXISTENCE OF
        ANY ADDITIONAL RECORDS PURSUANT TO EXEMPTIONS 1 AND 3 ..............12

IV.     IN CAMERA REVIEW IS UNNECESSARY ...................................................................14

V.      EVIDENTIARY OBJECTIONS ...................................................................................15

CONCLUSION....................................................................................................15

## TABLE OF AUTHORITIES

**CASES**                                                                                          **PAGE(S)**

*ACLU v. CIA*,
  710 F.3d 422 (D.C. Cir. 2013) .......................................................................................13

*ACLU v. DOD*,
  628 F.3d 612 (D.C. Cir. 2011) .........................................................................................4

*ACLU v. DOJ*,
  681 F.3d 61 (2d Cir. 2012).............................................................................................4, 5

*Afshar v. Dep't of State*,
  702 F.2d 1125 (D.C. Cir. 1983) .......................................................................................4

*Bassiouni v. CIA*,
  392 F.3d 244 (7th Cir. 2004) ..........................................................................................11

*Berman v. CIA*,
  501 F.3d 1136 (9th Cir. 2007) .......................................................................................4, 5

*Bowen v. FDA*,
  925 F.2d 1225 (9th Cir. 1991) ..........................................................................................9

*Brennan Ctr. v. DOJ*,
  697 F.3d 184 (2d Cir. 2012)..............................................................................................7

*Brinton v. Dep't of State*,
  636 F.2d 600 (D.C. Cir. 1980) ..........................................................................................6

*CAIR v. FBI*,
  749 F. Supp. 2d 1104 (S.D. Cal. 2010)...........................................................................15

*CIA v. Sims*,
  471 U.S. 159 (1985)...........................................................................................................5

*In re Cnty. of Erie*,
  473 F.3d 413 (2d Cir. 2007)..............................................................................................9

*Curran v. DOJ*,
  813 F.2d 473 (1st Cir. 1987) ...........................................................................................15

*Earth Pledge Found. v. CIA*,
  988 F. Supp. 623 (S.D.N.Y. 1996), *aff'd*, 128 F.3d 788 (2d Cir. 1997) ..........................14

*Elec. Frontier Found. v. Dep't of Commerce*,
    2013 WL 3730096 (N.D. Cal. 2013) ............................................................2

*Fitzgibbon v. CIA*,
    911 F.2d 755 (D.C. Cir. 1990) ...................................................................4

*Frugone v. CIA*,
    169 F.3d 772 (D.C. Cir. 1999) ...................................................................4

*Gardels v. CIA*,
    689 F.2d 1100 (D.C. Cir. 1982) ...............................................................15

*Gordon v. FBI*,
    388 F. Supp. 2d 1028 (N.D. Cal. 2005) .....................................................8

*Hall v. CIA*,
    881 F. Supp. 2d 38 (D.D.C. 2012) ...........................................................15

*Hayden v. NSA*,
    608 F.2d 1381 (D.C. Cir. 1979) .................................................................4

*Hiken v. DOD*,
    521 F. Supp. 2d 1047 (N.D. Cal. 2007) ...................................................14

*Hunt v. CIA*,
    981 F.2d 1116 (9th Cir. 1992) .................................................................14

*Krikorian v. Dep't of State*,
    984 F.2d 461 (D.C. Cir. 1993) .................................................................11

*Lane v. Dep't of Interior*,
    523 F.3d 1128 (9th Cir. 2008) .................................................................15

*Laughin v. Comm'r of IRS*,
    117 F. Supp. 2d 997 (S.D. Cal. 2000) .......................................................2

*Lion Raisins v. Dep't of Agric.*,
    354 F.3d 1072 (9th Cir. 2004) .................................................................14

*Military Audit Project v. Casey*,
    656 F.2d 724 (D.C. Cir. 1981) .................................................................14

*Moore v. CIA*,
    666 F.3d 1330 (D.C. Cir. 2011) ...............................................................14

*Murphy v. Dep't of the Army*,
    613 F.2d 1151 (D.C. Cir. 1979) ............................................................9, 14

*NLRB v. Sears, Roebuck & Co.*,
    421 U.S. 132 (1975) ...............................................................................5, 7, 8

*N.Y. Times Co. v. DOJ*,
    872 F. Supp. 2d 309 (S.D.N.Y. 2012) .............................................................3

*N.Y. Times Co. v. DOJ*,
    915 F. Supp. 2d 508 (S.D.N.Y. 2013) ................................................. *passim*

*National Council of La Raza v. DOJ*,
    411 F.3d 350 (2d Cir. 2005) ........................................................................7, 8, 9

*Navasky v. CIA*,
    499 F. Supp. 269 (S.D.N.Y. 1980) ...............................................................5

*Noll v. IRS*,
    1994 WL 745184 (D. Idaho 1994) ...............................................................2

*Pickard v. DOJ*,
    653 F.3d 782 (9th Cir. 2011) .......................................................................10

*Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*,
    421 U.S. 168 (1975) .....................................................................................6, 7

*Rockwell Int'l Corp. v. DOJ*,
    235 F.3d 598 (D.C. Cir. 2001) ....................................................................9

*SafeCard Servs., Inc. v. SEC*,
    926 F.2d 1197 (D.C. Cir. 1991) .................................................................15

*Safeway v. IRS*,
    2006 WL 3041079 (N.D. Cal. Oct. 24, 2006) .............................................8

*Spannaus v. DOJ*,
    813 F.2d 1285 (4th Cir. 1987) .....................................................................15

*Students Against Genocide v. Dep't of State*,
    257 F.3d 828 (D.C. Cir. 2001) ....................................................................4

*Wilner v. NSA*,
    592 F.3d 60 (2d Cir. 2009) ..........................................................................3

*Wilson v. CIA*,
    586 F.3d 171 (2d Cir. 2009) ........................................................................4, 14

**STATUTES**

5 U.S.C. § 552........................................................................................................... *passim*

1

2

### **INTRODUCTION**

3          Defendant United States Department of Justice ("DOJ") submits this reply memorandum

4   in support of its motion for summary judgment.  The U.S. Government has provided robust and

5   carefully considered public explanations regarding its use of targeted lethal force, providing

6   information and legal analysis to the greatest extent possible without harming national security

7   or revealing confidential legal advice.  These public disclosures, however, have not revealed the

8   properly classified and privileged information at issue here, including the content of the Office of

9   Legal Counsel ("OLC") Memorandum pertaining to the Department of Defense ("the DOD

10  Memorandum") and the existence or non-existence of other opinions.  Plaintiff First Amendment

11  Coalition ("FAC") urges the Court to penalize the Defendant for these considered efforts to

12  inform the public.  FAC's argument is, in essence, that the cumulative effect of these efforts to

13  inform the public, combined with purported leaks and media speculation, is to effect a waiver of

14  other otherwise applicable FOIA exemptions asserted over properly classified and privileged

15  information.  Plaintiff's approach is not supported by any case law and would have the perverse

16  effect of discouraging voluntary disclosures about important national security matters to avoid

17  compelled disclosure of other classified or privileged information.

18          FAC barely attempts to dispute the proper application of Exemptions 1, 3, and 5 to either

19  the DOD Memorandum or to the partial Glomar response.  Instead, Plaintiff argues that there has

20  been an official disclosure of the classified information and that the Government has somehow

21  "adopted" the confidential legal advice as binding policy.  Plaintiff does not point to a single

22  such instance of official acknowledgment, much less actual adoption of the withheld opinion.

23  Instead, Plaintiff resorts to inference and supposition in an attempt to establish what does not

24  exist on its own.  Plaintiff also supposes that the Court can segregate "legal analysis" in a

25  confidential legal memorandum providing legal advice on a highly sensitive potential military

26  operation from privileged and classified information.  But everything in the DOD Memorandum

27  is deliberative and privileged; what Plaintiff calls "legal analysis" is actually confidential legal

28  advice that rests at the very heart of the deliberative process and the attorney-client privilege.

And as established previously, legal advice or analysis can reveal properly classified information as well.  The public declarations amply establish that the withheld information is properly classified and privileged.  Accordingly, the Defendant requests that the Court grant its motion for summary judgment.

## ARGUMENT

## I.    DOJ PROPERLY CONSTRUED PLAINTIFF'S REQUEST

Plaintiff surprisingly challenges how DOJ construed its unambiguous request.  First, FAC maintains that DOJ construed the request too narrowly by interpreting it as applying to only a single document.  *See* Pl's Opp. at 7.  Although the request is clearly for a singular "document: A legal memorandum prepared by OLC concerning the legality of the lethal targeting of Anwar al-Aulaqi," *see* Bies Dec. Ex. B, DOJ in fact construed it more broadly.  Rather than restricting its search to a single memorandum, DOJ confirmed that "there is one responsive document pertaining to the Department of Defense," and *in addition*, stated that "to confirm or deny the existence of any other responsive memoranda would reveal information which is currently and properly classified."  Def's MSJ at 1.

Second, FAC claims that its request includes all "agency records that address the government's use of targeted lethal force against U.S. citizens abroad who are believed to have joined forces with terrorist organizations engaged in attacks against Americans," Pl's Opp. 7, but that interpretation defies the plain language of the request for records for a memorandum specifically concerning Aulaqi, *see* Bies Dec. Ex. B.  Plaintiff "cannot now expand the original request to encompass this additional request."  *See Laughin v. Comm'r of IRS*, 117 F. Supp. 2d 997, 1002 n.10 (S.D. Cal. 2000); *Noll v. IRS*, 1994 WL 745184, *3 (D. Idaho 1994) (similar); *Elec. Frontier Found. v. Dep't of Commerce*, 2013 WL 3730096, *11 (N.D. Cal. 2013) ("Litigation is not an appropriate forum for expanding the scope of a FOIA request.").  By reasonably relying on the plain language, the Government properly construed the request.

## II.   DOJ PROPERLY WITHHELD THE RESPONSIVE DOCUMENT PERTAINING TO DOD UNDER EXEMPTIONS 1, 3 and 5

A.   **Exemption One.**  Plaintiff barely disputes the applicability of Exemption 1. Primarily, Plaintiff relies on the red herring that "legal analysis" is not a category of classifiable information under E.O. 13526.  Exemption 1, however, contains no exception for legal analysis, and allows for the classification of any matters that meet the criteria of the E.O.  As the District Court for the Southern District of New York recently held in examining the criteria of E.O. 13526, legal analysis can "pertain to" classifiable information, and the precise information at issue here is in fact properly classified.  *N.Y. Times Co. v. DOJ*, 915 F. Supp. 2d 508, 535 (S.D.N.Y. 2013) (collecting cases and ruling on legal analysis related to targeted killing), appeal pending.  *See also N.Y. Times Co. v. DOJ*, 872 F. Supp. 2d 309, at *316-17 (S.D.N.Y. 2012) (rejecting argument that classified report to Congress contained legal analysis, and therefore could not properly be withheld).  As previously explained, the withheld memorandum pertains to classifiable information: "military plans," "intelligence activities (including covert action), intelligence sources and methods" and "foreign relations and foreign activities of the United States, including confidential sources."  *See* Def's MSJ. at 12-13.  The DOD Memorandum evaluates information pertaining to military plans in a foreign country, the disclosure of which is reasonably expected to cause damage to national security.  It is not difficult to imagine how confidential legal advice analyzing how the law applies to such classified facts would itself be classified.  It is possible that even the mere citation of legal authorities can reveal the classified information at issue, which would also make the legal advice or analysis itself classified.

Plaintiff also opines that disclosure would not harm national security because of information already in the public sphere, but Plaintiff's views about what would harm national security are entitled to no weight.  Decades of established law recognize the Executive Branch's unique expertise in matters of national security and intelligence, and courts, let alone private litigants, are ill-equipped to second-guess the Executive's predictive judgments in these areas. *See* Def's MSJ at 6-7; *Wilner v. NSA*, 592 F.3d 60, 76 (2d Cir. 2009) ("Recognizing the relative competencies of the executive and judiciary, we believe that it is bad law and bad policy to

second-guess the predictive judgments made by the government's intelligence agencies"); *ACLU v. DOJ*, 681 F.3d 61, 70-71 (2d Cir. 2012); *accord Frugone v. CIA*, 169 F.3d 772, 775 (D.C. Cir. 1999); *Fitzgibbon v. CIA*, 911 F.2d 755, 766 (D.C. Cir. 1990).  Moreover, the government is not required to provide declarations so detailed as to jeopardize the very information that is being protected.  *See Berman v. CIA*, 501 F.3d 1136, 1142 (9th Cir. 2007); *Hayden v. NSA,* 608 F.2d 1381, 1384–85 (D.C. Cir. 1979).  The government has proffered additional classified explanation *ex parte* and *in camera* regarding the content of this memorandum.

In any event, Plaintiff's judgment as to the potential harm to national security turns on the incorrect supposition that the government has officially confirmed the withheld information.  As discussed below and in the government's opening brief, no such confirmation has occurred. *See* Part II.D, *infra*; Def's MSJ at 20-22.  The D.C. Circuit rejected a similar attempt to expand the standard for waiver.   *See ACLU v. DOD*, 628 F.3d 612, 625 (D.C. Cir. 2011) ("the ACLU's argument that the information withheld by the CIA is 'so widely disseminated' that it could not cause harm to national security is foreclosed by our requirement, discussed above, that information be 'officially acknowledged.'").  It is well established, moreover, that the fact that some information related to a certain subject exists in the public domain "does not eliminate the possibility that further disclosures can cause harm to intelligence sources, methods and operations." *Id.*; *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 835 (D.C. Cir. 2001); *see also Wilson v. CIA*, 586 F.3d 171, 186 (2d Cir. 2009); *Afshar v. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983).  In any event, the agency declarants specifically considered the extent to which some information is in the public sphere and nonetheless logically and plausibly predicted that further disclosures would cause harm to national security.

**B.     Exemption Three.**  As discussed in the context of Exemption 1, the declarations leave no doubt that disclosure of the withheld information would tend to reveal intelligence sources and methods protected by the National Security Act.  *See* Def's MSJ at 12-4.  Plaintiff argues that disclosure would not endanger sources and methods, but does not dispute the rationale given in the declarations, which are entitled to substantial deference.  *See supra* at 3-4;

*CIA v. Sims*, 471 U.S. 159, 179 (1985); *Berman*, 501 F.3d at 1142; *ACLU v. DOJ*, 681 F.3d at 69, 73.[1] Furthermore, as explained in the opening brief, the National Security Act does not require a showing of harm to national security; the Court can uphold the agency's reliance on that statute without considering whether disclosure would damage national security.

      **C.**    **Exemption Five**.  Plaintiff effectively concedes that the withheld memorandum meets the standard for withholding under the deliberative process and attorney-client privileges, instead focusing its arguments on the implausible notion that the confidential legal advice about a potential military operation is "secret law" or has been "adopted" as agency "working law." Pl's Opp. at 13-15.  In addition to being directly contrary to Supreme Court precedent, Plaintiff's sweeping interpretation of the adoption and waiver doctrines should be rejected because it would have a profoundly detrimental effect on government decisionmaking and transparency – by discouraging policymakers from seeking and relying on confidential legal advice in the course of formulating policy, or publicly discussing the legal bases for their policies.

      **1.**    **The DOD Memorandum Has Not Been Adopted as Working Law**.  In *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 153 (1975), the Supreme Court addressed the adoption doctrine in a case where the final decision of the National Labor Relations Board was documented in a memorandum summarizing the facts and providing an "answer to the legal or policy issue submitted together with a detailed legal rationale" for the final decision.  *Id.* at 140-42.  The *Sears* Court held that the memorandum explained the basis for the agency's decision, and thus constituted a "final opinion . . . made in the adjudication of cases" that should be published under 5 U.S.C. § 552(a)(2).  *Id.* at 148-54.  The Court also held that predecisional documents that the agency chose to *expressly* adopt or incorporate by reference into the non-exempt final opinion were no longer exempt from disclosure.  *Id.* at 161.  In a companion case, the Supreme Court made clear that public disclosure of a predecisional document is not required

---

[1] In *Navasky v. CIA*, the court held that identities of authors and publishers engaged in acknowledged CIA propaganda efforts were not themselves intelligence sources and methods, but nonetheless noted that withholding such information could be justified if the release of such identities would lead to disclosure of sources and methods. *See* 499 F. Supp. 269, 274-75 (S.D.N.Y. 1980). Here, the agencies have explicitly and reasonably tied the DOD memorandum to the disclosure of sources and methods.

under FOIA, "even when [the agency] agrees with [a privileged document's] conclusion" in a final opinion, unless the agency *expressly* adopts the reasoning of that predecisional document as the basis for the final opinion. *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975) (emphasis added). The Court elaborated in *Grumman* that, "absent indication that [the] reasoning" of a predecisional document has been adopted by the agency as its own, "there is little public interest in disclosure of a report." *Id.* at 186.

Here, Plaintiff has not identified a single instance in which an Executive Branch decisionmaker expressly and publicly invoked the DOD Memorandum as the basis for agency policy.  To make public statements regarding the legal basis for an activity is, of course, not the same thing as making a public statement disclosing specific legal advice an official may have received.  Bies Dec. ¶ 7.  Plaintiff can only speculate as to the content of the OLC opinion, not to mention whether the legal advice therein was followed, or even whether it is similar to public descriptions of the legal basis for potential targeting of U.S. citizens.[2]  Plaintiff has submitted voluminous exhibits that it claims show adoption of this particular OLC opinion as the working law for the Government, but the vast majority of those submissions do not even mention OLC, much less the particular memorandum at issue here.  *See* Pls' Ex. H-K, DD, TT, UU.  Rather, as discussed in the opening brief, senior Executive Branch officials have publicly justified the use of targeted lethal force, without explicit reference to, reliance on or adoption of OLC advice. The only cited reference to OLC comes from a press briefing in which Press Secretary Jay Carney stated that "the President directed the Department of Justice to provide the congressional intelligence Committee's access to classified [OLC] advice related to the subject of the DOJ white paper" *See* Ex. KK at 2; JJ.  The White Paper itself makes no mention of Anwar al-Aulaqi

---

[2]The opinion could not possibly constitute "working law"; no one alleges that OLC has policy-making authority with respect to drone strikes.  *See also* Bies Dec. ¶ 2.  Legal advice memoranda written by agency attorneys with no policymaking authority for consideration by a decisionmaker "fit[] exactly within the deliberative process rationale for Exemption 5," and do not qualify as "final opinions" subject to disclosure as "secret law."  *Brinton v. Dep't of State*, 636 F.2d 600, 604-05 (D.C. Cir. 1980) (holding that legal advice memoranda did not constitute the agency's "secret law").  Moreover, the memorandum was prepared by OLC for the Attorney General's use in interagency deliberations, *see* Bies Dec. ¶ 16; it obviously could not have been binding on the Attorney General, who is the superior official to OLC.

and does not purport to set forth policy or bind any part of the U.S. Government; rather it "sets forth a legal framework for considering the circumstances in which the USG could use lethal force in a foreign country outside the area of active hostilities against a U.S. citizen who is a senior operational leader of al-Qaida." *See* DD at 1.[3]  As the New York Court concluded, "it is sheer speculation that this particular OLC memorandum . . . contains the legal analysis that justifies the Executive Branch's conclusion that it is legal in certain circumstances to target suspected terrorists, including United States citizens." *NY Times*, 915 F. Supp. 2d at 549.

Rather than accept the words of the Supreme Court, Plaintiff relies on distinguishable decisions from the Second Circuit.  In *National Council of La Raza v. DOJ*, the Second Circuit reiterated the rule of *Sears* that a document loses Exemption 5 protection only when "the agency has chosen 'expressly to adopt or incorporate [it] by reference,'" because it "loses its predecisional and deliberative character." 411 F.3d 350, 356 (2d Cir. 2005).  The *La Raza* Court reaffirmed the need for a determination that "*express* adoption or incorporation by reference has occurred," *id.* at 357 n.5 (emphasis added), and held that a casual or minor reference to a predecisional document cannot satisfy the requirement of express adoption, *id.* at 359. Furthermore, the *La Raza* Court instructed, "there must be evidence that an agency has *actually* adopted or incorporated by reference the document at issue; mere speculation will not suffice." *Id.*, 411 F.3d at 359 (emphasis in original).  And under *La Raza*, as under *Sears* and *Grumman*, both the conclusion and the reasoning of a document must be expressly adopted.  *Id.* at 358–59. The *La Raza* Court concluded, based on repeated, explicit, and public references to the OLC memorandum, that DOJ regarded the reasoning in the OLC memorandum as the official policy of DOJ, to be presented to and relied upon by the public as such, and viewed the memorandum as setting out "the exclusive statement of, and justification for, its new policy on the authority of states to enforce the civil provisions of immigration law." *Id.* at 357.[4]

---

[3] The White Paper is a draft document that was originally provided in confidence to Congress; the Executive Branch later acknowledged the draft document.  *See, e.g.*, Ex. II (letter from Congress requesting public release of the draft white paper).

[4] *Brennan Ctr. v. DOJ*, 697 F.3d 184 (2d Cir. 2012) reinforces the conclusion that the deliberative process privilege applies here.  The Court found adoption of one memorandum only where the agency had explicitly and publicly referred to the memorandum, showing "sufficient reliance on both the conclusion

Unlike in *La Raza*, the government here has not invited third parties, or the public, to rely on legal analysis set forth in a document that was publicly identified but not disclosed.  Instead, the government has never made public statements explicitly relying on, or even clearly referencing this particular DOD Memorandum. Accordingly, under the Second Circuit's standard as articulated in *La Raza*, as well as the standard set forth by the Supreme Court in *Sears*, there is no basis for any finding of adoption here.  The fact that the government has publicly explained the legal principles it would consider in making targeting decisions (without reference to OLC advice) for the purpose of allowing the public to consider whether actions taken in their defense are consistent with their values and their laws, does not affect this conclusion.  If such general statements by government officials were deemed sufficient to adopt the confidential legal advice that may or may not have informed their decisions, it would deter policymakers from seeking legal advice and otherwise harm deliberative processes, while also discouraging policymakers from publicly discussing the legal bases of their policies, results fundamentally at odds with FOIA and Exemption 5.  *See also* Bies Decl. ¶¶ 3-8.

**2.    The Attorney-Client Privilege Has Not Been Waived.[5]**    Because the DOD Memorandum is protected by the deliberative process privilege, the Court need not reach the attorney-client privilege.  In any event, Plaintiff has advanced no substantive argument as to why the DOD Memorandum is not confidential attorney-client communication.[6]  Instead, Plaintiff relies upon the same adoption argument to suggest that the government has somehow

---

and reasoning" of the memorandum.  *Id.* at 205.  The Court declined to find adoption of other memoranda, which were never expressly mentioned, regardless of whether the agency "acted in conformity" with them.  *Id.* at 206.

[5] The attorney-client privilege may apply even if deliberative process does not.  Although *Sears* held that a document may not simultaneously be "predecisional" and a "final opinion," the Supreme Court has recognized that other privileges, which extend beyond the privilege for predecisional materials, may still be viable even for documents covered by § 552(a)(2): "[i]t should be obvious that the kind of mutually exclusive relationship between final opinions and statements of policy, on one hand, and predecisional communications, on the other, does not necessarily exist between final statements of policy and other Exemption 5 privileges." *Federal Open Market Committee v. Merrill*, 443 U.S. 340, 360 n.23 (1979).

[6] The cases Plaintiff cites are readily distinguishable.  *See Gordon v. FBI*, 388 F. Supp. 2d 1028 (N.D. Cal. 2005) (rejecting privilege where no attorney was party to the communication); *Safeway v. IRS*, 2006 WL 3041079 (N.D. Cal. Oct. 24, 2006) (rejecting privilege where there was no substantive showing as to the nature of the communication).  *Compare with* Bies Dec. ¶¶ 16, 18.

waived the attorney-client privilege, and it fails for the same reason.  But there is no evidence in the record suggesting that OLC or other Executive Branch officials have made public use of the DOD Memorandum.  Plaintiff's reliance on *La Raza* is (again) misplaced. The *La Raza* Court held that "the government could not invoke the attorney-client privilege to bar disclosure of a legal memorandum where the government had incorporated it into its policy by *repeatedly, publicly and expressly* relying upon its reasoning and had adopted its reasoning as authoritative within the agency." *In re Cnty. of Erie*, 473 F.3d 413, 418 n.5 (2d Cir. 2007) (citing *La Raza*, 411 F.3d at 360-61) (emphasis added).  Although the Second Circuit did not decide whether that conduct would suffice to waive the attorney-client privilege under normal waiver standards, 411 F.3d at 361 n.9, the Court emphasized the government's use of the privilege as both a sword and a shield.  *Compare id.* at 361.  No such considerations apply here, and there are no facts that would support finding a waiver of attorney-client privilege applying traditional waiver standards.

Plaintiff nonetheless claims that the disclosure was waived by providing OLC documents to Congress.  First, Plaintiff has not provided any public information showing that the DOD Memorandum was provided to Congress, only vague statements by a Press Secretary that some unidentified "OLC advice" related to targeted killing was provided to Congress.  More fundamentally, providing privileged and classified information to Congress in confidence as part of Congress's oversight responsibilities does not waive the privilege. *See Murphy v. Dep't of the Army*, 613 F.2d 1151, 1156 (D.C. Cir. 1979) ("[T]o the extent that Congress has reserved to itself . . . the right to receive information not available to the general public, . . . no waiver occurs of the privileges and exemptions which are available to the executive branch under the FOIA with respect to the public at large."). *See also Rockwell Int'l Corp. v. DOJ*, 235 F.3d 598, 604 (D.C. Cir. 2001) (Exemption 5 not waived by disclosure to congressional subcommittee where the subcommittee agreed not to make documents public); *Bowen v. FDA*, 925 F.2d 1225, 1228-29 (9th Cir. 1991) (Exemption 7(E) not waived because of limited disclosure in testimony at criminal trial or limited release to professional chemists' community).  To hold otherwise would upset the carefully calibrated oversight relationship between the Executive Branch and Congress.

**D.      DOJ Has Not Officially Disclosed Contents of the DOD Memorandum.**  There has been no official acknowledgment that waives these exemptions.  Plaintiff concedes the stringent standard for official disclosure, *see* Def's MSJ at 20-23, and has failed to identify "an intentional, public disclosure made by or at the request of a government officer acting in an authorized capacity by the agency in control of the information at issue," that is "as specific as the information previously released," *see Pickard v. DOJ*, 653 F.3d 782, 786 (9th Cir. 2011).

Virtually every disclosure relied on by Plaintiff is either a general analysis of the legal basis for targeted lethal force, statements about the targeting of Aulaqi generally, or an unsourced media report.  *See, e.g.*, Pl's Exs. EE-HH (media reporting).   Public speeches by the Attorney General and the President provide legal analysis in support of the use of targeted lethal force, including against U.S. citizens, *see, e.g.,* Pl's Exs. G-J, CC, DD, but do not mention OLC, do not reveal anything about the specific legal advice relied upon, much less specific advice regarding Aulaqi.  Plaintiff relies heavily on the release of the draft white paper.  *See* Pl's Ex. DD.  As discussed above, Mr. Carney's statement that the white paper is "related to" the same subject as unspecified "OLC advice" does not reveal anything about the content of the unspecified OLC advice referenced or connect it to the opinion at issue here.  *See also* Pl's Ex. LL.  Accordingly, it is inaccurate to infer confirmation that the white paper "is derived directly from the material sought in this case."  Pl's Opp. at 4.  Because none of these disclosures even mentions the DOD Memorandum or the contents thereof, the information disclosed is not "as specific" as the information withheld.

Two other public statements relied upon by Plaintiff are similarly unhelpful.   AG Holder's Letter to Congress indicated that his speech to Northwestern University was "consistent with . . . the classified analysis the Department shared with other congressional committees in May 2011 – months before the operation that resulted in the death of Anwar al-Aulaqi" and "with the classified legal advice on this issue the Department of Justice has shared with your Committee more recently."  *See* Ex. TT.  This statement does not mention OLC or reveal whether the "classified" information provided relates specifically to Aulaqi.  Lastly, the

President stated that he "submitted information about Awlaki to [DOJ] months before Awlaki was killed." *See* Ex. UU. This statement does not mention the DOD memorandum. Even if it were inferred that it had to be the same document – and there is no reason to assume it is – there is no discussion of the contents of that submission or the resulting analysis.[7]

Finally, the public is ill-served by efforts to force disclosure of specific, confidential legal advice from the limited public disclosures that have been made. To do so would discourage public officials from discussing important national security matters even in broad generalities. *See Bassiouni v. CIA*, 392 F.3d 244, 247 (7th Cir. 2004) ("And [the FOIA requestor] is better off under a system that permits the CIA to reveal some things . . . without revealing everything; if even a smidgen of disclosure required the CIA to open its files, there would be no smidgens.").

**E.      There is No Segregable Information in the DOD Memorandum.** The declarations establish that the exempt information is not reasonably segregable from non-exempt information. *See* Hudson Dec. ¶ 30; Bies Dec. ¶¶ 17-18. In arguing otherwise, Plaintiff fails to consider that the entirety of the document is protected by Exemption 5. What Plaintiff calls "legal analysis" are confidential attorney-client communications – including the specific questions asked and the legal advice rendered – that are at the very heart of both the deliberative process and the attorney client privileges. To the extent there is any non-privileged information arguably contained in the document, it is necessarily inextricably intertwined with attorney-client communications and the deliberative process or constitutes classified material. *Id.*

Even setting aside that the legal advice is privileged, Plaintiff also supposes that it is possible to parse "legal analysis" from the highly classified facts being analyzed.[8] But common

---

[7] Plaintiff relies on *Krikorian v. Dep't of State*, 984 F.2d 461 (D.C. Cir. 1993), where the district court is directed to ensure that redacted information in one document is not identical to the unredacted information in another version of the same document. There is no similar allegation here that another version of the DOD memorandum has been released.

[8] Plaintiff cites to cases where the documents were inadequately described. *See* Pl's Opp. at 10-11, 21-22. The agencies offered as detailed as possible a description of the withheld memorandum, *see* Bies Dec. ¶ 16, Hudson Dec. ¶ 26-30; Tidd Dec. ¶5. It is OLC legal advice regarding a potential military operation regarding Aulaqi, prepared for use by the Attorney General in interagency deliberations; in addition to privileged advice, it contains specific types of classified information described in the Hudson and Tidd Declarations. Further detail is available to the Court in the classified submission.

sense dictates that is not the case where an opinion is applying the law to the facts, and the facts are highly classified. Here, although the general subject matter of the memorandum has been disclosed, the specific questions posed have not been. Moreover, the Hudson Declaration establishes that, although the Government has provided some information about the imminent threat that Aulaqi posed to the United States, other information remains classified, including but not limited to the means by which that information was obtained. Hudson Dec. ¶¶ 27-28. Hudson also establishes that adversaries could analyze such information to deduce current collection activities and take countermeasures. *Id.*; *see also* Tidd Dec. ¶¶10-11.[9]

Plaintiff proposes that the Defendant segregate "the contents of the DOD memo reflected in the White Paper" or just "legal citations." As discussed above, the draft DOJ white paper about the use of targeted lethal force in no way acknowledges the content of an OLC opinion about Aulaqi. Accordingly, even if Plaintiff were correct in supposing that the legal analysis and citations were similar – to reveal the specific analysis and reliance on specific opinions would reveal the content of privileged deliberations and legal advice.

## III. DOJ PROPERLY REFUSED TO CONFIRM OR DENY THE EXISTENCE OF ANY ADDITIONAL RECORDS PURSUANT TO EXEMPTIONS 1 AND 3.

As previously explained, DOJ properly provided a partial "Glomar" response, refusing to confirm or deny the existence or nonexistence of responsive OLC opinions pertaining to any other agency, because to do so would reveal a currently and properly classified fact – namely, whether or not an intelligence agency is directly involved in drone strikes. Without disputing the proper application of Exemptions 1 and 3, Plaintiff complains that it did not seek information specifically about the intelligence community and asserts that the CIA has already revealed its role in a targeted lethal operation against Aulaqi.

Although Plaintiff did not seek information specifically about the intelligence community, in considering public disclosures of sensitive information, the agencies involved

---

[9]The U.S. Government does not maintain that every piece of information in the document is classified, but rather that the classified information and the privileged information together constitute the whole of the document. If one or more of the Exemptions were ultimately rejected by the Court and the Ninth Circuit, the Government would need to evaluate the segregability of the remaining Exemptions.

must consider information which is already in the public sphere.  *See* Hudson Dec. ¶28.  As a result of public disclosures predating the reformulated response in this FOIA matter, the Government has already disclosed that there is exactly one OLC memorandum pertaining to DOD, which relates to the use of targeted lethal force against U.S. citizens, and has previously refused to confirm or deny the involvement of the CIA in the use of targeted lethal force.  *See id*. ¶¶9-15.  Because here and elsewhere DOJ has disclosed the existence of exactly one responsive OLC memorandum pertaining to DOD, it cannot now confirm or deny the existence of additional responsive memoranda without revealing the classified equities of agencies other than DOD.[10]

Second, Plaintiff argues that the CIA has acknowledged involvement in the Aulaqi operation, but Plaintiff can point to no specific, public, official disclosure.[11]  Plaintiff cites a stray remark made by Panetta during a public speech while he was Secretary of Defense, where he is quoted as saying that he has "more weapons available to me in this job than I had in the CIA, although the Predators aren't bad."  Pl's Ex. M.  This comment is too ambiguous to constitute an official disclosure that the CIA engages in drone strikes, much less a strike against Aulaqi. Even if it could be read as acknowledging that Predators were "available" to the CIA, it does not acknowledge that the CIA uses them for lethal purposes, as opposed to surveillance and intelligence-gathering.[12]  Plaintiff also cites a statement by Congressman Rogers on a television

---

[10] Plaintiff argues that DOJ disclosed the existence of more than one responsive memorandum in the New York litigation.  Pl's Opp. at 4.  In fact, DOJ continues to defend the partial Glomar with respect to the NY Times request for OLC memoranda in the Second Circuit.  *See, e.g.,* Ex. SS at 31-32, 38.  Plaintiff quotes language from the brief which acknowledges, in response to the separate ACLU request, that there are additional documents responsive to the request which relate to Aulaqi.  But the ACLU's request was not limited to OLC opinions or even to documents authored by DOJ.  Accordingly, the disclosure that there is "responsive legal advice and analysis (including about al-Awlaki)" is in no way inconsistent with the position taken here.  *See* Ex. SS.

[11] Nor is Plaintiff's citation to the recent D.C. Circuit opinion helpful.  After denying the CIA's motion to remand in light of recent declassifications, the D.C. Circuit found that CIA had acknowledged an "interest" in drone operations, but specifically found that certain official statements "do not acknowledge that the CIA itself operates drones."  *ACLU v. CIA*, 710 F.3d 422, 429-30 (D.C. Cir. 2013).

[12] Plaintiff cites Exhibit Y, an interview with Panetta in which the provided transcript does not mention targeted lethal operations using drones, much less the involvement of the CIA.  According to Plaintiff, Panetta "nodded" in response to an allegation that he killed Aulaqi, an ambiguous gesture that does not meet the standard for official disclosure.  Plaintiff's interpretation of Panetta's nod is incorrect, because he specifically declined to comment on any operation.  Mr. Panetta nods several times in the interview when the interviewer asks a question. *See* http://www.cbsnews.com/video/watch/?id=7411222n.

show.  Ex. QQ; *see also* Exs. L, LL-NN.  His statement is not clear, and Congress lacks authority to officially disclose information properly classified by the Executive Branch.  The release of information by Congress does not constitute official disclosure of classified information by the relevant Executive Branch agency. *See Military Audit Project v. Casey,* 656 F.2d 724, 742-45 (D.C. Cir. 1981); *Moore v. CIA,* 666 F.3d 1330, 1333 n.4 (D.C. Cir. 2011); *Murphy v. Dep't of Army,* 613 F.2d 1151, 1156 (D.C. Cir. 1979); *Wilson,* 586 F.3d at 186-187; *Earth Pledge Found. v. CIA,* 988 F. Supp. 623, 627-28 (S.D.N.Y. 1996), *aff'd,* 128 F.3d 788 (2d Cir. 1997).

## IV.   IN CAMERA REVIEW IS UNNECESSARY

Plaintiff suggests that the Court decide the propriety of withholdings on the basis of *in camera* review regardless of the adequacy of the Government's declarations. Instead, the Court should first review and accord substantial weight to the government declarations, *see Hunt v. CIA*, 981 F.2d 1116, 1119 (9th Cir. 1992), and then review the requested documents *in camera* only if necessary, *see, e.g., Lion Raisins v. Dep't of Agric.*, 354 F.3d 1072, 1079 (9th Cir. 2004) (*in camera* review of documents withheld under a FOIA exemption is disfavored).  Courts do not conduct their own analysis of whether or not information is properly classified; rather, courts review the Government's declarations, according them substantial weight.  *See Hunt*, 981 F.2d at 1119.   Here, the Government has provided robust public declarations in support of the withholdings, and the classified submission provides additional information.[13]  Plaintiff's citation to the pending Second Circuit case is misleading.   The district court specifically found that *in camera r*eview of this document was unnecessary in light of the Government affidavits.  *See NY Times*, 915 F. Supp. 2d at 538 (in camera review unnecessary to determine that there was no waiver); *id*. at 540-41 (in camera review "would be pointless here, because Exemption 5 plainly applies.").  Moreover, although the Second Circuit panel asked the Government to provide the

---

[13]  Plaintiff also cites *Hiken v. DOD*, 521 F. Supp. 2d 1047 (N.D. Cal. 2007), where the Court supplemented its review of the agency declarations with *in camera* review because the Court found the original declarations inadequate and because there were public allegations of bad faith regarding the underlying incident.  Neither applies here.  Plaintiff claims that others argue that the targeting of a citizen at war with the U.S. is illegal.  Such spurious arguments are not answered or assuaged by *in camera* review, and are distinguishable from the allegations in *Hiken* that the agency was trying to hide illegality.

memorandum prior to oral argument, the Court has not indicated whether or not *in camera* review is required to resolve the issues.

## V.    EVIDENTIARY OBJECTIONS

Plaintiff advances a variety of meritless evidentiary objections. FOIA declarants routinely rely on information gathered in the course of their official duties to explain why the standard for certain exemptions are met. *See, e.g.*, *Lane v. Dep't of Interior*, 523 F.3d 1128, 1135-36 (9th Cir. 2008) ("A court may rely solely on government affidavits so long as the affiants are knowledgeable about the information sought and the affidavits are detailed enough to allow the court to make an independent assessment of the government's claim."); *CAIR v. FBI*, 749 F. Supp. 2d 1104, 1119 (S.D. Cal. 2010) (similar); *Gardels v. CIA*, 689 F.2d 1100, 1105 (D.C. Cir. 1982) ("issue is whether on the whole record the Agency's judgment objectively survives the test of reasonableness, good faith, specificity, and plausibility in this field of foreign intelligence in which the CIA is expert and given by Congress a special role."); *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) (holding that a paralegal could supply search affidavit); *Hall v. CIA*, 881 F. Supp. 2d 38, at 64 (D.D.C. 2012) (noting that a FOIA declaration may be based on information provided by others). These declarants are relying on such knowledge, as well as their well-established experience, in reaching reasonable conclusions on behalf of the government regarding the applicability of particular Exemptions.[14]

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant respectfully requests that the Court grant the Defendant's motion for summary judgment.

Respectfully submitted this 8th day of November, 2013.

---

[14] By contrast, the declarations submitted by Plaintiff are wholly improper. Neither declarant purports to have any personal knowledge of the classified or privileged information at issue, nor of the internal Executive Branch processes. Because they do not speak on behalf of the Executive Branch and lack foundation for their conclusions, their surmises are entitled to no weight. Courts routinely reject counter-declarations in FOIA matters. *See Gardels*, 689 F.2d at 1106; *Spannaus v. DOJ*, 813 F.2d 1285, 1289 (4th Cir. 1987); *Curran v. DOJ*, 813 F.2d 473, 477 (1st Cir. 1987). The declarations lack foundation and contain speculation (Armstrong ¶¶4-11, Chemerinsky ¶¶5, 7-8); contain hearsay (Armstrong ¶4, 7, 9, 10; Chemerinsky ¶5, 7-8); contain improper lay opinion and/or legal conclusions (Armstrong ¶¶4-11; Chemerinsky ¶¶6-8) and generally opine on irrelevant matters.

1

2 STUART DELERY
Assistant Attorney General
3

4 ELIZABETH J.  SHAPIRO
Deputy Director
5

6 */s/ Amy E. Powell*

7 AMY POWELL
Trial Attorney
8 Department of Justice
Civil Division, Federal Programs Branch
9 20 Massachusetts Avenue, N.W., Room
10 5377
Washington, D.C. 20001
11 Telephone: 202-514-9836
Facsimile: 202-616-8517
12 Amy.Powell@usdoj.gov
*Attorneys for Defendants*
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2

3  I hereby certify that on November 8, 2013, I caused to be electronically transmitted the foregoing

4  document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice

5  of Electronic Filing to the following CM/ECF registrant:

6

7  Thomas R. Burke

8  *thomasburke@dwt.com*

9

10

11

12      */ s/ Amy E. Powell*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28