THOMAS R. BURKE (State Bar No. 141930
JONATHAN L. SEGAL (State Bar No. 264238)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California 94111
Telephone: (415) 276-6500
Facsimile: (415) 276-6599
Email: thomasburke@dwt.com;
jonathansegal@dwt.com

Attorneys for Plaintiff
FIRST AMENDMENT COALITION

IN THE UNITED STATES DISTRICT COURT

THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

FIRST AMENDMENT COALITION,

Plaintiff,

vs.

U.S. DEPARTMENT OF JUSTICE,

Defendant.

Case No. CV 12-01013 CW
[Assigned to the Hon. Claudia Wilken]

**NOTICE OF MOTION AND MOTION FOR RECONSIDERATION OR RELIEF FROM JUDGMENT; REQUEST FOR JUDICIAL NOTICE; DECLARATION OF JONATHAN L. SEGAL WITH EXHIBITS A-D**

**[PROPOSED] ORDER FILED CONCURRENTLY**

Date: June 12, 2014
Time: 2 p.m.
Place: Courtroom 2 - 4th Floor

DAVIS WRIGHT TREMAINE LLP

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on June 12, 2014, at 2 p.m., before the Honorable Claudia Wilken, in Courtroom 2, Fourth Floor, located at 1301 Clay Street, Oakland, CA, Plaintiff First Amendment Coalition will and hereby does move this Court for reconsideration of its order of April 11, 2014 granting summary judgment to the Government (Dkt. 86), and its entry of judgment of April 11, 2014 (Dkt. 87).

Reconsideration of, or relief from summary judgment is proper under Fed. R. Civ. P. 59(e) and 60(b) for several reasons.

*First*, there has been an intervening change in the law. *Circuit City Stores, Inc. v. Mantor*, 417 F.3d 1060, 1064 (9th Cir. 2005). On April 21, 2014, ten days after this Court's ruling, the Second Circuit issued its opinion in *New York Times Co. v. United States Department of Justice*, 2014 U.S. App. LEXIS 7387 (2d Cir. Apr. 21, 2014) (attached as Ex. A), overturning the district court's January 24, 2013, ruling which this Court relied upon as persuasive authority when deciding this case. Based on largely the same evidence that is before this Court, the Second Circuit ordered release of the identical Office of Legal Counsel—Department of Defense ("OLC-DOD") memorandum sought by FAC in this case, and further ordered that the Government's Glomar responses to similar FOIA requests were not justified. When a circuit court makes a substantially different decision than a lower court on largely similar facts, that decision represents an intervening change in the law.

*Second*, the Second Circuit's ruling flagged new evidence which the Government should have disclosed or brought to this Court's attention—to wit—that four days after an unclassified Office of Legal Counsel White Paper ("White Paper") (Ex. DD to FAC's MSJ) was leaked to Michael Isikoff, a reporter with NBC News who prominently reported on the White Paper's existence, the Government "officially disclosed" a near-identical version of the White Paper (though it was not marked "draft" and was dated November 8, 2011) in response to another group's FOIA request. *N.Y. Times*, 2014 U.S. App. LEXIS 7387, at *27; *Wolf Lake Terminals, Inc. v. Mut. Marine Ins. Co.*, 433 F. Supp. 2d 933, 944 (N.D. Ind. 2005) (holding that official U.S. government documents obtained through a FOIA request and authenticated by party who

DAVIS WRIGHT TREMAINE LLP

received them were admissible under Federal Rules of Evidence); *Williams v. Long*, 585 F. Supp. 2d 679, 690 (D. Md. 2008) (official publication obtained through a subpoena or FOIA request is "self-authenticating"). Instead of disclosing this development to FAC and the Court, the Government downplayed the relevance of the White Paper, and later, obliquely stated that the White Paper had been "acknowledged," leading the Court to discard its significance. Thus, grounds exist to reconsider or offer relief from the Court's orders. *See* The Rutter Group, California Civil Procedure Before Trial § 14:362; Fed. R. Civ. P. 59(e); 60(b)(2); 60(b)(3); 60(b)(6).

Accordingly, in light of the Second Circuit's opinion, FAC asks that the Court reconsider its denial of Plaintiff's Cross-Motion for Summary Judgment, its grant of Defendant's Motion for Summary Judgment, and its entry of judgment in the Government's favor, and instead, grant FAC's Cross-Motion for Summary Judgment. Because the Second Circuit's decision was informed by *in camera* review of the OLC-DOD Memorandum, FAC also renews its request that this Court also review this document *in camera*.

This motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Jonathan Segal with Exs. A-D; the Request for Judicial Notice; all other records and files in this action; and upon such further oral and/or documentary matters as may be presented to this Court at or before the hearing on this motion.

DATED: This 8th day of May, 2014          DAVIS WRIGHT TREMAINE LLP

                                          By: /s/ Thomas R. Burke
                                              Thomas R. Burke
                                              Attorneys for Plaintiff
                                              FIRST AMENDMENT COALITION

# TABLE OF CONTENTS

| | Page |
|---|---|
| I. SUMMARY OF ARGUMENT | 1 |
| II. THE COURT SHOULD REVERSE ITS JUDGMENT IN THIS CASE IN LIGHT OF THE SECOND CIRCUIT'S RULING | 3 |
|     A. The Key Disclosures before the Second Circuit Were Also before the Court in This Case. | 3 |
|     B. The Second Circuit Opinion's Clarification of the Law Should Compel This Court To Reverse Its Rulings. | 6 |
|         1. The Second Circuit's Holding That Exemption Five Has Been Waived Removes This Court's Primary Justification For Withholding the OLC-DOD Memorandum. | 6 |
|         2. The Second Circuit Also Found That The Government Waived Exemption 1. | 8 |
|         3. The Government's Glomar Response Was Also Rejected On Grounds of Waiver. | 9 |
|     C. The Revelation That The Government Released The White Paper In Response To Another FOIA Offers Additional Justification For Reconsideration. | 10 |
| III. CONCLUSION | 11 |

i

Case No. CV 12-01013 CW
MOTION FOR RECONSIDERATION OR RELIEF FROM JUDGMENT
DWT 24083114v9 0200441-000001DWT 24083114v8 0200441-000001

DAVIS WRIGHT TREMAINE LLP

# TABLE OF AUTHORITIES

Page

**Cases**

*ACLU v. CIA*, 710 F.3d 422 (D.C. Cir. 2013) ........ 11

*Brennan Ctr. for Justice v. U.S. Dep't of Justice*, 697 F.3d 184 (2d Cir. 2012) ........ 4, 8

*Circuit City Stores, Inc. v. Mantor*, 417 F.3d 1060 (9th Cir. 2005) ........ 1, 4

*Higdon v. Ryan*, 2013 U.S. Dist. LEXIS 181118 (D. Ariz. Dec. 30, 2013) ........ 5

*Ismail v. Wells Fargo Bank, N.A.*, 2013 U.S. Dist. LEXIS 120397 (E.D. Cal. Aug. 21, 2013) ........ 5, 6

*Khan v. K2 Pure Solutions, LP*, 2013 U.S. Dist. LEXIS 169855 (N.D. Cal. Dec. 2, 2013) ........ 5

*Mobley v. CIA*, 924 F. Supp. 2d 24 (D.D.C. 2013) ........ 6

*N.Y. Times Co. v. United States Dep't of Justice*, 2014 U.S. App. LEXIS 7387 (2d Cir. Apr. 21, 2014) ........ 1, 3, 4, 12

*Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350 (2d Cir. 2005) ........ 4, 8

*Phelps v. Alameida*, 569 F.3d 1120 (9th Cir. 2009) ........ 1, 3

*Williams v. Long*, 585 F. Supp. 2d 679 (D. Md. 2008) ........ 2

*Wilson v. CIA*, 586 F.3d 171 (2d 2009) ........ 10

*Wolf Lake Terminals, Inc. v. Mut. Marine Ins. Co.*, 433 F. Supp. 2d 933 (N.D. Ind. 2005) ........ 2

**Rules**

Federal Rules of Civil Procedure 59(e) ........ 5

Federal Rules of Civil Procedure 59(e) and 60(b) ........ 1, 2, 4

Federal Rules of Evidence 201(b)(2) ........ 5

**Other Authorities**

Rutter Group, California Civil Procedure Before Trial § 14:362 .................................................... 2

WRIGHT, MILLER & KANE, Federal Practice and Procedure, § 2810.1, n.12 ................................. 5

DAVIS WRIGHT TREMAINE LLP

## I. SUMMARY OF ARGUMENT

The Second Circuit's unanimous opinion, issued ten days after this Court's ruling, has eliminated the legal foundation supporting the Court's grant of summary judgment to the Government in this case. After viewing the OLC-DOD Memorandum *in camera*, the Second Circuit determined that the Government had waived its privilege to withhold the identical OLC-DOD memorandum sought by FAC in this case, and that the Government had insufficient support for its Glomar response with regard to the existence of other possibly responsive documents.[1]

The inescapable conclusion of the Second Circuit opinion is this: the Government's invocation of "OLC advice" in defense of its targeted killing program is sufficient to waive any exemptions protecting the document containing that advice from disclosure. *N.Y. Times Co. v. U.S. Dep't of Justice*, 2014 U.S. App. LEXIS 7387, at *42 (2d Cir. Apr. 21, 2014). This Court found the same statements insufficient to constitute waiver. Op. at 30. When a circuit court makes a substantially different decision than a district court on largely the same record, that decision represents an intervening change in the law. *Phelps v. Alameida*, 569 F.3d 1120, 1139 (9th Cir. 2009) ("if there is a close connection between the two cases, the court will be more likely to find the circumstances sufficiently extraordinary to justify disturbing the finality of the original judgment").

Clarifying the same legal authorities also interpreted by this Court, the Second Circuit found:

[1] The Government is apparently now offering Senators unfettered access to the OLC-DOD Memo in order to aide the confirmation of its author, David Barron, to a seat on the Court of Appeals for the First Circuit. *See* Greg Miller, *White House to provide lawmakers access to drone memo authorizing killing of American*, The Washington Post, May 6, 2014, *available at* http://www.washingtonpost.com/world/national-security/drone-memo-authorizing-killing-of-american-shadows-judicial-nominee/2014/05/06/0f032c4e-d531-11e3-8a78-8fe50322a72c_story.html. Public pressure to release the OLC-DOD memo continues to build, as at least one Senator insists that he will not vote on Mr. Barron's nomination until the memo is released publicly. *See* The Editorial Board, *The Lawyer Behind the Drone Policy*, The New York Times, May 7, 2014, *available at* http://www.nytimes.com/2014/05/08/opinion/the-lawyer-behind-the-drone-policy.html?ref=opinion&_r=1; http://www.theatlantic.com/politics/archive/2014/05/this-lawyer-enabled-the-extrajudicial-killing-of-an-american/361832/.

- Statements from government officials that targeted killings are "lawful" and that "OLC advice 'establishes the legal boundaries within which we can operate,'" are sufficient to waive Exemptions 1 and 5, especially when combined with reliance on the White Paper. *N.Y. Times*, U.S. App. LEXIS 7387, at *42.
- The Government's claim that release of the OLC-DOD Memo will make agencies reluctant to consult with counsel was "too much" to be taken seriously. *Id.* at *43.
- The fact that disclosing a document would reveal the identity of the agency that participated in al-Awlaki's killing is not justification for refusing to confirm or deny a document's existence. *Id.* at *46.[2]

The analysis offered by the Second Circuit—based on *National Council of La Raza v. Department of Justice*, 411 F.3d 350, 356 (2d Cir. 2005) and *Brennan Center for Justice v. United States Department of Justice*, 697 F.3d 184, 208 (2d Cir. 2012)—provides compelling legal grounds for the Court to both reconsider, and reverse, its grant of summary judgment for the Government.[3]

The Government's separate release of the White Paper in response to another organization's FOIA request—which the Government chose not to disclose in this proceeding—is an independent basis for reconsideration. Exs. B-C. The White Paper's release in this fashion, as recognized by the Second Circuit offers even more justification for this Court to now consider it. *N.Y. Times*, 2014 U.S. App. LEXIS 7387, at *26-27.

---

[2] The Second Circuit simply redacted the name of the agency. *Id.* at *45-46.

[3] Throughout this three-year litigation, the parties and this Court have repeatedly acknowledged the parallel FOIA litigation in New York. *See* Dkt. 27-28, 47; Op. at 5-8. Indeed, at the conclusion of the January 23, 2014 hearing on the parties' motions, this Court specifically asked counsel about the status of the Second Circuit's ruling in this matter. Moreover, although none of the parties to the *New York Times v. DOJ* litigation brought this Court's April 11, 2014, ruling to the attention of the Second Circuit, that Court was obviously well aware of this litigation. *See N.Y. Times*, 2014 U.S. App. LEXIS 7387, at *37-38. Consequently, it is uniquely appropriate that this Court review its opinion in light of the Second Circuit's unanimous contrary ruling on the near-identical issues.

DAVIS WRIGHT TREMAINE LLP

## II. THE COURT SHOULD REVERSE ITS JUDGMENT IN THIS CASE IN LIGHT OF THE SECOND CIRCUIT'S OPINION

Motions for reconsideration after judgment are governed by Federal Rules of Civil Procedure 59(e) and 60(b). Such reconsideration is appropriate "if the district court: (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Circuit City Stores, Inc. v. Mantor*, 417 F.3d 1060, 1063 n.1 (9th Cir. 2005). As specific grounds for a motion to amend or alter are not listed in Rule 59(e), the district court enjoys considerable discretion in granting (or denying) a motion to amend the judgment, and that discretion must be balanced between finality and "the need to render a just decision on the basis of all the facts." Wright, Miller & Kane, Federal Practice and Procedure § 2810.1 n.12 (2012). *See also Khan v. K2 Pure Solutions, LP*, 2013 U.S. Dist. LEXIS 169855 (N.D. Cal. Dec. 2, 2013) (granting motion for reconsideration in order to prevent "manifest injustice"); *Higdon v. Ryan*, 2013 U.S. Dist. LEXIS 181118 (D. Ariz. Dec. 30, 2013) (granting motion for reconsideration even where a prisoner previously did not apprise the Court of the key fact that he was serving a life sentence). "In order to succeed, a party making a motion for reconsideration pursuant to Rule 59(e) must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Ismail v. Wells Fargo Bank, N.A.*, 2013 U.S. Dist. LEXIS 120397, *8 (E.D. Cal. Aug. 21, 2013) (internal quotation marks omitted).

### A. The Key Disclosures before the Second Circuit Were Also before the Court in This Case.

In reaching its decision, the Second Circuit relied on largely the same statements and disclosures as the ones before the Court in this case. Notably, the record before the Second Circuit included documents released *after* the District Court for the Southern District of New York rendered its now-overturned opinion, including the unclassified Office of Legal Counsel White Paper that this Court declined to consider.[4] Specifically, the Second Circuit found a

[4] Specifically, the Second Circuit held that "[a]lthough we are not required to consider such evidence, the circumstances of this case support taking judicial notice of the statements here. *See* Fed. R. Evid. 201(b)(2). The Government's post-request disclosures go to the heart of the contested issue, and, as discussed below, are inconsistent with some of its prior claims . . . ." 2014 U.S. App. LEXIS 7387, at *25-26 (citation and alterations omitted).

DAVIS WRIGHT TREMAINE LLP

handful of evidence particularly compelling—evidence that amounted to "an extensive public relations campaign to convince the public that [the Administration's] conclusions [about the lawfulness of the killing of al-Awlaki] are correct." 2014 U.S. App. LEXIS 7387, at *37-38. According to the Second Circuit, that campaign consisted of: a March 25, 2010 speech by Harold Hongju Koh (Ex. P to FAC's MSJ); a Feb, 22, 2012 speech by Jeh Johnson (Ex. I to FAC's MSJ); a March 5, 2012 speech by A.G. Holder at Northwestern University (Ex. H to FAC's MSJ); an April 30, 2012 speech by then-counterterrorism-advisor John O. Brennan (Ex. G to FAC's MSJ); the DOJ White Paper (Ex. DD to FAC's MSJ); and the Feb. 7 testimony of Mr. Brennan at his confirmation hearing for Director of Central Intelligence (Ex. LL to FAC's MSJ).[5] *Id.* at *37-40.

Additionally, the Second Circuit considered a statement from A.G. Holder that "the DOJ White Paper's discussion of imminence of threatened action would be more clear if it is read in conjunction with the underlying OLC advice." *Id.* at *42. Although this directive to Congress, instructing members to look at the White Paper in tandem with the classified OLC advice, was not cited by FAC in its brief, and no transcript of this testimony appears to be publicly available,[6] it is strikingly similar to how FAC urged this Court to compare the White Paper and the OLC-DOD memorandum and release whatever information the two have in common. FAC MSJ at 2. Indeed, FAC did cite extremely similar language connecting the White Paper with the Department of Justice's "classified legal advice." Ex. TT to FAC's MSJ. To wit, the Attorney General stated that:

> The analysis in my speech at Northwestern University Law School is entirely consistent with not only the analysis found in the unclassified white paper the Department of Justice provided to your Committee soon after my speech but also with the classified analysis the Department shared with other congressional

---

[5] The Second Circuit found one particular statement of Brennan's especially important: "The Office of Legal Counsel Advice establishes the legal boundaries within which we can operate." *Id.* at *42. This quote was before the Court in this case, although the Court may have overlooked this discussion, and other mentions of OLC (*see e.g.*, Exs. DD, KK, LL, MM and NN to FAC's MSJ) when it declared that "[i]n fact, the only time OLC is mentioned in Plaintiff's exhibits is in a 'press gaggle' by the White House Press Secretary, Jay Carney." Op. at 29.

[6] While no official transcript is available, the video is available at http://www.judiciary.senate.gov/meetings/oversight-of-the-us-department-of-justice-2013-03-06.

DAVIS WRIGHT TREMAINE LLP

> committees in May 2011. … The analysis in my speech is also entirely consistent with the classified legal advice on this issue the Department of Justice has shared with your Committee more recently." *Id*.

These disclosures are essentially same. The contrast between "classified legal advice" provided by the "Department of Justice" and "classified OLC advice" is a distinction without a substantive difference—OLC is a part of the U.S. Department of Justice. Thus, the Second Circuit reached its decision by relying on the same key authorities, but clarifying the law.

Finally, to the extent that the Second Circuit suggests that its ruling can be distinguished from the opinion of this Court because of a distinction between official disclosure and official acknowledgement, case law suggests that acknowledgement of a document is sufficient to lead to its disclosure. *See e.g.*, *Mobley v. CIA*, 924 F. Supp. 2d 24, 65-66 (D.D.C. 2013) ("When information has been officially acknowledged, its disclosure may be compelled even over an agency's otherwise valid exemption claim . . . in order to constitute an official acknowledgement that waives the protections of FOIA exemptions, a disclosure must be both official and documented.") (alterations and quotation marks omitted). Additionally, in distinguishing FAC's case, the Second Circuit did not have the benefit of examining the entire record here and likely relied on the Court's characterization of the Government's mere acknowledgment of the White Paper. The acknowledgements of the White Paper in this case are both official and documented: in addition to statements by the Attorney General (Ex. TT to FAC's MSJ) and the White House spokesman Jay Carney (Exs. JJ & KK to FAC's MSJ),[7] the Government's own briefing stated that the Administration "acknowledged" the document's authenticity. Gov. Reply at 7 n.3. However, even if there is a distinction between these acknowledgements and the contemporaneous disclosure of the White Paper in response to another FOIA requester, FAC

---

[7] Mr. Carney told the press: "I'm just saying that that document was produced by the administration, provided not for public release but provided to senators who have jurisdiction on these issues last year and for the very purposes of consideration that we've been discussing here. And the reason why I can talk about it openly and refer you to it is because it is an unclassified document." Ex. JJ to FAC's MSJ. Although Carney was speaking on Feb. 5, 2013, the day *after* the Government released a version of the White Paper publicly in response to an organization's FOIA request, Mr. Carney did not disclose this information to reporters despite being asked directly if the Government would release the White Paper to the public. *Id*.

DAVIS WRIGHT TREMAINE LLP

asks the Court now to consider that "officially disclosed" version of the White Paper, as the Second Circuit also considered evidence submitted post judgment. *See infra* Sec. II.C.

### B. The Second Circuit Opinion's Clarification of the Law Should Compel This Court To Reverse Its Rulings.

#### 1. The Second Circuit's Holding That Exemption Five Has Been Waived Removes This Court's Primary Justification For Withholding the OLC-DOD Memorandum.

This Court relied most heavily on Exemption 5 in finding that the OLC-DOD Memorandum should be withheld without undertaking *in camera* review. Op. at 29-30, 38. However, based on evidence that was nearly the same as the evidence before this Court, the Second Circuit found that the Government had waived *both* the deliberative process privilege and the attorney-client privilege. Analyzing the public disclosures discussed *supra* Section II.A, the Second Circuit held that "[e]ven if these statements assuring the public of the lawfulness of targeted killings are not themselves sufficiently detailed to establish waiver of the secrecy of the legal analysis in the OLC-DOD Memorandum, they establish the context in which the most revealing document, disclosed after the District Court's decision, should be evaluated." 2014 U.S. App. LEXIS 7387, at *40. Combining that context with the unclassified OLC -White Paper led the Second Circuit to conclude that "[a]fter senior Government officials have assured the public that targeted killings are 'lawful' and that OLC advice 'establishes the legal boundaries within which we can operate,' and the Government makes public a detailed analysis [redacted], waiver of secrecy and privilege as to the legal analysis in the Memorandum has occurred." *Id.* at *42.

The same conditions are satisfied here—since this litigation first began, FAC has extensively documented the government's public-relations campaign in its voluminous exhibits. *See supra* Section II.A. Given the extremely similar evidence before both this Court and the Second Circuit and in light of the Second Circuit's broader interpretation of *National Council of La Raza v. Department of Justice,* 411 F.3d 350, 356 (2d Cir. 2005) and *Brennan Center for Justice v. United States Department of Justice*, 697 F.3d 184, 208 (2d Cir. 2012), this Court, respectfully, should change direction. Indeed, even without the OLC-White Paper, the Second Circuit intimates that the Government may have disclosed the OLC-DOD memo, holding that:

DAVIS WRIGHT TREMAINE LLP

"the Government has [adopted the memo as policy] **by publicly asserting that OLC advice 'establishes the legal boundaries within which we can operate'; it 'cannot invoke that relied-upon authority and then shield it from public view.'"** *Id.* at *43-44 (quoting *Brennan Ctr.*, 697 F.3d at 207-08) (emphasis added). *Cf.* Op. at 30 ("Stating that the President has provided Congress with OLC advice 'related to the subject of' the White Paper is far from an express adoption of the analysis in the DOD memorandum."). Thus, the Second Circuit has clarified that the Government need not refer to a specific memo in order waive Exemption 5, and that a slightly more vague adoption of "OLC advice" is sufficient grounds for waiver under appellate law. 2014 U.S. App. LEXIS 7387, at *42.

Additionally, the Second Circuit rejected Exemption 5 arguments very similar to those made by the Government in this case. As in this case, the Government argued before the Second Circuit that forcing disclosure of the memorandum would inhibit agencies' desire to seek OLC's ability to give frank counsel. *Compare id.* at *43 with Dkt. 63 at 14, arguing "compelled disclosure of this document would undermine the deliberative processes of the Government and chill the candid and frank communications necessary for effective governmental decision-making." The Second Circuit dismissed this concern, stating that "[t]he argument proves too much. If this contention were upheld, waiver of privileges protecting legal advice could never occur." *Id.* at *43. It admonished the Government that "[a]gencies seeking OLC legal advice are surely sophisticated enough to know that in these circumstances attorney/client and deliberative process privileges can be waived and the advice publicly disclosed. We need not fear that OLC will lack for clients." *Id.* at *44.

Finally, it held that "two [of the Government's] arguments concern facts . . . that no longer merit secrecy." *Id.* at *45. "One is the identity of the country in which al-Awlaki was killed" and the other "is the identity of the agency, in addition to DOD, that had an operational role in the drone strike that killed." *Id.* Thus, the Second Circuit has stripped away all of the Government's justifications for withholding the OLC-DOD Memorandum under Exemption 5.

//

//

DAVIS WRIGHT TREMAINE LLP

### 2. The Second Circuit Also Found That The Government Waived Exemption 1.

Similar to its discussion of Exemption 5, the Second Circuit held that the information disclosed by the Government in public speeches by senior officials and the "official disclosure" of the OLC- White Paper satisfies the test for official disclosure sufficient to waive Exemption 1. *Id.* at *47. In doing so, the Second Circuit clarified the test for determining what constitutes official disclosure, holding that the requirement in *Wilson v. CIA*, 586 F.3d 171, 186 (2d Cir. 2009), that the information to be released match the information previously disclosed makes "little sense" as "[a] FOIA requester would have little need for undisclosed information if it had to match precisely information previously disclosed." *Id.* at *47-48. The Court criticized the rigid application of the *Wilson* test and found that the same disclosures that waived Exemption 5 also waived Exemption 1.[8]

Additionally, the Government's arguments and this Court's eventual ruling relied on the now-overturned SDNY order. *See* Op. at 22-23. For example, the Court acknowledged that the Government "rel[ied] on the SDNY court's analysis in the N.Y. Times and ALCU litigation" to show that there is no exception to rules regarding the classification of information with regard to legal analysis. *Id*. at 22-23; 26:13-16 (by implication). This Court adopted the SDNY's finding that that "legal analysis that 'pertains to' military plans or intelligence activities (including covert action), sources or methods – all of which are classified matters – can indeed be classified." *Id.* (quoting the SDNY opinion).

Taking on this question, the Second Circuit agreed that "legal analysis is not an 'intelligence source or method.'" While the Second Circuit recognized that in some circumstances "the very fact that legal analysis was given concerning a planned operation would risk disclosure of the likelihood of that operation, it rejected that justification in this case because "drone strikes and targeted killings have been publicly acknowledged at the highest levels of the

---

[8] While the Second Circuit does not directly address Exemption 3, as it was not addressed by the District Court because it found Exemption 5 to be dispositive, it can be inferred from the ultimate holding that the Government's arguments regarding this exemption were rejected as well.

DAVIS WRIGHT TREMAINE LLP

Government." 2014 U.S. App. LEXIS 7387, at *46-47. It also considered the argument that "legal analysis could be so intertwined with facts entitled to protection that disclosure of the analysis would disclose such facts," but remedied it by redacting "the entire section of the OLC-DOD Memorandum that includes any mention of intelligence gathering activities." *Id.* at *47. Thus, the Second Circuit takes the position that in those rare cases where legal analysis would give way to the disclosure of classified factual information, segregation and redaction, not withholding is the correct course of action. This is identical to the position taken by FAC throughout this case.

Given "the redactions and public disclosures discussed above, it is no longer either 'logical' or 'plausible' to maintain that disclosure of the legal analysis in the OLC-DOD Memorandum risks disclosing any aspect of 'military plans, intelligence activities, sources and methods, and foreign relations.'" *Id.* at *50. Over the course of this case, the Government has made each of those arguments. *See e.g.*, Defs.' Mot. at 12, 14. However, the Second Circuit found that the official release of the White Paper, discussing why the targeted killing of al-Awlaki would not violate several statutes, makes clear that releasing portions of the OLC-DOD Memorandum "**adds nothing to the risk**." 2014 U.S. App. LEXIS 7387, at *50 (emphasis added). "Whatever protection the legal analysis might once have had has been lost by virtue of public statements of public officials at the highest levels and official disclosure of the DOJ White Paper." *Id.*

### 3. The Government's Glomar Response Was Also Rejected On Grounds of Waiver.

The Government sought to justify its Glomar response with regard to other agencies' documents in the Second Circuit with the same argument it used before this Court: "that identification of any document that provides legal advice to one or more agencies on the legality of targeted killings would tend to disclose the identity of the agency or agencies that use targeted lethal force against certain terrorists who are U.S. citizens." *Id.* at *53-54 (quotation marks omitted). Accordingly, the Government claimed that if the CIA was involved, disclosure of the existence of documents related to the CIA would confirm that agency's involvement. *See also* Defs.' Mot. at 17-20; Defs.' Reply at 12-14. Rejecting this argument, the Second Circuit

DAVIS WRIGHT TREMAINE LLP

required the Defense Department and the CIA to submit classified Vaughn indices to the District Court on remand for *in camera* inspection and determination of appropriate disclosure and appropriate redaction. 2014 U.S. App. LEXIS 7387, at *54. Because the government offered the same justification in this case—the Government's only justification for its Glomar response—it should be required to take the same action in this litigation.

### C. The Revelation That The Government Released The White Paper In Response To Another FOIA Offers Additional Justification For Reconsideration.

Despite the fact that the OLC-White Paper was officially released by the Government *after* the district court in the Southern District of New York ruled against releasing the OLC-DOD Memo, the Second Circuit considered it and made it the centerpiece of its opinion. It held that because the post-request disclosures went "to the heart" of the contested issue, it was justified in looking at them, especially because they were inconsistent with the Government's prior claims. *Id.* at *24 n.9. The Second Circuit found that this approach, the same as the one taken in *ACLU v. CIA*, 710 F.3d 422, 430 n.10 (D.C. Cir. 2013), "is the most sensible approach to ongoing disclosures by the Government made in the midst of FOIA litigation." *Id.* at *26.

In considering the White Paper, the Second Circuit noted that it was released to a website called Truthout on February 4, 2013, four days after its existence was first reported by NBC News. *Id.* at *25 n.10. The DOJ Office of Legal Policy provided the White Paper to Truthout in response to a six-month-old FOIA request seeking documents addressing "the use of Unmanned Aerial Vehicles (commonly referred to as 'drones') for the purposes of engaging in lethal force in other countries against terrorist targets." Exs. B-C, *available at* http://www.truth-out.org/news/item/14585-targeted-killing-white-paper-leaked-to-nbc-news-turned-over-to-truthout-by-doj-in-response-to-a-six-month-old-foia-request-four-days-later; https://www.documentcloud.org/documents/602342-draft-white-paper.html. The Second Circuit described the release of the White Paper—by the OLP—as "an official disclosure" and stated that the Government has "has conceded that the White Paper, with its detailed analysis of legal reasoning, has in fact been officially disclosed." 2014 U.S. App. LEXIS 7387, at *43. The Government has made no such concession here.

The Government had ample opportunity to fully disclose its actions with regard to the White Paper, given that it entered into a stipulation with FAC shortly after the White Paper came out to allow FAC to submit it to the Court. Instead of plainly stating that it also provided the White Paper in response to a FOIA request from another organization, *on the very same day* that the federal government "officially disclosed" (quoting the Second Circuit) the OLC-White Paper to another organization in response to its FOIA request, the DOJ in this litigation insisted that counsel for FAC note for the Court that it wasn't stipulating that the White Paper was "relevant to the issues before the Court." Ex. D. And when the Government submitted its reply brief on summary judgment, instead of stating that the White Paper had been released by the Government in response to another FOIA, it merely said that it had been "acknowledged." This echoes the half-disclosure made by the White House on February 5, 2013. The President's spokesperson, Jay Carney, told reporters asking if the Government would release the White Paper that "it was online." He further stated that "that document was produced by the administration, provided not for public release" just one day *after* the Government had publicly released the document to Truthout. Ex. JJ to FAC MSJ; Exs. B-C.

While the Government was not legally bound to affirmatively disclose the White Paper's release, as this is not a criminal matter, it is reasonable to expect that the Department of Justice would hold itself to a higher standard – especially in a context of FOIA litigation where there is essentially no opportunity for discovery. Although the Government insisted in this litigation that the White Paper was not relevant to questions of drones and targeted killings Dkt. 52; Ex. D, the Second Circuit disagreed, holding that when analyzing the White Paper along with comments by John Brennan and Attorney General Eric Holder that were also provided to this Court (*See supra* Sections II.A-B) the Government waived both exemptions for national security and privilege. This Court should do the same.

## III. CONCLUSION

For all these reasons, FAC respectfully requests that the Court reconsider its judgment, and grant FAC's Cross-Motion for Summary Judgment. Given the conflicting ruling in the Second Circuit, the Government cannot claim that interests in judicial finality would be disturbed

by reversing this judgment. Such an action would be in the interest of justice, encourage consistency in FOIA law across the circuits, and, most importantly, compel disclosure of the OLC memorandum concerning the legal basis for the federal government's decision to execute al-Awlaki.

DATED: This 8th day of May, 2014　　　　　DAVIS WRIGHT TREMAINE LLP

By: /s/ Thomas R. Burke
　　　Thomas R. Burke
　　　Attorneys for Plaintiff
　　　FIRST AMENDMENT COALITION