| | |
|---|---|
| 1 | THOMAS R. BURKE (State Bar No. 141930) |
| | JONATHAN L. SEGAL (State Bar No. 264238) |
| 2 | KATHLEEN CULLINAN (State Bar No. 287604) |
| | DAVIS WRIGHT TREMAINE LLP |
| 3 | 505 Montgomery Street, Suite 800 |
| | San Francisco, California 94111 |
| 4 | Telephone: (415) 276-6500 |
| 5 | Facsimile: (415) 276-6599 |
| | Email: thomasburke@dwt.com; |
| 6 | jonathansegal@dwt.com; |
| | kathleencullinan@dwt.com |
| 7 | |
| 8 | Attorneys for Plaintiff |
| | FIRST AMENDMENT COALITION |

IN THE UNITED STATES DISTRICT COURT

THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | | |
|---|---|---|
| FIRST AMENDMENT COALITION, | ) | Case No. CV 12-01013 CW |
| | ) | [Assigned to the Hon. Claudia Wilken] |
| Plaintiff, | ) | |
| | ) | **NOTICE OF MOTION AND MOTION FOR TO VACATE; REQUEST FOR JUDICIAL NOTICE; DECLARATION OF JONATHAN L. SEGAL WITH EXHIBITS A-J** |
| vs. | ) | |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | **[PROPOSED] ORDER FILED CONCURRENTLY** |
| | ) | |
| | ) | Date: *TBD* |
| | ) | Time: *TBD* |
| | ) | Place: Courtroom 2 - 4th Floor |

DAVIS WRIGHT TREMAINE LLP

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that Plaintiff First Amendment Coalition ("FAC") will and hereby does move this Court to vacate its Order of April 11, 2014 granting summary judgment to the Government (Dkt. 86), and its entry of judgment of April 11, 2014 (Dkt. 87).

The Order should be vacated for the following reasons:

*First,* the Court's Order should be vacated as this action became moot when the Government capitulated by releasing responsive documents (including a responsive memo on August 15, 2014), in the face of mounting political pressure, FAC's Motion for Reconsideration, and the Second Circuit's opinions in *New York Times v. U.S. Department of Justice*. A litigant should not be bound by an adverse unreviewed judgment "when mootness results from unilateral action of the party who prevailed below." *Dilley v. Gunn*, 64 F.3d 1365, 1370 (9th Cir. 1995) citing *United States Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18 (1994). Indeed, "mootness by happenstance provides sufficient reason to vacate." *Dilley*, 64 F.3d at 1370. Here, the substantive mootness of this case did not result from any settlement entered into by FAC. Rather, the Government unilaterally capitulated in the face of an adverse appellate decision that it chose not to further appeal in order to serve its own political aims.[1]

*Second,* even in the absence of the "established practice," sufficient grounds exist to vacate the court's Order here. *See Ringsby Truck Lines, Inc. v. Western Conference of Teamsters*, 686 F.2d 720, 722 (9th Cir. 1982) (mandating a balancing of the equities when the traditional rule of vacatur does not apply). Because the Court's Order was: (1) based on incomplete information it received from the Government about the status of the OLC White Paper; and (2) provides an interpretation of FOIA law that conflicts with a more recent circuit decision on identical issues, the balance of the equities tips against the interest in preserving the finality of judgment.

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Jonathan Segal with Exs. A-J.; the Request for Judicial

---

[1] *See, e.g.,* Exs. D –J.

| | |
|---|---|
| 1 | Notice; all other records and files in this action; and upon such further oral and/or documentary |
| 2 | matters as may be presented to this Court at or before the hearing on this Motion. |
| 3 | |
| 4 | DATED: This 25th day of September, 2014        DAVIS WRIGHT TREMAINE LLP |
| 5 | |
| 6 | |
| 7 | By: /s/ Thomas R. Burke |
|   | Thomas R. Burke |
|   | Attorneys for Plaintiff |
| 8 | FIRST AMENDMENT COALITION |

DAVIS WRIGHT TREMAINE LLP

**TABLE OF CONTENTS**

Page

I. SUMMARY OF ARGUMENT ........................................................................................1

II. THE APRIL 11, 2014 ORDER SHOULD BE VACATED .......................................3

    A.    Vacatur Is Automatic When A Case Under Review Is Mooted By The Unilateral Action of the Opposing Party. ........................................................3

    B.    The Balance of the Equities Also Favors Vacatur ...........................................5

    C.    The April 11, 2014 Order Should Be Vacated As It Is Based On Incomplete Information. ..................................................................................6

    D.    Vacating the April 11, 2014 Order Serves An Interest In Consistent Application of the Law. ....................................................................................8

III. CONCLUSION .............................................................................................................10

DAVIS WRIGHT TREMAINE LLP

Table of Authorities

**Page(s)**

**Cases**

*ACLU v. CIA*,
 710 F.3d 422 (D.C. Cir. 2013) ...................................................................................................6

*ACLU v. Masto*,
 670 F.3d 1046 (9th Cir. 2012) ................................................................................................2, 5

*Armstrong v. Executive Office of the President*,
 97 F.3d 575 (D.C. Cir. 1996) .................................................................................................4, 5

*Brennan Ctr. for Justice at N.Y. Univ. Sch. of Law v. U.S. Dep't of Justice*,
 697 F.3d, 207-08 ........................................................................................................................9

*Ctr. for Biological Diversity v. Lohn*,
 511 F.3d 960 (9th Cir. 2007) ............................................................................................3, 4, 5

*Dilley v. Gunn*,
 64 F.3d 1365 (9th Cir. 1995) ............................................................................................2, 3, 5

*Hall v. C.I.A.*
 437 F.3d 94 (D.C. Cir. 2006) ....................................................................................................4

*NASD Dispute Resolution, Inc. v. Judicial Council*,
 488 F.3d 1065 (9th Cir. 2007) ...............................................................................................4, 5

*Ringsby Truck Lines, Inc. v. Western Conference of Teamsters*,
 686 F.2d 720 (9th Cir. 1982) .....................................................................................................3

*United States v. Munsingwear, Inc.*,
 340 U.S. 36 (1950) ..............................................................................................................3, 4, 5

*Wilson v. CIA*,
 586 F.3d 171 (2d Cir. 2009) .......................................................................................................9

**Statutes**

Endangered Species Act. ....................................................................................................................3

Freedom of Information Act...................................................................................................*passim*

**Other Authorities**

2014 U.S. App. LEXIS 7387...............................................................................................8, 9, 10

Wright & Miller, Federal Practice and Procedure § 3533.10.3 .......................................................3

# I. SUMMARY OF ARGUMENT

The Government's unilateral decisions to release a second memo responsive to FAC's FOIA request and to forego its appeal of the Second Circuit's decision to achieve a political goal for the Obama Administration have resolved the substantive issues in this FOIA case and prevent FAC from gaining a hearing on its motion for reconsideration. In such a situation, where mootness prevents a party from obtaining review of a not-yet-final decision, and where the mootness resulted from the initially – *but not ultimately* – victorious party's decision to moot the case through its actions, the original judgment must be vacated lest it plant the seeds of an erroneous precedent.

On April 11, 2014, this Court issued a decision granting the Government's summary judgment motion and denying FAC's cross motion seeking release of Office of Legal Counsel ("OLC") legal memoranda providing the legal justification for the targeted killing of Anwar al-Awlaki. Dkt. 86. The Court's decision was based, in part, on the assumption that the Government had never officially released a key document, an OLC White Paper containing much of the legal reasoning that was included in the OLC-DOD memorandum sought by FAC. *Id.* at 24. Just ten days later, the Second Circuit issued a unanimous decision which eliminated the legal foundation supporting the Court's grant of summary judgment to the Government in this case. (The revised version of the Second Circuit's opinion is attached as Ex. B. ("Op.") After viewing the OLC-DOD Memorandum *in camera*, the Second Circuit determined that the Government had waived its privilege to withhold the identical OLC-DOD memorandum sought by FAC in this case when it was officially released by the Government in response to another FOIA request. Op. at 42. The Second Circuit's final opinion specifically stated that "the substantial overlap in the legal analyses in the two documents [the OLC White Paper and the OLC-DOD Memorandum] fully establishes that the Government may no longer validly claim that the legal analysis in the Memorandum is a secret." *Id.* Although the Government had the opportunity to pursue an *en banc* appeal in the Second Circuit, instead, in the face of mounting political pressure, it capitulated in that litigation, apparently to secure the confirmation of the

OLC-DOD memo's author to a seat on the Court of Appeal for the First Circuit.[2]

In the wake of the Second Circuit's opinion, on May 8, 2014, FAC filed a motion for reconsideration of the April 11, 2014 Order. Dkt. 88. After reviewing the motion and the Second Circuit opinion, the Court ordered the parties to confer over whether the result of the Second Circuit case mooted this action. As the case stood in May 2014, FAC took the position that the case was not moot, as FAC believed that there were additional memoranda that were responsive to FAC's FOIA request. Segal Decl. ¶ 2. Indeed, when the parties met and conferred, the Government revealed that it possessed a second memorandum responsive to FAC's FOIA request. *Id.* ¶ 3. The Government – without obtaining any concessions from FAC – unilaterally decided to release the memorandum and represented to FAC that no other responsive documents existed. *Id*. ¶ 3. Upon release of that document – an OLC memorandum that confirmed that the CIA was the first agency to seek a legal opinion concerning the proposed operation against al-Awlaki (the "CIA Memo") – and confirmation that the Government was not withholding any further documents responsive to FAC's FOIA request, it became apparent that no substantive issues remained to be litigated. Segal Decl. ¶ 4. Although FAC achieved the result it sought, the release of the requested memoranda, the Court's April 11, 2014 Order remains in force and FAC seeks to have the Order vacated for several reasons.

*First*, this case presents a textbook case for application of the "normal rule" that when a case is mooted through happenstance while a party is contesting the trial court's judgment, the trial court's judgment and opinion should be vacated. *ACLU v. Masto*, 670 F.3d 1046, 1065 (9th Cir. 2012), *citing Camreta v. Greene*, ___ U.S. ___ , 131 S. Ct. 2020, 2035 (2011). "That is the default approach because it 'prevent[s] a judgment, unreviewable because of mootness, from spawning any legal consequences.'" *ACLU v. Masto*, 670 F.3d 1046, 1065 (9th Cir. 2012), *quoting United States v. Munsingwear, Inc*., 340 U.S. 36, 41 (1950); *Dilley v. Gunn,* 64 F.3d 1365, 1369 (9th Cir. 1995).

---
[2] *See* Exs. D- J (collecting news articles and a statement regarding the Government's announcement that it would not appeal the Second Circuit's decision on the eve of Mr. Barron's confirmation).

DAVIS WRIGHT TREMAINE LLP

*Second*, even in the absence of the "established practice," sufficient grounds exist to vacate the Court's Order here. *See Ringsby Truck Lines, Inc. v. Western Conference of Teamsters*, 686 F.2d 720, 722 (9th Cir. 1982) (mandating a balancing of the equities when the traditional rule of vacatur does not apply). Because the April 11, 2014 Order: (1) was based on incomplete information; and (2) provides an interpretation of FOIA law in conflict with more recent circuit decisions on identical issues, the balance of the equities tips against the interest in preserving the finality of judgment.

Accordingly, FAC respectfully requests that the Court vacate its Order and judgment of April 11, 2014.

## II. THE APRIL 11, 2014 ORDER SHOULD BE VACATED

### A. Vacatur Is Automatic When A Case Under Review Is Mooted By The Unilateral Action of the Opposing Party.

The Supreme Court has held that "the established practice of the Court in dealing with a civil case from a court in the federal system which has become moot . . . is to reverse or vacate the judgment below and remand with a direction to dismiss." *Munsingwear,* 340 U.S. at 39-40. "That procedure . . . eliminates a judgment, review of which was prevented through happenstance. When that procedure is followed, the rights of all parties are preserved. . . ." *Id.* The Ninth Circuit has explained that "[i]n the decades since *Munsingwear*, we have treated <u>automatic</u> <u>vacatur</u> as the 'established practice,' applying whenever mootness prevents appellate review." *Dilley*, 64 F.3d at 1369 (emphasis added). And "[i]f the winner acts to moot the action courts are quite likely to vacate the judgment for fear that the winner has acted to preserve the victory as precedent or preclusion." Wright & Miller, Federal Practice and Procedure § 3533.10.3.

When a federal agency's action renders a case moot while it is under review, vacatur of the original Order is the appropriate result. *See Ctr. for Biological Diversity v. Lohn*, 511 F.3d 960, 966 (9th Cir. 2007). In *Lohn*, the trial court granted partial summary judgment to the National Marine Fisheries Service, which was defending a suit over the enforcement of the Endangered Species Act. *Id.* at 962. The plaintiff sought to mandate the listing of the Southern Resident killer whale as an endangered species. *Id.* The trial court ruled the Government's

3

policy was not contrary to law, but ordered the Government to reexamine the question of whether the whale should be listed as endangered. *Id.* The government relisted the whale as a threatened species, and the plaintiff appealed to the Ninth Circuit. *Id.* at 963. During the pendency of the appeal, the Government listed the whale as endangered. *Id.* Because of the listing by the Government, the Ninth Circuit ruled the case was moot, and vacated "the portion of the district court's order from which the Center has appealed." *Id.* at 966.

Courts have applied this doctrine in the FOIA context. In *Armstrong v. Executive Office of the President*, 97 F.3d 575, 582 (D.C. Cir. 1996), the Government initially withheld a document under Exemption 3, and the District Court upheld the withholding of that document. In the interim time between the district court's ruling and the appeal, the government unilaterally released the document. The plaintiff argued, and the D.C. Circuit agreed, that this compelled it to vacate the opinion. *Id.* ("Appellant argues that we should vacate the district court's ruling on the issue. We agree with this as well.") (citing *Munsingwear*, 340 U.S. at 40). And in *Hall v. C.I.A.* 437 F.3d 94, 99-100 (D.C. Cir. 2006), the D.C. Circuit, deciding whether to vacate mooted opinions in the FOIA context, acknowledged that "[t]he normal principle is that when mootness results from unilateral action of the party who prevailed below, the moot judgment should be vacated lest the losing party, denied an opportunity to appeal by its adversary's conduct, should later be subject to the judgment's preclusive effect. We have previously applied this principle in the FOIA context." *Id.* at 99-100 (citations omitted).

Additionally, in *NASD Dispute Resolution, Inc. v. Judicial Council*, 488 F.3d 1065, 1068 (9th Cir. 2007), a case under appeal at the Ninth Circuit was mooted when an earlier case based on the same principles was decided by the California Supreme Court, which found that the law at issue in both cases was pre-empted. The parties agreed that the decision in the earlier case mooted the later case, but disagreed as to whether the district court's opinion in their case should be vacated, as one party did "not wish to taint with vacatur a published opinion" that contained a beneficial holding. *Id.* However, the Court held that the rule of *Munsingwear* " requires us to vacate the district court's judgment." *Id.* at 1070. The Court explained that "[t]he present case is one in which 'happenstance,' not the parties' own actions, rendered the appeal moot. The

appellants did not settle the case, nor did they fail to appeal. Rather, this court and the California Supreme Court resolved the controversy…" The Court further concluded that if a case became moot because of the actions of another court, no exception to the *Munsingwear* rule should apply. *Id.*

Here, the Government's unilateral action, taken under political pressure, mooted this case – not any decision to settle by FAC. Rather, the case is moot because of two factors. *First*, and most importantly, in the face of political and judicial pressure from Congress, the Second Circuit, and this litigation, the Government made an independent, unilateral decision to capitulate in both the Second Circuit and here, with regard to the release of the OLC-DOD memo *and* the later release of the CIA Memo. *Second*, the Second Circuit, through a series of orders and opinions that thoroughly addressed the Government's waiver of its FOIA exemptions specifically as to the OLC-DOD memo, provides a definitive interpretation of the law regarding what constitutes waiver of Exemptions 1, 3 and 5 to the Freedom of Information Act: the Government's previous disclosures, including the earlier release of the White Paper to an activist group called TruthOut constituted an official release sufficient to waive the exemptions it asserted to withhold the OLC-DOD Memo.

In the Second Circuit, the Government declined to contest the opinion *en banc* or to seek review in the U.S. Supreme Court. And in this case, the Government released the OLC-DOD memo without any promise of settlement or compromise from FAC and, weeks later, also released the CIA memo without any conditions. This case bears striking similarities to *NASD, Ctr. for Biological Diversity* and *Armstrong,* as it was mooted by another court's action *and* by the unilateral capitulation of a government agency – the Government's decision to release the second responsive memo. Accordingly, the normal rule that a litigant who has appealed should not be bound by an adverse unreviewed judgment "when mootness results from unilateral action of the party who prevailed below," (*Dilley* 64 F.3d at 1365), fully applies here.

**B.  The Balance of the Equities Also Favors Vacatur.**

While the normal automatic vacatur rule applies in this case, the balance of the equities should further compel this court to vacate the April 11, 2014 ruling. In considering whether to

vacate a case that is not governed by the automatic rule, a district court should "balance the relevant equitable concerns and decide whether to vacate its judgment." *ACLU*, 670 F.3d at 1066. Here, the interests in consistent application of FOIA law and factual accuracy outweigh any interest that the Government may have in preserving the finality of the judgment.

### C. The April 11, 2014 Order Should Be Vacated As It Is Based On Incomplete Information.

Despite the fact that the OLC-White Paper was officially released by the Government *after* the district court in the Southern District of New York ruled against releasing the OLC-DOD Memo, the Second Circuit considered it and made the Government's release of this document to another FOIA requester the centerpiece of its opinion. It held that because the post-request disclosures went "to the heart" of the contested issue, it was justified in looking at them, especially because they were inconsistent with the Government's prior claims. Op. at n.9. The Second Circuit found that this approach, the same as the one taken in *ACLU v. CIA*, 710 F.3d 422, 430 n.10 (D.C. Cir. 2013), "is the most sensible approach to ongoing disclosures by the Government made in the midst of FOIA litigation." Op. at n.9. In its Opinion, the Second Circuit recognized that the OLC-White Paper was an officially sanctioned government document, because it had actually been earlier released to another organization in response to its FOIA request. Op. at 26 n. 10. However, in this FOIA litigation, the Government did not plainly disclose that release and, for this reason, understandably this Court could not fully appreciate its significance to the waiver issues central to this case.

Without knowing that the Government had already officially released the White Paper, in contrast, here, this Court relied on the Government's characterization to reach the conclusion that the White Paper had not been "officially released." The Government had the opportunity to fully disclose its actions with regard to the White Paper, given that it entered into a stipulation with FAC shortly after the White Paper came out to allow FAC to submit it to the Court. Indeed, on the very same day that the federal government "officially disclosed" (quoting the Second Circuit) the OLC-White Paper to the activist organization TruthOut in response to its FOIA request, an interim litigator no longer on this case insisted that counsel for FAC note as part of the submission to this Court that DOJ wasn't stipulating that the White Paper was "relevant to the

issues before the Court." Ex. C. And when the Government submitted its reply brief on summary judgment, instead of disclosing to the Court that the White Paper had already been released by the Government in response to another FOIA request, it merely said that it had been "acknowledged."[3] However, "the Government has conceded that the White Paper, with its detailed analysis of legal reasoning, has in fact been officially disclosed." Op. at 44.

While the Government was not legally bound to affirmatively disclose the White Paper's release, as this is not a criminal matter, it is reasonable to expect that the Department of Justice would hold itself to a higher standard – especially in a context of FOIA litigation where there is essentially no opportunity for discovery. Despite the Government's insistence in this litigation that the OLC-White Paper was not relevant to questions of drones and targeted killings, the Second Circuit, informed that the OLC-White Paper had been publicly released, disagreed, holding that when analyzing the OLC-White Paper along with comments by John Brennan and Attorney General Eric Holder that were also provided to this Court, the Government waived both exemptions for national security and privilege. Op. at 42-43.

Notably, the official release of the OLC-White Paper is the *only* fact that the Second Circuit uses to distinguish its holding from this Court's Order. Op. at 43 ("After senior Government officials have assured the public that targeted killings are 'lawful' and that OLC advice 'establishes the legal boundaries within which we can operate,' and the Government makes public a detailed analysis of nearly all the legal reasoning contained in the OLC-DOD Memorandum, waiver of secrecy and privilege as to the legal analysis in the Memorandum has occurred."). Accordingly, once this Court similarly appreciates that the OLC-White Paper was "officially released" there will be no grounds for distinguishing this case from the Second Circuit's. If the April 11, 2014 Order is not vacated, the Court will allow a decision to stand that is based on erroneous facts – facts that the Government allowed the Court to believe. It is in the

---

[3] This echoes the half-disclosure made by the White House on February 5, 2013. The President's spokesperson, Jay Carney, told reporters asking if the Government would release the White Paper that "it was online." He further stated that "that document was produced by the administration, provided not for public release" just one day *after* the Government had publicly released the document to TruthOut. Ex. JJ to FAC MSJ (Dkt. 69); Exs. B & C to Motion for Reconsideration (Dkt. 88).

7

interests of justice to vacate such an order.

### D. Vacating the April 11, 2014 Order Serves An Interest In Consistent Application of the Law.

As it stands now, the April 11, 2014 Order and the Second Circuit's redacted and unredacted opinions are in direct conflict. In reaching its decision, the Second Circuit relied on largely the same statements and disclosures as the ones before this Court. Notably, the record before the Second Circuit included documents released *after* the District Court for the Southern District of New York rendered its now-overturned opinion, including the unclassified OLC White Paper that this Court declined to consider. The Second Circuit found that "[t]he Government's post-request disclosures go to the heart of the contested issue, and, as discussed below, are inconsistent with some of its prior claims . . . ." Op. at 25, n. 9. A handful of evidence was particularly compelling—evidence that amounted to "an extensive public relations campaign to convince the public that [the Administration's] conclusions [about the lawfulness of the killing of al-Awlaki] are correct." Op. at 37.[4]

However, the Second Circuit reached a starkly different conclusion: that the Government had waived Exemptions 1 and 5. The Second Circuit found that the Government had waived *both* the deliberative process privilege and the attorney-client privilege. Op. at 29-30. Analyzing the public disclosures made by the Government, the Second Circuit held that combining the public-relations campaign context of years of partial government disclosures with the official release of the unclassified OLC -White Paper, "waiver of secrecy and privilege as to the legal analysis in the Memorandum has occurred." *Id.* at 43.

The same conditions are satisfied here—since this litigation first began, FAC has extensively documented the government's public-relations campaign. *See supra* Section II.A. Given the extremely similar evidence before both this Court and the Second Circuit, this Court,

---

[4] According to the Second Circuit, that campaign consisted of: a March 25, 2010 speech by Harold Hongju Koh (Ex. P to FAC's MSJ); a Feb, 22, 2012 speech by Jeh Johnson (Ex. I to FAC's MSJ); a March 5, 2012 speech by A.G. Holder at Northwestern University (Ex. H to FAC's MSJ); an April 30, 2012 speech by then-counterterrorism-advisor John O. Brennan (Ex. G to FAC's MSJ); the OLC-White Paper (Ex. DD to FAC's MSJ); and the Feb. 7 testimony of Mr. Brennan at his confirmation hearing as CIA Director (Ex. LL to FAC's MSJ). *Id.* at 37-40.

8

respectfully, should change direction. Indeed, even without the OLC-White Paper, the Second Circuit intimates that the Government may have disclosed the OLC-DOD memo, holding that: "the Government has [adopted the memo as policy] **by publicly asserting that OLC advice 'establishes the legal boundaries within which we can operate'; it 'cannot invoke that relied-upon authority and then shield it from public view.'"** *Id.* at 44 (quoting *Brennan Ctr.*, 697 F.3d at 207-08) (emphasis added). *Cf.* Dkt. 86. at 30 ("Stating that the President has provided Congress with OLC advice 'related to the subject of' the White Paper is far from an express adoption of the analysis in the DOD memorandum."). Thus, the Second Circuit made clear that the Government need not refer to a specific memo in order waive Exemption 5, and that a slightly more vague adoption of "OLC advice" is sufficient grounds for waiver under appellate law. Op. at 42.

Additionally, the Second Circuit rejected Exemption 5 arguments very similar to those made by the Government in this case. As in this case, the Government argued before the Second Circuit that forcing disclosure of the memorandum would inhibit agencies' desire to seek OLC's ability to give frank counsel. *Compare id.* at 44 with Dkt. 63 at 14, arguing "compelled disclosure of this document would undermine the deliberative processes of the Government and chill the candid and frank communications necessary for effective governmental decision-making." The Second Circuit dismissed this concern. *Id.* at 43. It admonished the Government that "[a]gencies seeking OLC legal advice are surely sophisticated enough to know that in these circumstances attorney/client and deliberative process privileges can be waived and the advice publicly disclosed. We need not fear that OLC will lack for clients." *Id.* at 44.

Similar to its discussion of Exemption 5, the Second Circuit held that the information disclosed by the Government in public speeches by senior officials and the "official disclosure" of the OLC- White Paper satisfies the test for official disclosure sufficient to waive Exemption 1. *Id.* at 53-55. In doing so, the Second Circuit clarified the test for determining what constitutes official disclosure, holding that the requirement in *Wilson v. CIA*, 586 F.3d 171, 186 (2d Cir. 2009), that the information to be released match the information previously disclosed makes "little sense" as "[a] FOIA requester would have little need for undisclosed information if it had

to match precisely information previously disclosed." *Id.* at 54. The Court criticized the rigid application of the *Wilson* test and found that the same disclosures that waived Exemption 5 also waived Exemption 1.

Finally, unlike this Court, the Second Circuit agreed that "legal analysis is not an 'intelligence source or method.'" *Id.* at 52. While the Second Circuit recognized that in some circumstances "the very fact that legal analysis was given concerning a planned operation would risk disclosure of the likelihood of that operation," it rejected that justification in this case because "drone strikes and targeted killings have been publicly acknowledged at the highest levels of the Government." Op. at 52. It also considered the argument that "legal analysis could be so intertwined with facts entitled to protection that disclosure of the analysis would disclose such facts," but remedied it by redacting "the entire section of the OLC-DOD Memorandum that includes any mention of intelligence gathering activities." *Id.* at 52. Thus, the Second Circuit takes the position that in those rare cases where legal analysis would give way to the disclosure of classified factual information, segregation and redaction, not withholding is the correct course of action. This is identical to the position taken by FAC throughout this case.

Thus, faced with largely the same facts, this court and the Second Circuit reached different conclusions. Given the dearth of published opinions in this area outside the D.C. Circuit, it is quite possible that, if this Court's April 11, 2014 Order is not vacated, it will cause a split in the development of a consistent body of FOIA law – this case will be one of the few cases examining these issues in the Ninth Circuit. Indeed, avoiding such a split by vacating the Order favors a public interest in consistent application of the law.

## III. CONCLUSION

For all these reasons, FAC respectfully requests that the Court vacate its April 11, 2014 Order and judgment.

DATED: This 25th day of September, 2014      DAVIS WRIGHT TREMAINE LLP

By: /s/ Thomas R. Burke
Thomas R. Burke
Attorneys for Plaintiff
FIRST AMENDMENT COALITION

10

Case No. CV 12-01013 CW
Motion to Vacate
DWT 24852442v5 0200441-000001