THOMAS R. BURKE (State Bar No. 141930)
JONATHAN L. SEGAL (State Bar No. 264238)
KATHLEEN CULLINAN (State Bar No. 287604)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California  94111
Telephone:     (415) 276-6500
Facsimile:     (415) 276-6599
Email:          thomasburke@dwt.com;
                jonathansegal@dwt.com
                kathleencullinan@dwt.com

Attorneys for Plaintiff
FIRST AMENDMENT COALITION

IN THE UNITED STATES DISTRICT COURT

THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| FIRST AMENDMENT COALITION,<br><br>            Plaintiff,<br><br>      vs.<br><br>U.S. DEPARTMENT OF JUSTICE,<br><br>            Defendant. | Case No. CV 12-01013 CW<br>[Assigned to the Hon. Claudia Wilken]<br><br>**CORRECTED NOTICE OF MOTION AND MOTION FOR ATTORNEYS FEES AND COSTS; DECLARATIONS OF THOMAS R. BURKE AND JONATHAN L. SEGAL WITH EXHIBITS A-P**<br><br>**[PROPOSED] ORDER AND REQUEST FOR JUDICIAL NOTICE FILED PREVIOUSLY**<br><br>Date:        *TBD*<br>Time:        *TBD*<br>Place:       Courtroom 2 - 4th Floor |

*DAVIS WRIGHT TREMAINE LLP*

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that Plaintiff First Amendment Coalition ("FAC") will and hereby does move this Court for an award to recover its attorneys fees and costs in this FOIA litigation.[1]

*First,* FAC is eligible to be reimbursed its attorneys fees and costs because its lawsuit was necessary to compel the Government to release the DOJ legal memoranda that FAC sought to make public and because FAC has prevailed in this litigation.  Through this litigation, FAC obtained the DOJ legal memoranda that it sought – the memoranda "concerning the legality of the lethal targeting of Anwar al-Awlaki[.]"  Additionally, because FAC has been tenacious in this litigation, the Government consistently has been forced to revise its factual and legal positions.  FAC prevailed in spite of the Government's steadfast recalcitrance, and achieved success in the challenging context of national-security litigation.

*Second,* FAC is entitled to fees because the equitable factors favor granting fees here, as (1) the public benefit resulting from FOIA disclosures in the case is clear, (2) there was no commercial benefit to the party resulting from the disclosures, (3) FAC's interest in the withheld memoranda was to contribute to the public debate about the constitutional limits of the powers of the Executive Branch to execute U.S. citizens abroad who were suspected terrorists, and (4) it overcame the Government's intransigence, motivated by the Government's desire to withhold this information from the public, which was not justified.

///

///

///

---

[1] Per the Court's September 2, 2014, Order Setting Briefing Schedule (Dkt. 95), the Court ordered that this matter "will be decided on the papers unless the Court deems oral argument necessary."  Accordingly, FAC is not noticing this matter for a specific hearing date.

DAVIS WRIGHT TREMAINE LLP

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declarations of Thomas R. Burke and Jonathan L. Segal with Exs. A-P; the Request for Judicial Notice; all other records and files in this action; and upon such further oral and/or documentary matters as may be presented to this Court at or before the hearing on this Motion.

DATED:  This 13th day of October, 2014          DAVIS WRIGHT TREMAINE LLP


By:  /s/ Thomas R. Burke
     Thomas R. Burke
     Attorneys for Plaintiff
     FIRST AMENDMENT COALITION

DAVIS WRIGHT TREMAINE LLP

Case No. CV 12-01013 CW
CORRECTED MOTION FOR ATTORNEYS FEES AND COSTS
DWT 25011361v3 0200441-000001

**TABLE OF CONTENTS**

<u>Page</u>

I.     SUMMARY OF ARGUMENT AND BACKGROUND..................................................... 1

II.    THE COURT SHOULD AWARD FAC ITS FEES. ....................................................... 5

       A.     FAC Is Eligible for an Award of Fees As This Litigation Resulted In The
              Release of the OLC-DOD and CIA Memoranda. .................................................. 6

              1.     FAC's Lawsuit Was Necessary To Obtain The Memoranda. .................... 8

              2.     FAC Substantially Prevailed In This Litigation. ....................................... 8

                     a.     The Government Has Released The Documents Responsive
                           To FAC's FOIA Request................................................................. 8

                     b.     FAC's Tenacious Litigation In This Case Has Steadily
                           Eroded The Government's Legal and Factual Positions. ............. 12

                     c.     The Government's Recalcitrance Further Supports a Finding
                           of Eligibility. ................................................................................ 14

       B.     FAC Is Entitled To Recover Its Fees Because Its Litigation In The Face Of
              Government Obfuscation Resulted In The Release Of Documents That Are
              Integral To The Public Interest........................................................................... 15

              1.     FAC Litigated This Matter And Sought The Memos'
                     Release To Serve The Public Interest, Not Its Own................................. 16

              2.     The Government's Positions Lacked A Reasonable Basis In
                     Law. ........................................................................................................ 17

III.   CONCLUSION ........................................................................................................... 20

DAVIS WRIGHT TREMAINE LLP

# TABLE OF AUTHORITIES

Page

**CASES**

*ACLU v. DEA,*
2012 U.S. Dist. Lexis 190389 (N.D. Cal. Nov. 8, 2012) .................................................. 16, 17

*ACLU v. United States Dep't of Homeland Sec.,*
810 F. Supp. 2d 267 (D.D.C. 2011) ..................................................................... 7, 8, 16

*Baker v. United States Dep't of Homeland Security,*
2012 U.S. Dist. Lexis 165240 (M.D. Pa. Nov. 19, 2012) ...................................................... 17

*Church of Scientology v. U.S. Postal Serv.,*
700 F.2d 486 (9th Cir. 1983) ............................................................................. 5, 6

*Church of Scientology W. U.S. v. IRS,*
769 F. Supp. 328 (C.D. Cal. 1991) ......................................................................... 13

*Citizens for Responsibility & Ethics in Wash. v. FEC,*
2014 U.S. Dist. LEXIS 124091 (D.D.C. Feb. 12, 2014) ........................................................ 7

*Citizens for Responsibility & Ethics in Washington v. FEC,*
2014 U.S. Dist. LEXIS 123727 (D.D.C. Sept. 5, 2014) ........................................................ 7

*Davy v. CIA,*
550 F.3d 1155 (D.C. Cir. 2008) ........................................................................... 17

*Edmonds v. FBI,*
417 F.3d 1319 (2005) ...................................................................................... 8

*Elec. Frontier Found. v. Office of the Dir. of Nat'l Intelligence,*
2008 U.S. Dist. LEXIS 44050 (N.D. Cal. June 4, 2008) ...................................................... 7, 16

*Exner v. FBI,*
443 F. Supp. 1349 (S.D. Cal. 1978) ...................................................................... 7, 12

*Farrar v. Hobby,*
506 U.S. 103 (1992) ....................................................................................... 8

*Goldstein v. Levi,*
415 F. Supp. 303 (D.D.C. 1976) ........................................................................... 7

*Hajro v. United States Citizenship & Immigration Servs.,*
900 F. Supp. 2d 1034 (N.D. Cal. 2012) ................................................................. 6, 15, 18

*Hamlin v. Kelley,*
1980 U.S. Dist. Lexis 11547 (N.D. Ill., May 21, 1980) ....................................................... 9

DAVIS WRIGHT TREMAINE LLP

ii

*Harrison Bros. Meat Packing Co. v. Dep't of Agriculture*,
    640 F. Supp. 402 (M.D. Pa. 1986) ................................................................12, 14

*L.A. Gay & Lesbian Cmty. Servs. Ctr. v. IRS*,
    559 F. Supp. 2d 1055 (C.D. Cal. 2008) ...........................................................7, 8

*Long v. I.R.S.*,
    932 F.2d 1309 (9th Cir. 1991) ...........................................................................15

*Rosenfeld v. United States DOJ*,
    904 F. Supp. 2d 988 (N.D. Cal. 2012) ...............................................6, 12, 15, 16

*Sikes v. United States*,
    2013 U.S. Dist. Lexis 179095 (S.D. Ga. Dec. 6, 2013) .....................................14

*Smith v. Bayer Corp.*,
    ___ U.S. ___, 131 S.Ct. 2368 (2011) ...................................................................2

*Taylor v. Sturgell*,
    553 U.S. 880 (2008) .............................................................................................2

*United Association of Journeymen and Apprentices of the Plumbing and
    Pipefitting Industry, Local 598 v. Dep't of the Army Corps of Engineers*,
    841 F.2d 1459 (9th Cir. 1988) ...........................................................................19

*Warren v. Colvin*,
    744 F.3d 841 (2d Cir. 2014) .................................................................................7

*Weatherhead v. United States*,
    112 F. Supp. 2d 1058 (E.D. Wash. 2000) .....................................................8, 9, 12

*Williams v. Dep't of the Army*,
    1993 U.S. Dist. Lexis 15336 (N.D. Cal. Sept. 3. 1993) ......................................5

*Yonemoto v. Dep't of Veterans Affairs*,
    2012 U.S. Dist. Lexis 76311 (D. Haw. June 1, 2012) ........................................17

*Yonemoto v. Dep't of Veterans Affairs*,
    549 Fed. Appx. 627 (9th Cir. 2013) ...................................................15, 17, 18, 19

**STATUTES**

5 U.S.C. § 522(a)(6)(A)(i) .........................................................................................8

5 U.S.C. § 552(a)(4)(E) .............................................................................................5

5 U.S.C. § 552(e) ......................................................................................................6

Freedom of Information Act ................................................................................1, 5, 18

DAVIS WRIGHT TREMAINE LLP



**OTHER AUTHORITIES**

153 Cong. Rec. S15701-04 (daily ed. Dec. 14, 2007) (statement of Sen. Leahy, sponsor of the 2007 Amendments) ................................................................................6

DAVIS WRIGHT TREMAINE LLP

iv

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DAVIS WRIGHT TREMAINE LLP

## I.  SUMMARY OF ARGUMENT AND BACKGROUND

The First Amendment Coalition has emerged from this litigation with exactly what it sought in its October 5, 2011 Freedom of Information Act Request:  The Office of Legal Counsel ("OLC") memorandum to the Department of Defense (the "OLC-DOD Memo"), and a second memorandum the Government unilaterally released to FAC on August 15, 2014 (the "CIA Memo"), advising agencies on the legality of targeting and killing Anwar al-Awlaki, a U.S. citizen, while he was outside the country.  When this litigation began, this victory seemed unlikely.  FAC was litigating in the treacherous terrain of national security – a landscape where all doubts are resolved in the Government's favor – even though FAC's FOIA request affirmatively disclaimed the release of any intelligence or national security information.  Yet throughout this litigation, the Government vigorously maintained that *not a single word* from these memoranda could be disclosed without "serious and grave" harm befalling the nation.  Of course, this threat was never real and no such fallout occurred.  Instead, these memoranda provide a level of scholarly detail that the Government, in its lengthy public-relations campaign, preferred to gloss over.  FAC's tangible accomplishments, and the tenacity it demonstrated throughout the litigation in the face of the Government's secrecy and obfuscations, show that FAC has substantially prevailed in this matter.  It is both eligible and entitled to recover its attorneys fees and costs.

The degree of FAC's success is apparent when comparing the Government's position at the outset of this litigation with its position today. When this litigation began in 2012, the Government insisted that merely revealing whether or not it had any responsive legal memoranda that justified the targeted killing of Anwar al-Awlaki would jeopardize both national security *and* sabotage the Government's ability to deliberate and seek opinions about the legality of its actions in the war on terror and elsewhere.  *See e.g.* Dkt. 30-1, Colborn Decl. ¶¶ 14-15, 19; Hackett Decl. ¶¶ 23-29.  Confirming or denying the existence of such documents, the Government argued, would reveal whether or not the U.S. Government had considered killing al-Awlaki in advance,

Case No. CV 12-01013 CW
CORRECTED MOTION FOR ATTORNEYS FEES AND COSTS
DWT 25011361v3 0200441-000001

DAVIS WRIGHT TREMAINE LLP

1   whether or not it had a role in killing al-Awlaki,[2] whether or not it received aid from Yemen in

2   accomplishing al-Awlaki's killing, and whether or not the CIA or Department of Defense was

3   involved in these considerations.  *Id.*, Hackett Decl. ¶¶ 19-23; Tidd Decl. ¶¶ 12.  Now, as the

4   parties near the conclusion of 30 months of hard-fought litigation – including a motion to stay,[3]

5   two cross-motions for summary judgment with substantial supporting evidence, stipulations and

6   status reports and multiple rulings from various tribunals – all of the Government's initial

7   positions have fallen by the wayside – abandoned by the Government through the pressure of

8   litigation and political expediency.  These positions have been replaced by this simple reality: the

9   entire universe of documents sought by FAC in this litigation has been released – (1) the OLC-

10  DOD Memo whose release was compelled, in part, by pressure from this litigation, by the

11  Second Circuit, and by political demands stemming from the confirmation of David Barron (who

12  authored the OLC-DOD memo while working as a DOJ lawyer) to the First Circuit Court of

13  Appeals, and (2) the CIA Memo, which the Government unilaterally released to FAC in order to

14  moot the substance of this litigation and prevent the possibility of developing adverse precedent

15  in the Ninth Circuit.  *See* Dkt. 92; *see also* Dkt. 25 (acknowledging that "[a]s previously

16  explained, however, 'the Government is faced with the possibility of conflicting judicial

17  decisions in multiple circuits related to identical information, making it difficult to manage

18  conflicting decisions and litigation in varying stages,' a difficulty that can particularly complicate

19  the resolution of the status of national security information.").

20         Throughout this case, the Government's actions have seemed to be dictated more by

21  political expediency than its obligations under FOIA.  The Government started out conceding

22  nothing.  *E.g.* Dkt. 1, Ex. B; Dkt. 30 at 1-2.  It also took the position that if there were responsive

---

24         [2] Early on, FAC demonstrated the absurdity of the Government's insistence that the
    nation's involvement in the death of al-Awlaki was a secret.  Dkt. 34-35.
25         [3] At the outset of this case, the Government sought to stay this action until a similar case
    in the Southern District of New York was resolved.  FAC won this skirmish, and this case was
26  allowed to proceed in parallel with the SDNY FOIA litigation (although this Court reserved
    judgment until an initial ruling issued from the SDNY).  Denying the Government's efforts to
27  stay this litigation, consistent with the Supreme Court's decision in *Taylor v. Sturgell*, 553 U.S.
    880 (2008), and discussion of the *Taylor* decision in *Smith v. Bayer Corp.*, ___ U.S. ___, 131
28  S.Ct. 2368, 2381 (2011), this Court recognized that "conflicting decisions" from different courts
    "are acceptable in FOIA cases."  Dkt. 27 at 6.

documents, the legal analysis within them was likely an "intelligence source or method." *E.g.* Dkt. 30 at 8-10. Based on these positions, FAC filed initial briefing for summary judgment, aimed at forcing the Government to disclose whether responsive documents existed, and determining whether the Government should be forced to provide a *Vaughn* index. However, before the Court had a chance to rule on those motions, the Government withdrew its opposition to FAC's summary judgment motion on the eve of President Obama's announcement that the Government had, in fact, killed al-Awlaki with the help of Yemeni partners. Dkt. 59. These announcements, and disclosures, made at the highest levels of government, effectively removed the main objection to disclosing the existence of the OLC-DOD memo; the Government could no longer claim that its involvement in al-Awlaki's death was a secret.[4] After this admission, and a newfound promise of government transparency by the Obama Administration[5] the Government issued a new response to FAC's FOIA Request (Ex. C), essentially resetting this case over FAC's objections after months of briefing and litigation. Dkt. 59; 61-1.

With the briefing for the second round of summary judgment, the Government adopted a new, but related, set of arguments. It relied largely on Exemption 5 to protect the whole of the OLC-DOD Memo, claiming again that its release (even with all national security information withheld) would "undermine" the Government's ability to deliberate and the willingness of agencies to seek OLC opinions. Dkt. 63 at 14. It further argued that revealing legal reasoning (even that which may have been disclosed in the unclassified White Paper) would still harm national security. *Id.* at 17-18. (*Remarkably, the Government's opening brief in the second round of summary judgment did not even mention the White Paper.) Id.* And the Government no

---

[4] The Government wrote that, because its original "Glomar response was issued to protect the previously classified fact of whether or not the United States contemplated and conducted the operation that resulted in Anwar al-Aulaqi's death, the Department respectfully withdraws its motion for summary judgment in this case. The Department suggests that, within thirty days, it issue a modified response to Plaintiff's FOIA request." Dkt. 59. FAC objected, specifically noting that the parties had already fully briefed the same legal issues and that a second round of summary judgment briefing would necessarily cause delay, writing that "[t]his position is remarkable, and wholly improper, in light of the extraordinary public attention these issues have received and the fact that the Court has already recognized the importance of moving quickly in this case, by denying the Government's first attempt to delay this case through a stay." Dkt. 61.

[5] *See* Ex. D. (http://www.whitehouse.gov/the-press-office/2013/05/23/remarks-president-national-defense-university).

DAVIS WRIGHT TREMAINE LLP

longer attempted to justify a Glomar response by relying on Exemption 5, choosing to rely only on Exemptions 1 and 3 for refusing to confirm or deny the existence of any additional documents.  Dkt. 63 at 1.  Again, FAC contested each of the Government's arguments, and submitted scores of pages of disclosures made by the Government; many more disclosures than had been submitted to SDNY in the other case, as the SDNY parties had relied largely on news articles – and only later added hearing transcripts similar to the evidence repeatedly submitted by FAC.  Dkt. 34-35; 67-72; 98-2.  However, based, in part, on the now-overturned SDNY ruling and the misimpression, abetted by the Government, that the White Paper had not been "officially released" by the Government, this Court denied FAC's Motion for Summary Judgment.  *See* Dkt. 86 at 24.  Despite this setback and the cost of litigating for months, FAC did not concede the lawsuit. Ex. P, (declaring that FAC was going to appeal even before appellate decision).

Just 10 days after this Court issued its ruling, the Second Circuit issued an opinion overturning a previous adverse ruling from SDNY involving the OLC-DOD memo.  Based on nearly identical evidence and arguments that FAC had submitted to this Court, the Second Circuit unanimously overturned the SDNY opinion and found that the Government had to disclose the OLC-DOD memo, as it had waived the exemptions to its release by undertaking a years-long campaign of public relations regarding its targeted killing program and had officially released to another FOIA requester the White Paper, which contained much of the reasoning in the OLC-DOD Memo. Dkt. 88-1, Ex. A.  The Court also eventually castigated the Government for its arguments that the CIA's involvement had been heretofore unknown and that the release of the legal memoranda would encourage federal agencies to forego soliciting opinions.  *Id.* at *43, *46.

In light of the Second Circuit opinion, FAC moved for reconsideration before this Court. Dkt. 88.  However, before the reconsideration motion could be heard, the Government announced that it would not seek to appeal the release of the OLC-DOD Memo, apparently ensuring the confirmation of the memo's author, David Barron, to the First Circuit Court of Appeals.  Ex. E; Dkt. 98, ¶¶ 7-13 and attached exs. D-J. Around the same time, the Government met-and-conferred with FAC.  Dkt. 98, ¶¶ 2-4; Burke Decl. ¶¶ 2-7.  Believing that the issue of

1  remaining documents still had to be litigated, FAC informed the Government that it planned to

2  continue until every responsive document was released.  *Id.*  The Government revealed that one

3  more responsive document existed, and that it would be released.  Burke Decl. ¶¶ 4-5; Dkt. 98,

4  ¶¶ 2 – 3.  With that document's release – the CIA Memo, the Government satisfied FAC's FOIA

5  request.  *See* Dkt. 92 ("The Government anticipates completion of processing of one additional

6  responsive OLC memorandum on or before August 15, 2014. The Government has confirmed

7  that this is the only additional responsive document uncovered in the search described in the Bies

8  declaration.").  Thus, nearly every position taken by the Government at the beginning of the case

9  has now been abandoned or mooted by the release of the OLC-DOD Memo and the CIA Memo

10  and it is clear that FAC is the prevailing party here.  Moreover, equitable factors such as the

11  particular importance of this litigation, the non-commercial purpose of this litigation, and the

12  misleading and stubborn tactics of the Government, weigh in favor of a fee award here.

13  ## II.  THE COURT SHOULD AWARD FAC ITS FEES.

14  Under the Freedom of Information Act, a "court may assess against the United States

15  reasonable attorney fees and other litigation costs reasonably incurred in any case … in which

16  the complainant has substantially prevailed."  5 U.S.C. § 552(a)(4)(E).  A party may

17  "substantially prevail" through either a "judicial order" or a "voluntary or unilateral change in

18  position by the agency" over a not-insubstantial claim.  *Id.*  Courts grant fee awards to parties

19  they deem both "eligible" and "entitled."  *Church of Scientology v. U.S. Postal Serv.,* 700 F.2d

20  486, 489 (9th Cir. 1983).  To be eligible, "a party must show both that (1) the filing of the action

21  could reasonably have been regarded as necessary to obtain the information"; and (2) that it "had

22  a substantial causative effect on the delivery of the information."[6]  *Id.*  An eligible party's

23  entitlement to fees is left to the discretion of the court, based on equitable factors including, but

24  not limited to, "(1) the public benefit resulting from FOIA disclosures in the case, (2) the

25  commercial benefit to the party resulting from the disclosures, (3) the nature of the party's

26

27  [6] Moreover, "a FOIA plaintiff's request for attorney fees, however, does not become moot simply because the underlying FOIA complaint has been mooted. Attorney fee issues are ancillary to the underlying action and survive independently under the court's equitable

28  jurisdiction."  *Williams v. Dep't of the Army,* 1993 U.S. Dist. Lexis 15336, at *6 (N.D. Cal. Sept. 3. 1993).

DAVIS WRIGHT TREMAINE LLP

Case No. CV 12-01013 CW
CORRECTED MOTION FOR ATTORNEYS FEES AND COSTS
DWT 25011361v3 0200441-000001

interest in the disclosed records, and (4) whether the government's rationale for withholding the records had a reasonable basis in law." *Rosenfeld v. United States DOJ*, 904 F. Supp. 2d 988, 994 (N.D. Cal. 2012). In this case, FAC is both eligible and entitled to fees because its steadfast persistence has culminated in the release of two separate responsive memoranda and it overcame the Government's intransigence at every stage of this litigation.

### A.    FAC Is Eligible for an Award of Fees As This Litigation Resulted In The Release of the OLC-DOD and CIA Memoranda.

"Where sought-after FOIA documents are released during litigation, a court must examine '(1) when the documents were released; and (2) what actually triggered the documents' release' in assessing whether a plaintiff has 'substantially prevailed[.]'" *Rosenfeld v. United States DOJ*, 904 F. Supp. 2d at 996 (quoting *Church of Scientology of California* 700 F.2d at 492 (9th Cir. 1983)). Courts "view[] the litigation as a whole" in making that determination, and shifts in the Government's legal positions over time. *Id.* at 997-998. Indeed, "even where defendants ultimately prevail on a dispute regarding proper withholding of documents, ***plaintiffs who succeed in forcing a defendant into some action*** as a result of the initiation of litigation has changed the legal relationship." *Hajro v. United States Citizenship & Immigration Servs.*, 900 F. Supp. 2d 1034, 1046 (N.D. Cal. 2012) (emphasis added). Indeed, this precise situation, where a FOIA plaintiff receives documents from the Government in the absence of a court order, is contemplated by the statue, which was amended in 2007 to read: "The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed. For purposes of this subsection, a complainant has substantially prevailed if the complainant has obtained relief through . . . ***a voluntary or unilateral change in position by the agency…***" § 552(e) (emphasis added).[7]

---

[7] Legislative history suggests that the purpose of the additional language was to address "a relatively new concern that, under current law, Federal agencies have an incentive to delay compliance with FOIA requests until just before a court decision is made that is favorable to a FOIA requester. . . . Under the bill, a FOIA requester can obtain attorneys' fees when he or she files a lawsuit to obtain records from the Government and the Government releases those records before the court orders them to do so." 153 Cong. Rec. S15701-04 (daily ed. Dec. 14, 2007) (statement of Sen. Leahy, sponsor of the 2007 Amendments).

DAVIS WRIGHT TREMAINE LLP

The plaintiff does not have to win summary judgment in order to prevail.  Rather, a Government action during the pendency of a lawsuit – even action not taken pursuant to a court's order – is sufficient.  For example, in *Exner v. FBI*, 443 F. Supp. 1349, 1350 (S.D. Cal. 1978), the Court confirmed an award of fees after its denial of a stay motion led the Government to expedite processing of a FOIA request, resulting in the release of documents without a preceding court order.  Similarly, in *Elec. Frontier Found. v. Office of the Dir. of Nat'l Intelligence*, 2008 U.S. Dist. LEXIS 44050 (N.D. Cal. June 4, 2008), the Court awarded fees to the plaintiff merely because it prevailed on a preliminary injunction, causing the Government to expedite the release of documents the Government claimed would just have been released just three weeks later in the lawsuit's absence.  And in *L.A. Gay & Lesbian Cmty. Servs. Ctr. v. IRS*, 559 F. Supp. 2d 1055, 1057 (C.D. Cal. 2008), the Court awarded fees to a plaintiff when the Government "conducted searches" and "located 29 pages of responsive documents, which were sent to Plaintiff's counsel" even before summary judgment was briefed in the case.  The Court found that the plaintiff prevailed even though the release of documents was not directly compelled by an order.  *Id.* at 1059-60.[8]  Even the receipt of documents is not required.  <u>Indeed, in another case seeking drone memoranda, where the Government merely clarified its response to a FOIA, but did not release any documents, the Court awarded fees.</u>  *See* Ex. K, *Pub. Record Media v. DOJ*, Case No. 12-cv-01225 (D. Minn.).  *See also Citizens for Responsibility & Ethics in Washington v. FEC*, 2014 U.S. Dist. LEXIS 123727 (D.D.C. Sept. 5, 2014) (holding that an appellate victory that "provided guidance as to what type of response from an agency constitutes a determination that must be communicated to a FOIA requester in the future" was sufficient to find that a party was eligible for fees).

---

[8] *See also Warren v. Colvin*, 744 F.3d 841, 845 (2d Cir. 2014) ("Because FOIA now provides for the recovery of litigation costs where an agency voluntarily complies with a records request, the district court erred in denying Warren's claim for costs."); *Citizens for Responsibility & Ethics in Wash. v. FEC*, 2014 U.S. Dist. LEXIS 124091 (D.D.C. Feb. 12, 2014) (awarding fees when "settlement encompassed an additional search by [an agency] for responsive documents and an additional release of documents"); *ACLU v. United States Dep't of Homeland Sec.*, 810 F. Supp. 2d 267, 272 (D.D.C. 2011) (awarding fees where a search incidental to the preparation of Vaughn indices led to disclosure of documents); *Goldstein v. Levi*, 415 F. Supp. 303, 305 (D.D.C. 1976) (awarding fees where the Government unilaterally produced documents without a court order after the plaintiff filed suit, when the Government had previously denied plaintiff's FOIA requests for three years).

### 1.    FAC's Lawsuit Was Necessary To Obtain The Memoranda.

This lawsuit was clearly necessary to compel the release of the DOJ legal memoranda sought by FAC.  FAC filed its FOIA request on October 5, 2011 and, 20 days later, the Government responded that it "neither confirms nor denies the existence of the document[.]"  Compl. at ¶¶ 11-12.  On December 12, 2011, FAC filed an administrative appeal of the Government's denial of its request.  *Id.* at ¶ 13.  Once the Government failed to respond to that appeal by the statutory deadline, 5 U.S.C. § 522(a)(6)(A)(i), FAC had exhausted its administrative remedies.  *See* Compl. at ¶ 14.  In order to obtain the memoranda, FAC's only option was to litigate – aggressively, as it turned out, and for nearly three years.

### 2.    FAC Substantially Prevailed In This Litigation.

#### a.    The Government Has Released The Documents Responsive To FAC's FOIA Request.

When a party obtains the documents it seeks in a FOIA litigation, it is clear that the party has prevailed.[9]  Indeed, "FOIA litigation 'substantially causes' the release of records if those records were identified as a result of the litigation." *ACLU v. United States Dep't of Homeland Sec.*, 810 F. Supp. 2d 267, 274 (D.D.C. 2011).  As the D.C. Circuit explained in *Edmonds v. FBI*, "plaintiffs may be considered prevailing parties for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." *Edmonds*, 417 F.3d 1319, 1326 (2005), quoting *Farrar v. Hobby*, 506 U.S. 103, 109 (1992).[10]  FAC now has in hand the only two documents responsive to its FOIA request that exist, according to the Government.[11]

---

[9] Of course, the fact that the memoranda were redacted is no barrier to a finding that a plaintiff has substantially prevailed.  *See, e.g., L.A. Gay & Lesbian Cmty. Servs. Ctr. v. IRS,* 559 F. Supp. 2d 1055, 1057 (C.D. Cal. 2008).

[10] And the Government may not point to this Court's now-mooted Order as evidence it has prevailed.  Indeed, if this court grants FAC's Motion to Vacate its ruling on the cross-motions for summary judgment – as appropriate when a case is mooted through the opposing party's capitulation – there will be no adverse decision against FAC.  This further justifies an award of fees. *See Weatherhead v. United States*, 112 F. Supp. 2d 1058 (E.D. Wash. 2000) (awarding fees on remand after district court's ruling was vacated on appeal).  Even if the Motion to Vacate were denied, the award of fees would still be appropriate, at the very least, due to the release of the second memorandum to FAC.

[11] In the parties' July 10, 2014 joint status report, the Government noted that: "The Government has confirmed that this is the only additional responsive document uncovered in the search described in the Bies declaration."  Dkt. 93.

DAVIS WRIGHT TREMAINE LLP

The release of these memoranda was accomplished by a mix of litigation both in this Court and the Second Circuit, as well as political pressure. With respect to the release of the OLC-DOD memo, it cannot be denied that the all three factors contributed to both the Second Circuit's opinion *and* the Government's decision to forego an *en banc* appeal to prevent the release of the OLC-DOD Memo. *See* Exs. E-J, L, N-P; Dkt. 98, ¶¶ 7-13 and attached exs. D-J.

Importantly, FAC need not establish that this case accounted for any particular percent of that decision; it is enough that "the pressure brought by this and other suits to secure compliance … was apparently instrumental" in the forces that ultimately led to making the OLC Memo public. *Hamlin v. Kelley*, 1980 U.S. Dist. Lexis 11547, at *26-27 (N.D. Ill., May 21, 1980);[12] *Weatherhead*, *supra*. In *Weatherhead*, the plaintiff brought a FOIA action to obtain the release of a letter sent from the British Home Office to the Department of Justice in which the Home Office, which had just extradited the plaintiff's client to face a criminal trial in the United States, expressed concerns about the political fallout in Parliament. *Id.* at 1063. The district court found that DOJ had properly withheld the letter on national security grounds, the Ninth Circuit reversed, and the Supreme Court granted certiorari. *Id.* At that point, the plaintiff disclosed in briefing that he had received a different, shorter letter from the British Consul that dealt with the same topic as the undisclosed letter, independent of the FOIA litigation. *Id.* DOJ contacted the Home Office, which withdrew its objection to disclosure of the full version, and the Government released it. *Id.* Accordingly, the Supreme Court dismissed the certiorari petition as moot and vacated the lower opinions. *Id.* On the fees motion, DOJ argued that the driving cause of the release was the plaintiff's revelation that he had in hand a shorter version of the letter at issue – not the litigation. *Id.* at 1065. But the court rejected that argument, explaining that it was not persuaded that the shorter letter "was the only factor considered by the government when it agreed to release" the longer one, since they didn't substantially overlap in content. *Id.* "This Court is convinced that factored into the government's decision to release the requested

---

[12] In *Hamlin*, the Court recognized that although "the key to the timely processing of plaintiff's and other applicants' requests was the creation of the special task force," the pressure of the plaintiff's suit "undoubtedly had a substantial causative effect on delivery of the information." *Hamlin*, 1980 U.S. Dist. Lexis at *26.

DAVIS WRIGHT TREMAINE LLP

document *was the possibility of receiving an unfavorable decision from the Supreme Court,*

*creating negative precedent for future disputes.*" *Id.* (emphasis added). In sum, "common

sense supports the finding that, but for this lawsuit, the plaintiff would not have received" the

letter. *Id.* Accordingly, the mere fear of a future adverse decision is significant enough a

motivating factor to justify the award of fees.

In this case, there was far more than a mere suggestion of a future adverse opinion to

motivate the Government's decision to moot this litigation by allowing the release of the OLC –

DOD Memo *and* by unilaterally releasing the CIA Memo to FAC. The Government could have

appealed the Second Circuit's decision to an *en banc* panel or the Supreme Court. It chose not

to, and instead the OLC-DOD Memo became public. *Id.* The reasons for this are multifaceted: it

is clear that public pressure and political expediency played a role (exs. E-J, L, O; Dkt. 98, ¶¶ 7-

13 and attached exs. D-J) as the White House was, at the time, seeking to attain the confirmation

of the OLC-DOD Memo's author to the First Cir. Court of Appeals. Mr. Barron's confirmation

was being blocked by Sen. Rand Paul, who announced that he would not agree to vote on Mr.

Barron's judicial confirmation unless the White House publicly released the OLC-DOD Memo.

Ex. E. Ultimately, it was widely reported that the Administration chose to publicly release the

OLC-DOD Memo so as to secure Mr. Barron's confirmation. Ex. E, Dkt. 98, ¶¶ 7-13 - Exs. D-J.

It is also undeniable that the Second Circuit's opinion was a source of pressure; however,

the role of FAC's FOIA case should not be understated. Indeed, the legal arguments that

persuaded the Second Circuit were identical to those that FAC made before this Court – that the

White Paper and other, previous disclosures waived the exemptions asserted by the Government.

*Compare* Dkt. 66 at 2 with Dkt. 98-2 at 42-43. The Second Circuit addressed this case explicitly

in its opinion, noting that the only difference here was that in this litigation, the Government had

not conceded that the White Paper had been officially released (and none of the parties in that

case had submitted this Court's opinion to the Second Circuit – meaning that the Second Circuit

was observing this case at the same time). Dkt. 98-2 at 43.[13] It follows that the arguments in this

---

[13] The same U.S. Justice Department in this FOIA lawsuit was the only defendant in the Second
Circuit litigation and although it knew that the White Paper had been released to another FOIA

Case No. CV 12-01013 CW
CORRECTED MOTION FOR ATTORNEYS FEES AND COSTS
DWT 25011361v3 0200441-000001

DAVIS WRIGHT TREMAINE LLP

case, where FAC was first to legally brief the significance of the Government's release of the White Paper, had some effect in the Second Circuit. Finally, FAC's Motion for Reconsideration was already on file when the Government chose to capitulate and the OLC-DOD Memo was released as part of the Second Circuit's ruling on June 23, 2014. FAC's Motion for Reconsideration created a plausible scenario that this Court would reverse its formerly favorable opinion in light of the new law and facts revealed by the Second Circuit, and rule in FAC's favor, creating a second adverse opinion – and giving FAC an edge in the Ninth Circuit. Surely this possibility must have weighed on the minds of Government officials.

However, even if the Court were to determine that the parties' extensive litigation in this case was not a factor in the Government's decision to capitulate to release the OLC-DOD Memo, there can be no doubt that the Government's unilateral release of the CIA Memo to FAC on August 15, 2014, was motivated by this case. Unlike the release of the OLC-DOD Memo, there was no pending nomination to force the release of this document. Rather, the main "threat" the Government was responding to here was certainty of continued litigation with FAC. *See* Burke Decl. ¶¶ 4-5. When the Second Circuit issued its April 21, 2014 opinion, and FAC filed its Motion for Reconsideration, this Court ordered the parties to meet and confer over whether this case was now moot. Dkt. 91. FAC told the Government the case was not mooted: the Government's *Glomar* response as to other memoranda was still in force. *Id.* In the face of this argument, and to avoid continuing with this case, the Government released the CIA Memo and abandoned its long-held position that releasing it would reveal the CIA's involvement and cause irreparable damage to national security. Burke Decl. ¶ 6, Ex. B.

The Government could have continued to refuse to acknowledge the existence of the CIA Memo and let FAC appeal this court's ruling to the Ninth Circuit. It did not do so. Coupled with

requester in Feb. 2013, it insisted in this litigation that the White Paper was "not relevant" and said nothing to this Court about the earlier release to TruthOut. Of course the DOJ understood the legal consequence of releasing the White Paper to one requester – as it explained to this Court in support of its Motion to Stay: "[I]n a FOIA case, release of information in one case releases it in all cases, without regard to the law of particular circuits. Conflicting decisions can effectively nullify the holdings of other circuits, and unnecessarily compromise the Government's ability to protect privileged information." Dkt. 25 at 4.

DAVIS WRIGHT TREMAINE LLP

the force of the Second Circuit's decision, an adverse Ninth Circuit decision would have solidified the law of waivers of national security exemptions in FOIA litigation.  Clearly, the Government recognized that FAC's arguments were carrying the day, and it made the decision to capitulate, hand over the CIA Memo and end this litigation rather than risk "creating negative precedent for future disputes."  *Id.*  As in *Weatherhead v. United States*, *supra*, common sense supports the finding that, but for hard-fought litigation and its persistence, FAC would not have the CIA Memo in hand.  *See also Rosenfeld v. United States Dep't of Justice*, 904 F. Supp. 2d at 996 ("there is no indication in the record here that the Defendants would have searched back through or released any of the contents thereof in the absence of this litigation") (internal quotations omitted).  Because FAC has obtained the DOJ Memoranda it sought through this litigation – including the CIA Memo, which was released to FAC specifically pursuant to this litigation and in the absence of outside political circumstances – it has clearly prevailed and is entitled to recover its attorneys fees and costs.

### b. FAC's Tenacious Litigation In This Case Has Steadily Eroded The Government's Legal and Factual Positions.

FAC's steady, incremental successes over the past three years, culminating in the release of two DOJ memoranda, are the second reason it has substantially prevailed, as the court found in *Exner v. FBI*, 443 F. Supp. 1349 (S.D. Cal. 1978).  The *Exner* court found that although the plaintiff did not enjoy "complete success" in that matter, as the court allowed a handful of the total documents to be withheld after reviewing them in camera, "the government presented a very formidable opposition.  *Were it not for the dogged determination of plaintiff and her attorney, it is unlikely the case would have produced the favorable results it achieved*."  *Id.* at 1353 (emphasis added).  Similarly, in *Harrison Bros. Meat Packing Co. v. Dep't of Agriculture*, 640 F. Supp. 402 (M.D. Pa. 1986), the plaintiff sued the USDA in a class action over regulatory issues, and separately sued the agency in a FOIA action seeking the release of a 1,135-page document.  While the agency argued vigorously in the FOIA action that the document fell under Exemption 2, it turned around and offered to release the entirety of the document in response to an RFP in the class action.  *Id.* at 405.  The Government claimed that its election to release the

DAVIS WRIGHT TREMAINE LLP

document in an "unrelated civil action" did not make the plaintiff a prevailing party, but the court disagreed. *Id.* at 406. "[T]he tenacity Plaintiff displayed in pursuing the data now mysteriously being offered in this 'unrelated civil action' was a substantial, if not the primary, reason why the government agreed to relinquish the [document] it had so zealously sought to protect in the instant case." *Id.* *See also Church of Scientology W. U.S. v. IRS*, 769 F. Supp. 328, 330 (C.D. Cal. 1991) (finding persuasive that the "Church was required to engage in this litigation for over ten months before receiving documents").

This litigation began with the Government insisting that it could not even confirm or deny the existence of the documents that FAC has now – after years of litigation – made public. In order to defeat the Government's Glomar response, which at first it argued under Exemptions 1, 3, and 5, FAC had to establish that the White House's lengthy public-relations campaign on the legality of targeted killing amounted to a Glomar waiver. *See* Dkt. 37 at 1, 8-13 and accompanying exhibits. If it could pierce the Glomar assertion, FAC then had to show that any intelligence sources or methods contained in the memoranda could be redacted, so that the legal analysis in which it was interested could be released. Finally, even if FAC prevailed on the national security exemptions, it had to show that the Government waived its deliberative-process and attorney-client privileges by publicly discussing OLC legal advice.

As the parties litigated, the Government was forced to abandon its positions one by one. In the beginning, it insisted that its Glomar response was justified because revealing it had responsive documents would show that it had (or had not) contemplated killing al-Awlaki, that it had (or had not) killed him, that the CIA was (or was not) involved in his death, and that the United States worked with (or did not work with) Yemen in order to carry out this killing. *See e.g.* Dkt. 30-1. While this Court was considering how to rule on the initial cross-motions for summary judgment, and as John Brennan was undergoing scrutiny as the nominee for CIA Director amid pressure that the OLC-DOD memo be released before Brennan's confirmation (ex. L), the Government abandoned many of these positions (Dkt. 59, 61), which were untenable in light of the many disclosures enumerated in FAC's briefing. Dkt. 34, 35, 37, 42, 54, 59. The Government – President Obama himself – admitted that it had killed al-Awlaki, and that it had

DAVIS WRIGHT TREMAINE LLP

contemplated killing Al-Awlaki in advance, determining that the killing was legal before executing it.  Dkt. 59, 61 and Ex. D.  These disclosures undermined the Government's Glomar response as to the OLC-DOD memo and resulted in the Government's unilateral withdrawal of its cross-motion for summary judgment, and essentially re-started this case from the outset (despite FAC's arguments to the contrary).

In the second round of summary judgment briefing that began in September 2013, the Government also abandoned its argument that it could neither confirm nor deny the existence of responsive documents because to do so would erode its attorney-client or deliberative-process privileges, which was contested by FAC in its first round of briefing.  Dkt. 37 at 19-21.  And in parallel litigation in the Second Circuit, FAC's positions on each of the fundamental questions in this case carried the day.  Dkt. 98-2.  That ruling, coupled with the revelation that the Government failed to disclose in this case that it had officially released the White Paper in response to another organization, directly undercuts this Court's April 11, 2014 Order.  *See* Dkt. 88 Mot. and Exs. A-D, & 96.  FAC litigated these issues relentlessly, and has emerged with the law on its side and the requested DOJ memoranda in hand.  Its tenacity is "a substantial, if not the primary, reason why the government agreed to relinquish the [document] it had so zealously sought to protect in the instant case."  *Harrison Bros. Meat Packing Co.*, 640 F. Supp. at 406.

### c.   The Government's Recalcitrance Further Supports a Finding of Eligibility.

In *Sikes v. United States*, 2013 U.S. Dist. Lexis 179095, at *41 (S.D. Ga. Dec. 6, 2013), the Court noted that the Government's "inconsistent, if not disingenuous, justifications for withholding the materials" were a factor in its finding that the plaintiff substantially prevailed and was entitled to a fee award.  Here, from its first review of FAC's initial FOIA request, the Government adopted the position that the very existence of these memoranda was shrouded behind layers of national security secrets – some of which it was simultaneously telegraphing to the public, like the fact that the United States was behind the targeted killing of al-Awlaki, and others of which the Government has since voluntarily revealed without any apparently harm to the nation's security.  *See* Dkt. 30-1, Colborn Decl. ¶¶ 14-15, 19; Hackett Decl. ¶¶ 23-29 (warning of **"serious to exceptionally grave damage to national security"** and the

DAVIS WRIGHT TREMAINE LLP

Government's ability to operate effectively if the existence of responsive documents were to be confirmed, let alone released).  The district court in *Rosenfeld* faulted the Government for kneejerk secrecy, which it ultimately had to retract:

> This is not a case where the FBI, upon actual and reasonable notice, made a good faith effort to search out material and pass on whether it should be disclosed.  Rather, it is much more analogous to a situation where the agency, upon actual and reasonable notice, decided to act upon an assumption as to the nature of certain material and was then obliged to release most of that material when the light of litigation exposed the error of its assumption.

904 F. Supp. 2d at 997 (internal citations and quotations omitted).  Granted, the Government did not fall short of its searching obligations here the way it did in *Rosenfeld*.  But its persistent reach for secrecy in response to FAC's request for a memorandum that cut to the core of a fundamental national political debate – not to mention the Government's semantics-dependent, even duplicitous positions on what it had "officially" said, acknowledged, or released – reflect the same shirking of its FOIA responsibilities.  As in *Rosenfeld*, the Government here was ultimately obliged to release the memoranda FAC sought "when the light of litigation exposed the error" of its positions.  FAC succeeded in its goal of obtaining this memoranda to contribute to the public's understanding of the Government's unvarnished views of the legality of its targeted killing of al-Awlaki.  Altogether, FAC has substantially prevailed by chipping away at the Government's wall of secrecy.  This outcome more than qualifies as "forcing a defendant into some action as a result of the initiation of litigation" and "chang[ing] the legal relationship." *Hajro*, 900 F. Supp. 2d at 1046.

### B. FAC Is Entitled To Recover Its Fees Because Its Litigation In The Face Of Government Obfuscation Resulted In The Release Of Documents That Are Integral To The Public Interest.

A district court has the discretion to decide whether a party eligible to receive fees is also entitled to them.  *See Yonemoto v. Dep't of Veterans Affairs*, 549 Fed. Appx. 627, 628 (9th Cir. 2013).  Here, the factors weigh heavily in FAC's favor:  (1) the public undoubtedly benefited from the release of the memoranda; (2) FAC neither sought nor received any commercial benefit from this litigation; (3) FAC's interest in the memoranda was to augment the public debate on a matter of constitutional law; and (4) the Government's rationale for withholding the records was unreasonable.  *See Rosenfeld v. United States Dep't of Justice*, 904 F. Supp. 2d at 994, (quoting

DAVIS WRIGHT TREMAINE LLP

*Long v. I.R.S.*, 932 F.2d 1309, 1313 (9th Cir. 1991)).

### 1.   FAC Litigated This Matter And Sought The Memos' Release To Serve The Public Interest, Not Its Own.

Without question, the first three factors favor FAC.  First, FAC's FOIA request was clearly not motivated by any personal interest, but rather sought to "add to the fund of information that citizens may use in making vital political choices."  *ACLU v. DEA,* 2012 U.S. Dist. Lexis 190389, at *11 (N.D. Cal. Nov. 8, 2012).  In weighing this factor, courts are instructed to "take into account the degree of dissemination and the likely public impact that might result from disclosure."  *Id.* at *10.  In *ACLU*, for instance, the court emphasized that the released documents received "widespread media attention [.]" *Id.*  The court in *Electronic Frontier Foundation v. Office of the Director of National Intelligence*, 2008 U.S. Dist. Lexis 44050, at *7 (N.D. Cal. June 4, 2008), noted that "[u]pon defendant's release of the requested documents, plaintiff immediately posted the requested information on its website for public access" and publicized their availability in press releases.  Here, too, the memoranda released in response to FAC's requests have garnered widespread public attention.  *E.g.* ex. M.  Their production has helped inform the public debate about the powers possessed by the Executive Branch when national security interests are at stake.  FAC has written extensively about this case, as well as the Government's use of drones generally, and promptly published and commented on the memoranda on its website once they were released.  Ex. N.  FAC accomplished its mission to serve the public good through the public release of the long-withheld memoranda and by getting the Government to abandon its initial Glomar responses.

The second and third factors, which courts in the Ninth Circuit consider "jointly," also point in FAC's favor.  *Electronic Frontier Foundation*, 2008 U.S. Dist. Lexis 44050, at *8.  FAC is a non-profit organization "engaged in a range of advocacy and does not have any commercial interest in the documents requested."  *ACLU v. DEA*, 2012 U.S. Dist. Lexis 190389, at *11 (N.D. Cal. Nov. 8, 2012).  *See also Rosenfeld, supra* ("where plaintiff is … a nonprofit public interest group, an award of attorney's fees furthers the FOIA policy of expanding access to government information.").  FAC sought the disclosure of these memoranda to contribute to the national conversation about the constitutionality of actions by the Executive Branch, at the time

DAVIS WRIGHT TREMAINE LLP

subsisting on guesses, about what the Justice Department believed the limits on that power might

be when dealing with suspected terrorists who were also U.S. citizens. *See* Dkt. 1, 71 &72.

Indisputably, FAC's interest in these memoranda clearly falls in the category of "scholarly[,]"

"journalistic[,]" and " public-interest oriented." *ACLU*, 2012 U.S. Dist. Lexis 190389, at *11.

*See also Baker v. United States Dep't of Homeland Security*, 2012 U.S. Dist. Lexis 165240 , *17

(M.D. Pa. Nov. 19, 2012) ("[plaintiff's] motive in litigating this case under FOIA was not

commercial, but rather investigatory.").

### 2.     The Government's Positions Lacked A Reasonable Basis In Law.

Finally, "[t]he fourth factor considers whether the agency's opposition to disclosure had a

reasonable basis in law, and whether the agency had not been recalcitrant in its opposition to a

valid claim or otherwise engaged in obdurate behavior." *Davy v. CIA*, 550 F.3d 1155, 1162

(D.C. Cir. 2008).  Whether folded into this factor, *see*, *e.g*., *Yonemoto v. Dep't of Veterans

Affairs*, 2012 U.S. Dist. Lexis 76311, at *14 (D. Haw. June 1, 2012), or treated as an additional

consideration to be analyzed separately, *see Yonemoto*, 549 Fed. Appx. 627, 630 (9th Cir. 2013),

courts examine the reasonableness of the Government's litigation behavior.

The Government's steadfast refusal to release the legal memoranda sought by FAC

(without including any national security information) was legally suspect throughout this

litigation and only through its providing this Court with incomplete information regarding its

previous release of the White Paper to another FOIA requestor did the Court rule in the

Government's favor.  Indeed, the Second Circuit's opinion validated the run of FAC's arguments

on whether the Government had waived its remaining Glomar response, on the severability of the

facts and the legal analysis in the OLC Memo, and on the continued viability of the

Government's litigation privileges. *See* Dkt. 98-2.  But *more significantly, at every turn through

the duration of this case*, the Government has engaged in stonewalling, semantic games, and

reflexive denial of the substance of what cabinet-level officials were publicly admitting. *See,

e.g.*, Dkt. 30-1; 61 at 3-4; 63-1-63-3.[14]  These tactics should not go rewarded, especially in FOIA

---

[14] For example, the Government claimed that A.G. Holder's acknowledgement of a debate over the release of the OLC-DOD Memo did not constitute an admission that the memo existed, and also claimed, incredibly, that a statement from the FBI Director that the "coordinated efforts"

DAVIS WRIGHT TREMAINE LLP

litigation, and most especially in a Glomar case, where plaintiffs are least equipped with the litigation tools needed to disprove the Government's blanket secrecy.

*Hajro* is instructive. There, the plaintiff sued for access to documents supporting the Government's rationale for rejecting his naturalization request – that he had provided false testimony. *Hajro*, 900 F. Supp. at 1046. Only after the Government was ordered to release documents responsive to the false-testimony request did it admit that none existed. *Id.* Analyzing the reasonableness of the Government's position, the court found that "its actions teeter on the edge of obduracy": "Defendants' inability to produce documents containing facts about Hajro's alleged false testimony suggests that Defendants' delays and withholding may not have been in good faith." *Id.* at 1049. Similarly, in *Yonemoto*, the Ninth Circuit examined "the Government's litigation behavior" and concluded that "its withholding was, overall, unreasonable." 549 Fed. Appx. at 630. The court noted that the Government vacillated on which FOIA exemption justified withholding the records, and the plaintiff "incurred significant legal fees responding to arguments that the VA either knew were tenuous or would ultimately abandon, and supporting his claim to documents that the VA would ultimately disclose." *Id.* Moreover, the plaintiff had to make his case without the benefit of a Vaughn index "from which to determine the VA's reason for the asserted exemptions." *Id.*

In this case, too, the Government engaged in unreasonable behavior. First, the Government allowed this Court to conclude that it had not already "officially released" the White Paper, when in fact it had just done exactly that in response to a separate Freedom of Information Act request. See Dkt. 96 at 6-8. Indeed, the Government bypassed the opportunity to clarify this pivotal fact to the Court during its second summary judgment briefing and, without ever explaining to this Court the details of its previous release of this document, went out of its way to insist the White Paper was not relevant to this FOIA litigation. In fact, the Second Circuit recognized that the Government's release of the White Paper was central to its conclusion that the Government had waived all of its objections to withholding the OLC-DOD memo. 98-2 at 43. The Government's behavior here "teeter[s] on the edge of obduracy." *Hajro*, 900 F. Supp.

---

of the U.S. intelligence community, military and foreign partners "killed" al-Awlaki did not constitute an admission that the U.S. was involved in Awlaki's death. Dkt. 38 at 8-10.

Case No. CV 12-01013 CW
CORRECTED MOTION FOR ATTORNEYS FEES AND COSTS
DWT 25011361v3 0200441-000001

DAVIS WRIGHT TREMAINE LLP

at 1049.

Beyond the White Paper debacle, the Government's stance throughout this litigation was unreasonable and counter to the overriding purpose of FOIA:  Insisting that the United States' role in the death of Anwar al-Awlaki was secret, even as prominent officials openly acknowledged it (Dkt. 38 at 8-10); refusing to entertain the possibility that the sensitive intelligence material could be redacted from the legal analysis in the OLC Memo, when it is plain that was not only possible, but that redaction left intact an extensive and extremely intelligible disquision on the limits of executive authority.  *See* Dkt. 98-2, Appendix; Ex. B; Dkt. 71-72.  Even the Government's assertion that it would jeopardize national security if the public knew *which* agency sought OLC legal advice on targeted killing was wholly undercut when, months later, it voluntarily gave FAC the CIA Memo, prominently revealing the CIA's involvement, a fact that FAC had earlier demonstrated was already publicly known.  Exs. A – B. Notably, in *Yonemoto*, where the Government "repeatedly changed its position" on the applicable exemption, and "defended the district court's mootness ruling in the second appeal, despite some recognition in the district court that it was erroneous,"  these types of behaviors favored the plaintiff's entitlement to fees – even though the Government may have relied on good law.  549 Fed. Appx. at 630.

The Government's roadblocks could be relegated to the dustpile of intransigent litigation behavior if they hadn't cropped up in the FOIA context and, particularly, in a case where FAC's request so simply and obviously served the public interest in a fully informed debate concerning the legality of the Government's decision to execute a U.S. citizen abroad who is suspected of being a terrorist.  Indeed, President Obama specifically recognized that Americans should know the legal basis for the Government's decision to execute one of its own citizens during the speech he gave on May 23, 2013 – specifically stating "[t]his week, I authorized the declassification of this action, and the deaths of three other Americans in drone strikes, to facilitate transparency and debate on this issue" – the day after the Government withdrew its opposition to FAC's first summary judgment motion.  Ex. D.  Courts analyzing fee requests are sensitive to the Government's respect, or lack thereof, for the overall purpose of FOIA.  In *United Association of*

DAVIS WRIGHT TREMAINE LLP

*Journeymen and Apprentices of the Plumbing and Pipefitting Industry, Local 598 v. Dep't of the Army Corps of Engineers*, 841 F.2d 1459 (9th Cir. 1988), for instance, the court scolded the government for "refus[ing] to disclose requested documents simply because no prior authority affirmatively require[d] disclosure under the circumstances."

Under FOIA, "there is a strong presumption in favor of disclosure that must be indulged not only by the courts, but as well by the agency in its initial determination whether to disclose." *Id.* at 1463.  Viewing the memoranda in light of the Government's position at the outset of this litigation, one can clearly see it did not indulge that presumption.  But in a sense, this case has shown something worse.  In its papers, consistently, the Government staked out the most draconian positions and insisted that layers of secrecy hid its legal analysis on fundamental questions about the powers of the Executive Branch.  At the same time, the Government's highest-ranking officials were parading in front of law students and other friendly audiences discussing *this very same legal analysis*, and touting the Administration's transparency for doing so.  Ex. D; Dkt. 34-35; 67-70, Exs. H, I, P, G.  In short, the Government sought to have its cake and eat it too.  Glomar cases structurally disfavor plaintiffs enough as it is; the Government should not get away with the rare instance in which its abuse of that imbalance is laid bare.

## III.  CONCLUSION

This hard fought FOIA litigation helped to make public the legal advice that the DOJ provided to the Department of Defense and Central Intelligence Agency about the legality of the Executive Branch's decision to execute a U.S. citizen abroad who suspected of being a terrorist. In spite of the Government's persistent efforts to keep this information from the public, these memos are now available to contribute to the national debate about the Executive Branch's power to engage in such activities.  Accordingly, FAC respectfully requests that the Court find that FAC is entitled to recovery of its attorneys fees and costs.

DATED:  This 13th day of October, 2014          DAVIS WRIGHT TREMAINE LLP

By:  /s/ Thomas R. Burke
       Thomas R. Burke
       Attorneys for Plaintiff
       FIRST AMENDMENT COALITION

DAVIS WRIGHT TREMAINE LLP

20



DAVIS WRIGHT TREMAINE LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

i