JOYCE R. BRANDA
Acting Assistant Attorney General

ELIZABETH J.  SHAPIRO
Deputy Director

AMY POWELL
Trial Attorney
Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W., Room 5377
Washington, D.C. 20001
Telephone: 202-514-9836
Facsimile: 202-616-8517
Amy.Powell@usdoj.gov
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| FIRST AMENDMENT COALITION,<br><br>      Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE,<br><br>      Defendant. | No. CIV 12-1013 - CW<br><br>DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR FEES<br><br>No Hearing Scheduled |

**DEFENDANT'S MEMORANDUM IN OPPOSITION
TO PLAINTIFF'S MOTION FOR FEES**

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION ....................................................................................................................1

BACKGROUND ...................................................................................................................1

New York Litigation .............................................................................................................1

This Litigation.......................................................................................................................3

ARGUMENT .........................................................................................................................6

I.      PLAINTIFF MUST ESTABLISH ELIGIBILITY FOR AND
ENTITLEMENT TO ATTORNEYS FEES IN ORDER TO RECOVER.........................6

II.     PLAINTIFF IS NOT ELIGIBLE FOR FEES UNDER THE STATUTE
BECAUSE IT DID NOT SUBSTANTIALLY PREVAIL IN THIS
LITIGATION.................................................................................................................8

III.    THE COURT SHOULD EXERCISE ITS DISCRETION TO FIND
PLAINTIFF IS NOT ENTITLED TO FEES .................................................................13

CONCLUSION....................................................................................................................18

# TABLE OF AUTHORITIES

**CASES**                                                                                                          **PAGE(S)**

*ACLU v. CIA,*
   710 F.3d 422 (D.C. Cir. 2013) ........................................................................... 15

*Chesapeake Bay Found., Inc. v. USDA,*
   11 F.3d 211 (D.C. Cir. 1993) ............................................................................. 13

*Church of Scientology v. U.S. Postal Serv.,*
   700 F.2d 486 (9th Cir. 1983) ...................................................................... passim

*Contreras v DOJ,*
   729 F. Supp. 2d 167 (D.D.C. 2010) ...................................................................... 7

*Elec. Frontier Found. v. DOJ,*
   739 F.3d 1 (D.C. Cir. 2014) ............................................................................... 15

*Exner v. FBI,*
   443 F. Supp. 1349 (S.D. Cal. 1978) .................................................................... 13

*First Am. Coal. v. DOJ,*
   2014 WL 1411333 (N.D. Cal. April 11, 2014) ..................................................... 5

*Hajro v. USCIS,*,
   900 F. Supp. 2d 1034 (N.D. Cal. 2012) .............................................................. 14

*Harrison Bros. Meat Packing Co. v. Dep't of Agriculture,*
   640 F. Supp. 402 (M.D. Pa. 1986) ..................................................................... 13

*Hersh & Hersh v. HHS,*
   No. C 06-4234 PJH, 2008 WL 2725497 (N.D. Cal. July 10, 2008) .............................. 6, 9

*Laughlin v. Comm'r,*
   117 F. Supp. 2d 997 (S.D. Cal. 2000) ................................................................... 9

*Long v. IRS,*
   932 F.2d 1309 (9th Cir. 1991) ......................................................................... 6, 8

*NY Times v. DOJ,*
   752 F.3d 123 (2d Cir. 2014) *revised and superseded by* 756 F.3d 100
   (2d Cir. 2014), *amended on denial of rehearing by* 758 F.3d 436 (2d Cir.
   2014), *supplemented by* 762 F.3d 233 (2d Cir. 2014) ............................................. passim

*NY Times v. DOJ,*
    915 F. Supp. 2d 508 (S.D.N.Y. 2013).........................................................................2, 15

*Oregon Natural Desert Ass'n v. Locke,*
    572 F.3d 610 (9th Cir.2009) ...........................................................................................7

*Public Record Media,*
    2013 WL 3024091 (Jan. 29, 2013) ...............................................................................12

*Rosenfeld v. DOJ,*
    903 F. Supp. 2d 859 ....................................................................................................6, 7

*Hamlin v. Kelley,,*
    1980 U.S. Dist. Lexis 11547 (N.D. Ill. May 21, 1980)..................................................11

*Mobley v. DHS,,*
    908 F. Supp. 2d 42 (D.D.C. 2012) ...............................................................................12

*Tax Analysts v. DOJ,*
    965 F.2d 1092 (D.C. Cir. 1992) .....................................................................................6

*Waage v. IRS,*
    656 F. Supp. 2d 1235 (S.D. Cal. 2009) .........................................................................14

*Weatherhead v. US,*
    112 F. Supp. 2d 1058, (E.D. Wash. 2000), *opinion vacated on stipulated*
    *motion*, Dkt. No. 2:95-cv-00519 (E.D. Wash. Feb. 12, 2001) .........................................11

*Weisberg v. DOJ,*
    745 F.2d 1476 (D.C. Cir. 1984) .....................................................................................7

*Yonemoto v. Dep't of Veterans Affairs,*
    549 Fed. Appx. 627 (9th Cir. 2013)...............................................................................14

**STATUTES**

5 U.S.C. § 552(a)(4)(E).........................................................................................passim

**REGULATIONS**

28 C.F.R. § 0.20 ............................................................................................................10

# INTRODUCTION

Plaintiff First Amendment Coalition ("FAC") demands that the taxpayers pay its attorneys' fees for a lawsuit in which Plaintiff lost on every issue. Plaintiff claims to have "substantially prevailed" because another Court in another jurisdiction ruling on separate and earlier FOIA requests from different plaintiffs, for the same documents later requested by FAC, ordered the release of these documents. As such, the documents became public and were released to FAC at the same time that they were released to the New York Times, the ACLU and the public. This release rendered moot the present dispute. But as even FAC must concede, those documents were not released because of FAC's losing effort in this case; they were released only after a Second Circuit ruling in the first-filed case. Given the governing court orders in New York, the argument that FAC's loss in California led the Government to reconsider its position is facially illogical. Regardless of whether or not plaintiffs in New York substantially prevailed on their much broader claims, there is no tenable argument that that FAC prevailed on its claims, and FAC should not be rewarded for riding the coattails of other litigants. Had FAC never filed its case, the identical result would have occurred. Finally, even if Plaintiff could show that it is eligible for fees, it is not entitled to them because this Court ruled that the Government's position was not only reasonable but was in fact correct when it granted the Government's motion for summary judgment in its entirety.

# BACKGROUND

## New York Litigation

On December 20, 2011, the New York Times filed a complaint in the District Court for the Southern District of New York, which was then consolidated with a similar case brought by the ACLU. The consolidated cases sought various records pertaining to "targeted killings," including certain opinions of the Department of Justice ("DOJ") Office of Legal Counsel

("OLC").  In those cases, the district court granted the Government's motion for summary

judgment, ruling in part that DOJ's withholding of a memorandum pertaining to DOD operations

("the OLC-DOD memorandum"), was lawful and the applicable exemptions had not been

waived by virtue of official public acknowledgement, and upholding DOJ's partial Glomar

response for OLC opinions on the use of lethal targeted force by intelligence agencies in the

conduct of counterterrorism operations.  *See NY Times v. DOJ,* 915 F. Supp. 2d 508, 550-53

(S.D.N.Y. 2013).  The ACLU and the New York Times appealed to the Second Circuit Court of

Appeals.

The Second Circuit reversed in part, holding among other things, that the Government

had waived FOIA exemptions with respect to certain information, including portions of the

OLC-DOD memorandum and the partial Glomar response.  *See NY Times v. DOJ,* 752 F.3d 123

(2d Cir. 2014), *revised and superseded by* 756 F.3d 100 (2d Cir. 2014), *amended on denial of*

*rehearing by* 758 F.3d 436 (2d Cir. 2014), *supplemented by* 762 F.3d 233 (2d Cir. 2014).  In part,

the Second Circuit found that a draft DOJ white paper (that was leaked in early 2013and later

officially acknowledged), together with the Government's acknowledgement in May 2013 of the

strike that killed Aulaqi, waived the exemptions otherwise applicable to certain portions of legal

analysis in nonpublic OLC advice related to Aulaqi.  Specifically, the court concluded that the

government had officially acknowledged the fact that the CIA maintained an undefined

operational role in drone strikes generally and in the specific operation against Aulaqi.  On June

5, 2014, the Government petitioned for panel rehearing and, alternatively, for rehearing *en banc,*

but also advised the Court that it would not seek further review of certain aspects of the opinion.

On June 23, 2014, the Second Circuit panel bifurcated the issues raised by the rehearing petition;

the panel granted the rehearing petition in part and published an amended version of the Second

Circuit opinion and a court-redacted version of the OLC-DOD memorandum.

On June 26, 2014, the Court of Appeals issued a partial mandate to the District Court, requiring *in camera* review of any other responsive OLC memoranda. *See* Order, Dkt. No. 1:11-cv-09336-CM (SDNY June 30, 2014) (describing mandate and ordering in camera production). The District Court ordered that this submission be made by August 15. *See* Order, No. 1:11-cv-09336-CM (SDNY July 9, 2014) (rejecting proposal for public briefing and adjusting schedule). The Government was required to process any other OLC memoranda in accordance with the Second Circuit's waiver findings before submitting the justification for withholding to the district court for *in camera* review. In connection with that process, on August 15, 2014, the Government released a second redacted memorandum related to contemplated CIA operations against Aulaqi ("the February 2010 memorandum") to the New York Times, the ACLU, FAC and the public. *See* Second Declaration of John E. Bies, dated October 10, 2014, ¶ 9 (ECF No. 101-1) (hereinafter "2nd Bies Dec.").[1]

<u>This Litigation</u>

On February 29, 2012, two months after the New York litigation was underway, FAC filed suit, seeking an OLC opinion pertaining to the targeting of Anwar al-Aulaqi. *See* First Declaration of John Bies, dated Sept. 5, 2013, ¶ 9 & Ex. B (ECF No. 63-1) (hereinafter "1st Bies Dec."). At the time, just as in the New York litigation, the nature of any role played by the U.S. Government in that operation had not been made public, despite widespread media speculation. Accordingly, Defendant DOJ initially refused to confirm or deny the existence of any responsive documents.[2] While Defendant's first motion for summary judgment was pending, the highest levels of Government considered the current, evolving factual situation and made a considered

---

[1] Plaintiffs in that lawsuit have indicated that they may challenge at least some of the redactions to the released memoranda.

[2] The Government also initially moved to stay this litigation pending the resolution of the New York matter, which was aggressively scheduled and could have informed or narrowed the issues for review here. The Court denied the motion but indicated that it would not rule until after the district court in New York made a decision in that matter. *See* ECF No. 27.

decision to declassify and disclose the fact of U.S. Government operational involvement. President Obama directed the Attorney General to disclose additional information about targeted lethal operations that, until that point, had been properly classified. *See* Declaration of Jennifer Hudson, dated September 5, 2013, ¶ 9 (ECF No. 63-2).  In a letter to the Chairman of the Senate Judiciary Committee dated May 22, 2013, the Attorney General publicly acknowledged for the first time that the United States specifically targeted and killed one U.S. citizen, Anwar al-Aulaqi, in the conduct of U.S. counterterrorism operations and further identified three other U.S. citizens who were not specifically targeted but had been killed in counterterrorism operations since 2009.  *See* 1st Bies Dec. ¶ 12, Ex. E; Hudson Dec. ¶ 9.  This acknowledgement was followed by President Obama's speech at the National Defense University in which he explained that he had declassified this information in order "to facilitate transparency and debate on the issue, and to dismiss some of the more outlandish claims," while also noting the "necessary secrecy" surrounding such operations.  *See* Hudson Dec. ¶ 10; Second Declaration of Amy Powell, dated September 5, 2013, at ¶ 4, Ex. C (ECF No. 63-4).  Notwithstanding these additional official disclosures, it remained the case that no authorized Executive Branch official had disclosed the classified contents of the acknowledged OLC memorandum or the nature of any intelligence community involvement in the use of targeted lethal force.

        In light of these deliberations and declassification decisions, Defendant DOJ withdrew its pending first motion for summary judgment in the present matter.  *See* ECF No. 59 ("Because the Glomar response was issued to protect the previously classified fact of whether or not the United States contemplated and conducted the operation that resulted in Anwar al-Aulaqi's death, the Department respectfully withdraws its motion for summary judgment in this case.").  Defendant filed its second motion for summary judgment in this matter on September 5, 2013, *see* ECF No. 63, and a motion hearing was held on January 23, 2014, while the appeal in the

Second Circuit was still pending.[3]  Consistent with its position in the Second Circuit matter, DOJ

acknowledged the existence of one responsive memorandum that pertained to contemplated

DOD operations against Anwar al-Aulaqi (the OLC-DOD memorandum) and otherwise issued a

partial Glomar response, declining to confirm or deny the existence of OLC opinions related to

any other agency.  The OLC-DOD memorandum was withheld in full because there was no

reasonably segregable, non-exempt information therein.  Rather, it contained currently and

properly classified information related to sources and methods (Exemptions 1 and 3) and was

exempt in full under the deliberative process privilege and the attorney-client privilege

(Exemption 5).

On April 11, 2014, this Court granted DOJ's motion for summary judgment, correctly

finding that the OLC-DOD memorandum was properly withheld in full under Exemptions 1, 3

and 5.  *See* Slip Op. (ECF No. 86), available as *First Amendment Coal. v. DOJ*, 2014 WL

1411333 (N.D. Cal. April 11, 2014).  The Court found that the legal analysis in the OLC-DOD

memorandum could be properly classified and that no public statements were sufficiently

specific to officially acknowledge the classified information therein,[4] that the memorandum was

exempt in full pursuant to Exemption 5, and that the partial Glomar response was appropriate

under Exemptions 1 and 3.  The Second Circuit decision was issued shortly thereafter and

Plaintiff then moved for reconsideration, apparently on the grounds that the Second Circuit

---

[3] In the Second Circuit matter, the Government had previously acknowledged the existence of the OLC-DOD Memorandum, although not specifically that it related to Anwar al-Aulaqi until after the 2013 declassification.  After the declassification decision, while the appeal was pending, the Government informed the Court of Appeals that it could provide some additional description of the withheld material, including the fact that withheld legal analysis pertained to Aulaqi.

[4] The Government did not argue that the legal analysis in the OLC-DOD memorandum was classified in its entirety.  *See* Def's Reply Mem. at 12n.9 (ECF No. 76) ("The U.S. Government does not maintain that every piece of information in the document is classified, but rather that the classified information and the privileged information together constitute the whole of the document. If one or more of the Exemptions were ultimately rejected by the Court and the Ninth Circuit, the Government would need to evaluate the segregability of the remaining Exemptions.").

1   decision was correct and this Court was incorrect. *See* ECF No. 88. The Court ordered the

2   parties to confer and the parties asked the Court to delay briefing to determine whether they

3   could resolve any remaining issues. *See* ECF No. 91, 92. Ultimately, the parties agreed that

4   release of the redacted February 2010 memorandum resolved any briefing about the Defendant's

5   FOIA obligations. *See* Status Report at 2 ("no substantive issues remain") (ECF No. 94).

6   Plaintiff now seeks attorney's fees, and the Court instructed the parties to limit briefing to the

7

8   question of whether Plaintiff should be awarded fees.

9                                      **ARGUMENT**

10  I.   PLAINTIFF MUST ESTABLISH ELIGIBILITY FOR AND ENTITLEMENT TO
         ATTORNEYS' FEES IN ORDER TO RECOVER.
11

12        Under FOIA, "district courts 'may' award attorney's fees and costs to members of the

13  public who substantially prevail in FOIA litigation against the government." *Tax Analysts v.*

14  *DOJ*, 965 F.2d 1092, 1093 (D.C. Cir. 1992) (quoting 5 U.S.C. § 552(a)(4)(E)), *superseded by*

15  *statute on other grounds*. The determination of whether to award fees to a substantially

16
    prevailing FOIA plaintiff is left to the discretion of the Court. *Id.* "The legislative history of the
17

18  FOIA makes it clear that Congress did not intend an award of attorney's fees to be automatic."

19  *Church of Scientology of Ca. v. U.S. Postal Serv.*, 700 F.2d 486, 492 (9th Cir. 1983).

20        "In order to receive an award of fees, a prevailing party in a FOIA action must
21
    demonstrate both e*ligibility* for and *entitlement* to such a recovery." *Long v. IRS*, 932 F.2d 1309,
22
23  1313 (9th Cir. 1991) (emphasis in original). *See also Rosenfeld v. DOJ,* 903 F. Supp. 2d 859

24  (N.D. Cal. 2012)*; Hersh & Hersh v. HHS*, No. C 06-4234 PJH, 2008 WL 2725497, at *1 (N.D.

25  Cal. July 10, 2008).

26        "A plaintiff is deemed to be eligible for fees if he has 'substantially prevailed' on his
27
    complaint, as defined under the statute." *Hersh & Hersh*, 2008 WL 2725497, at *1. A FOIA
28
    plaintiff has "substantially prevailed" if it has "obtained relief through either . . . [a] a judicial

order, or an enforceable written agreement or consent decree; or [b] a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." *Id.* (quoting 5 U.S.C. § 552(a)(4)(E)(ii)). To prevail under a "catalyst" theory, the plaintiff must present convincing evidence that two threshold conditions have been satisfied. "The plaintiff must show that: (1) the filing of the action could reasonably have been regarded as *necessary* to obtain the information; and (2) the filing of the action had a *substantial causative effect* on the delivery of the information." *Church of Scientology*, 700 F.2d at 489. *See also Rosenfeld*, 903 F. Supp. 2d at 866 (same); *Contreras v DOJ*, 729 F. Supp. 2d 167, 170 (D.D.C. 2010) (to demonstrate that it "substantially prevailed . . . under the catalyst theory a FOIA plaintiff must prove that prosecution of the action could reasonably be regarded as necessary to obtain the information and that a causal nexus exists between the action and the agency's surrender of that information") (internal quotation omitted). "[T]he mere fact that the information sought was not released until after the lawsuit was instituted is insufficient to establish that a complainant has 'substantially prevailed.'" *Church of Scientology*, 700 F.2d at 491. *See also Weisberg v. DOJ*, 745 F.2d 1476, 1496 (D.C. Cir. 1984) ("the mere filing of the complaint and the subsequent release of the documents is insufficient to establish causation").

If a plaintiff demonstrates eligibility for fees, the district court may then, in the exercise of its discretion, determine that the plaintiff is entitled to an award of fees and costs. *Rosenfeld*, 903 F. Supp. 2d at 865 (citing *Oregon Natural Desert Ass'n v. Locke*, 572 F.3d 610, 614 (9th Cir.2009)). Entitlement to an award of fees under FOIA is a separate analysis, and a "determination of eligibility does not automatically entitle the plaintiff to attorney's fees." *Id.* at 865-66 (quoting *Church of Scientology*, at 489). In exercising this discretion, the Court is guided by the non-exhaustive four-factor test employed by the Ninth Circuit. *Id.* This test requires a court to evaluate (1) the benefit to the public deriving from the case; (2) the commercial benefit

to the complainant; (3) the nature of the complainant's interest; and (4) whether the

Government's withholding of the records sought had a reasonable basis in law. *See id.* (citing

*Long v. IRS*, 932 F.2d at 1313).

## II.   PLAINTIFF IS NOT ELIGIBLE FOR FEES UNDER THE STATUTE BECAUSE IT DID NOT SUBSTANTIALLY PREVAIL IN THIS LITIGATION

Plaintiff's motion for fees should be denied because it has not shown that it is eligible for

or entitled to any recovery.  Plaintiff did not substantially prevail in a litigation in which it lost

every substantive issue that was determined on the merits.  Plaintiff, like every other member of

the general public, received two documents that were released in redacted form as a result of a

court order in the Second Circuit.  Having filed suit on similar issues and lost does not make this

Plaintiff eligible for fees.

Plaintiff does not, and cannot, attempt to show that it is eligible for fees for having

received a favorable judicial order or consent decree.  *See* 5 U.S.C. § 552(a)(4)(E)(ii)(I).  Instead,

Plaintiff cobbles together a number of arguments in an attempt to show that its loss in the

Northern District of California was necessary to and substantially caused the release of

documents.  Primarily, Plaintiff relies upon the release of the OLC-DOD memorandum and the

February 2010 memorandum to show a "voluntary or unilateral change in position by the

agency."  *See* 5 U.S.C. § 552(a)(4)(E)(ii)(II).  But, of course, the release of those documents was

neither voluntary nor unilateral, and "the mere fact that the information sought was not released

until after the lawsuit was instituted is insufficient to establish that a complainant has

'substantially prevailed.'"  *Church of Scientology*, 700 F.2d at 491.

Often, in "catalyst" cases, the court is forced to guess as to the Government's motivation

or internal deliberations that may have led to the release of additional information during the

pendency of a lawsuit, but here, no such guessing is necessary.  The Government argued

staunchly for withholding of these memoranda here and elsewhere.  Shortly after this Court ruled

in the Government's favor, allowing the Government to withhold these memoranda, the Second

Circuit reversed in part the district court in New York, and in fact published itself the redacted

OLC-DOD memorandum as an appendix to its revised opinion.  Certainly, nothing about FAC's

actions in this litigation affected the Second Circuit's decision to disclose that memorandum.

The Second Circuit also rejected the partial Glomar response with respect the existence or non-

existence of OLC opinions pertaining to contemplated CIA operations, meaning the Government

could no longer maintain its partial Glomar response.  The Second Circuit's decision, therefore,

necessitated the processing of the February 2010 memorandum.  On remand, the district court

ordered *in camera* production of other responsive OLC memoranda, along with any justification

for further withholding by August 15.[5]  In short, the Second Circuit released the redacted OLC-

DOD memorandum and rejected the Glomar defense protecting the existence of the February

2010 memorandum.  Moreover, the Second Circuit was not influenced by FAC's position here

and would have made the same public release even if FAC had never litigated this case.  Thus,

while the Second Circuit decision accordingly contributed to the release of those two documents,

the litigation of this matter emphatically did not.  Accordingly, Plaintiff's actions cannot

reasonably be regarded as "necessary" to the disclosure of the released memoranda.  *See Church*

*of Scientology*, 700 F.2d at 489.  This litigation had no causative effect on the release, much less

a "substantial" effect.  *Cf. Laughlin v. Comm'r*, 117 F. Supp. 2d 997, 1002 (S.D. Cal. 2000) (fees

inappropriate where document "readily accessible commercially"); *Hersh*, 2008 WL 2725497, at

---

[5] Plaintiff's memorandum incorrectly asserts that the Government's release of the February 2010 Memorandum on August 15 was "unilateral" as evidenced by the parties' meet and confer.  In fact, the Government informed Plaintiff's counsel at that meet and confer that as a result of the Second Circuit litigation and the schedule then under negotiation in the Southern District of New York, it expected to process one additional responsive memorandum on or before August 15.  That conversation is confirmed by Plaintiff's submitted declaration and Exhibit.  *See* Burke Dec. ¶ 5 & Exhibit A.  The processing of the second memorandum was effectively compelled by the Second Circuit's rejection of the partial Glomar response and the Second Circuit's publication of the same analysis in another document.

*2 (fees inappropriate where disclosure of 18 pages — a "minuscule amount" — was "insubstantial . . . compared to the type of information . . . sought" and provided no "critically important information to the public").

Plaintiff speculates that the release "was accomplished by a mix of litigation both in this Court and Second Circuit, as well as political pressure," and that "all three factors contributed to both the Second Circuit's opinion and the Government's decision to forego an *en banc* appeal to prevent the release of the OLC-DOD Memo." Pl's Mot. at 9.  Only one of those purported factors is relevant here – FAC's litigation – and the burden is on FAC to demonstrate that its litigation was *necessary* to cause the release.  The Government is somewhat at a loss as to how FAC's litigation may have even arguably caused the Second Circuit's decision, since the Second Circuit mentioned it only in passing and only to distinguish this Court's analysis.  There is certainly nothing in the record suggesting that the Second Circuit even was aware of any positions taken by FAC, much less that FAC's positions were necessary to the release.

Without any evidence that its lawsuit caused the release of the redacted OLC documents, Plaintiff must lean heavily on its unsubstantiated speculation that this court's ruling somehow led to a decision by the Government not to seek further review of a loss in the Second Circuit. Plaintiff's speculation is both implausible and without any foundation.[6]  As the Government continues to make clear in its filings in New York, the Government disagrees with the Second Circuit's ruling.  The Government's decision not to seek *en banc* review or *certiorari* is immaterial; the Government does not appeal or seek certiorari on every FOIA decision with which it disagrees.  Such review is rare, and the decision whether to seek further review rests with the Office of the Solicitor General, *see* 28 C.F.R. §0.20, which balances numerous

---

[6] Indeed, Plaintiff argues elsewhere – based on inappropriate and inauthenticated hearsay - that the Government made the release due to political pressure from Congress, *see* Pls Motion for Vacatur at 1-2, which, even if true, certainly does not support a conclusion that this Plaintiff is eligible for fees.

considerations in determining which cases to pursue in the Supreme Court.  Plaintiff certainly

has presented no reason to conclude that the Solicitor General was influenced by pending district

court litigation in another jurisdiction.  But logically, the existence of a favorable opinion in

another jurisdiction, if it were to factor into such a deliberation at all, would weigh *in favor* of

seeking further review, because it creates a split in authority that favors Supreme Court review.

Faced with an incorrect *circuit court* decision based on deeply flawed legal reasoning, the

existence of district court litigation (and a *favorable* district court decision) in another

jurisdiction logically would exert no pressure against appeal.  That analysis is not changed by

FAC's filing of a (highly disfavored) motion to reconsider, which in any event lacked merit.

　　　None of the cases cited by Plaintiff points to a different conclusion on these facts.  In

*Weatherhead v. US*, for example, an opinion that was vacated, the agency changed its position on

appeal and released the document at issue despite having prevailed below.  *See* 112 F. Supp. 2d

1058, (E.D. Wash. 2000), *opinion vacated on stipulated motion*, Dkt. No. 2:95-cv-00519 (E.D.

Wash. Feb. 12, 2001).  There was no suggestion in that case, however, that the Government was

in any way influenced by anything other than events in the course of that litigation.  Here, in

contrast, the evidence is indisputable that the Government made the release only after a loss in

another jurisdiction on similar issues.  And in *Hamlin*, like most of the other cases cited by

Plaintiff, the court plausibly found that documents similarly were released as a result, at least in

part, of the plaintiff's lawsuit.  *See Hamlin v. Kelley*, 1980 U.S. Dist. Lexis 11547, at *26-27

(N.D. Ill. May 21, 1980).

　　　Perhaps realizing that FAC cannot plausibly claim credit for the releases in the New York

litigation, FAC argues in the alternative that it should be awarded fees for "steady, incremental

successes" and "the Government's recalcitrance."  *See* Pl's Mot at 13-15.  In arguing that the

Government changed positions over time, Plaintiff appears to claim credit for the President's

decision to declassify information about Anwar al-Aulaqi in mid-2013, which resulted in a

withdrawal of the Government's then-fully-briefed first motion for summary judgment in this

matter.  *See* ECF No. 59 (withdrawing motion for summary judgment); Hudson Dec. ¶ 9

(describing President's declassification decision).  Plaintiff's speculation is wildly implausible,

given the weighty considerations involved in a declassification decision of that magnitude.  But

even if one assumed it were true, the President's decision to declassify the fact that the U.S.

engaged in that operation does not render Plaintiff a prevailing party because it did not result in

any relief for Plaintiff.  No judicial order was entered in Plaintiff's favor and no documents were

disclosed as a result.  *See, e.g., Mobley v. DHS*, 908 F. Supp. 2d 42, 48-49 (D.D.C. 2012)

(finding that agency's change of position alone that did not result in production of documents or

any meaningful relief did not make plaintiff eligible for fees).[7]  Accordingly, even assuming that

Plaintiff somehow "caused" a change in position in 2013 (which it did not), it did not "cause" the

release of documents subject to FOIA.

      Plaintiff praises its own "tenacity" and "relentlessness" in obtaining documents.  It bears

repeating that Plaintiff's purported "tenacity" yielded no fruit – it lost every issue in this

litigation and received no documents until after the Second Circuit decision.  The responsive

documents were released as a direct and demonstrable result of another plaintiff's separate

litigation in another jurisdiction and therefore would have been released at the same time

regardless of whether FAC was "tenacious" or had even filed suit at all.  And, indeed, the cases

cited by Plaintiff all involve distinguishable situations where the plaintiff's litigation clearly led

---

[77] Plaintiff cites one unpublished Minnesota magistrate recommendation to the contrary, in which the clarification of a FOIA response as a "no records" response with respect to one part of the request resulted in a partial award of fees.  *See Public Record Media v. DOJ*, 2013 WL 3024091 (Jan. 29, 2013).  That decision is plainly incorrect in light of the well-established standard for "substantially prevailing" but in any event is distinguishable because the plaintiff's "success," such as it was, was attributable only to his own lawsuit, which resulted in a clarification of the original FOIA response.

to release of documents.  *See, e.g., Exner v. FBI*, 443 F. Supp. 1349 (S.D. Cal. 1978) (court

ordered processing schedule resulted in expedited production of responsive documents);

*Harrison Bros. Meat Packing Co. v. Dep't of Agriculture*, 640 F. Supp. 402 (M.D. Pa. 1986)

(defendant produced the document without a court order, in response to a request for production

from the plaintiff in another civil matter involving the exact same parties and related issues;

FOIA court concluded that the decision was likely influenced by pending FOIA litigation).

　　　　　Finally, Plaintiff claims that the Government's alleged "recalcitrance" further supports its

claim for eligibility.  As an initial matter, this argument goes to entitlement rather than eligibility.

Nothing in the test articulated by the statute and the Ninth Circuit suggests any consideration

other than whether the Plaintiff prevailed.  In addition, the record supports the opposite

conclusion.  As discussed further in Part III, below, the Government's position was entirely

reasonable, and as this Court found, correct.  Far from being engaged in so-called "kneejerk

secrecy," *see* Pl's Motion at 15, the Government made nuanced and compelling fact-sensitive

judgments based on the evolving factual and legal landscape as the case proceeded.

III.　　THE COURT SHOULD EXERCISE ITS DISCRETION TO FIND PLAINTIFF IS NOT
　　　　ENTITLED TO FEES.

　　　　　Even if plaintiff could show that it is eligible for attorneys' fees in this case, which it

cannot, FAC cannot show that it is entitled to fees because the Court already determined DOJ's

positions in this case were correct as a matter of law.  "[A]lthough the test of entitlement

involves a balance of several factors, there can be no doubt that a party is not entitled to fees if

the Government's legal basis for withholding requested records is correct." *Chesapeake Bay*

*Found., Inc. v. USDA*, 11 F.3d 211, 216 (D.C. Cir. 1993), *abrogated in part on other grounds*

(internal citations omitted).[8]  Under the fourth criterion for entitlement, an award of fees is

---

[8] With respect to the other criteria for entitlement, Defendant has no reason to question Plaintiff's
motivations, but there is ample reason to doubt whether any "public benefit" was actually

disfavored if the agency's initial decision to withhold the sought information had a reasonable

legal basis. *Scientology,* 700 F.2d at 492. "[A] court would not award fees where the

government's withholding had a colorable basis in law but would ordinarily award them if the

withholding appeared to be merely to avoid embarrassment or to frustrate the requester." *Id.*

Withholding can have a reasonable legal basis even when the requested information is ultimately

determined not to fall within an FOIA exemption. *Id.* at 494; *see also Waage v. IRS*, 656 F.

Supp. 2d 1235, 1241 (S.D. Cal. 2009) (finding no entitlement where Plaintiff received

documents under a settlement agreement in the absence of a court order because Government's

original position was reasonable).

     The only substantive issues ruled on by the Court in this case were those raised by the

Government's second motion for summary judgment, which was granted in its entirety.[9]  The

Court properly found that the OLC-DOD memorandum was currently and properly classified at

least in part and that it was privileged in full, and that no waiver had occurred with respect to

either the OLC-DOD memorandum or the partial Glomar. *See generally* Slip Op.  This Court's

reasoned decision provides ample basis to conclude that the Government's position had a

reasonable basis in law.  In reiterating arguments this Court has already rejected, Plaintiff

continues to criticize the Government for making careful public disclosures prior to the Second

Circuit decision.  As previously established, and accepted by this Court, it is consistent with the

public interest, the purposes of FOIA, and the classification decisions made by the President of

achieved.  FAC filed a lawsuit very similar to those already being litigated elsewhere and failed
to secure any additional documents as a result.  It hardly seems to serve the public interest or the
general interests of FOIA to reward unsuccessful plaintiffs simply because a different plaintiff in
a different jurisdiction was more successful.

[9] The cases relied upon by Plaintiff are thus readily distinguishable.  In none of these cases was
there a judicial decision finding the Government's position to be not only reasonable but correct.
*See, e.g., Yonemoto v. Dep't of Veterans Affairs*, 549 Fed. Appx. 627, 628 (9th Cir. 2013)
(upholding district court finding that agency's positions were inconsistent and implausible);
*Hajro v. USCIS*, 900 F. Supp. 2d 1034 (N.D. Cal. 2012) (finding a pattern and practice of
violation of FOIA).

the United States for the Government to attempt to provide some information publicly while holding back privileged communications and specific information that would damage national security. *See generally*, Def's 2nd Motion for Summ. J. A contrary decision by the Second Circuit does not render this Court's decision somehow unreasonable. (Nor, for that matter, does it render the same judgment by the Southern District of New York unreasonable, although it was eventually reversed. *See NY Times v. DOJ*, 915 F. Supp. 2d 508 (initially upholding same withholdings)).[10]

Plaintiff continues to imply that the Government somehow behaved improperly with respect to the draft white paper and argues that the Court's decision was based on "incomplete" information with respect to the draft white paper. To the contrary, this Court's conclusions with respect to the draft white paper were largely correct, whereas the Second Circuit's conclusions were demonstrably wrong. The draft white paper was an unclassified draft paper by DOJ that

---

[10] This Court's original judgment with respect to the waiver issue is further buttressed by the reasoning of the D.C. Circuit in two cases. First, the D.C. Circuit, although it rejected the CIA's partially-withdrawn, blanket Glomar response with respect to drone strikes, rejected an argument made by the ACLU that the Second Circuit adopted. Namely, the ACLU argued (as FAC has) that certain statements by senior government officials officially disclosed the existence of a CIA operational interest in drone strikes. Although the Second Circuit adopted that view, the D.C. Circuit had previously rejected it, finding that the same statements later relied upon by the Second Circuit disclosed the existence of some intelligence interest in drone strikes but not necessarily an operational role. *See ACLU v. CIA*, 710 F.3d 422, 428 (D.C. Cir. 2013) (noting that certain statements by President Obama and then-Assistant to the President John Brennan "do not acknowledge that the CIA itself operates drones" and finding that acknowledgment of an intelligence interest in strikes conducted by the U.S. Government would not reveal whether or not "the Agency itself – as opposed to some other U.S. entity such as the Defense Department – operates drones."). Second, the D.C. Circuit has also diverged from the reasoning of the Second Circuit with respect to adoption and waiver of OLC opinions in general. *See generally Elec. Frontier Found. v. DOJ*, 739 F.3d 1 (D.C. Cir. 2014) (distinguishing Second Circuit case law on OLC opinions and finding that public references to an opinion did not waive applicable privileges). Like this Court's opinion, the opinions of the D.C. Circuit provide additional support for the conclusion that the Government's position was at least reasonable. Plaintiff's argument that it is entitled to fees therefore rests on the premise that the legal conclusions of this Court and the D.C. Circuit are unreasonable. Indeed, even the reasoning underlying the Second Circuit's waiver finding, which rests on statements and disclosures in 2013, supports the government's position that the two OLC opinions were withholdable in full at the time of the administrative FOIA response to FAC in 2011.

was originally developed and discussed internally as a potential vehicle for explaining publicly

the legal framework that applies in this area.  It was never finalized and never completed

interagency review, although it was later provided to Congress as an accommodation in response

to an oversight request.  2nd Bies Dec. ¶¶ 14-22.  After the draft white paper was leaked to the

media, as previously explained to the Court, the leaked draft white paper was officially

acknowledged to be an authentic document but was never officially adopted as a position of the

Department or the Government.  2nd Bies Decl. ¶¶23-26; *see* Def's Reply at 6-7 & n.3.

Accordingly, the draft white paper became an officially acknowledged document but its public

release did not waive the privileges applicable to the separate, readily distinguishable legal

advice document that was the OLC-DOD memorandum.  *See* Slip Op. at 29-30 (holding that

public references to the draft white paper do not waive Exemption 5 protections over the OLC-

DOD memorandum).  The Government *never argued* or even suggested that the draft white

paper had not been disclosed; on the contrary, the briefing explicitly stated that it had now been

officially acknowledged and in no way claimed that the white paper itself was still privileged or

otherwise non-public.  The same was explained at oral argument.

Plaintiff makes much of the fact that, after acknowledging the draft white paper, the

government provided it to a FOIA requester as well.  The FOIA release is of no legal moment

here whatsoever.[11]  Although the Government was under no obligation to officially acknowledge

---

[11] The Government did not argue that the draft white paper had not been officially disclosed.  In fact, the Government explicitly noted that it had been subsequently acknowledged, *see* Def's Reply at 6-7 & n.3 (and, although the draft white paper was not at issue here, the Government no longer claimed exemptions over the draft white paper).  In addition to finding the acknowledgement of the draft white paper not to constitute an adoption or waiver for the purposes of Exemption 5, Slip Op. at 29-30, this Court also noted, in its analysis under Exemption 1, that the draft white paper was never "officially disclosed" by the Government.  Slip Op. at 24.  This is true only to the extent that the Court meant that it was not the official position of the Government, although the Government did release the document to FOIA requesters.  2nd Bies Decl. ¶¶ 23-26.  The Government never relied on a distinction between "acknowledgement" and "disclosure."  In any event, the distinction cannot have affected the

the authenticity of a leaked document, having done so, the Government provided it to more than one proper FOIA requester.  The document released to FOIA requesters does not contain any additional information that was not previously released by acknowledgement of the leaked document.  Nor did the Government in any way mislead the Court; in summary judgment briefing and at oral argument, the Government argued that the draft white paper, like other public statements and documents, did not mention the OLC-DoD memorandum, did not mention OLC, did not mention Anwar al-Aulaqi, and does not purport to set forth policy or bind any part of the United States.  *See* Def's Reply at 6-7.  To make public statements regarding the legal basis for an activity is not the same thing as making a public statement disclosing specific legal advice an official may have received; nor does it adopt that legal advice as a policy of the U.S. Government or otherwise waive the privileges that apply to pre-decisional legal advice on the same topic that is not expressly adopted or incorporated in the public statement.  This Court, therefore, correctly held that vague public references to the draft white paper "[a]t most . . . might support an argument that the government has expressly relied on the leaked White Paper because it has referred the press and the public to that document," not an express reliance on the OLC-DOD Memorandum.  Slip Op. at 29-30.  The Court further explained that "[s]tating that the President has provided Congress with OLC advice 'related to the subject of' the White Paper is far from an express adoption of the analysis in the DOD memorandum." *Id.*

---

Court's analysis.  The unclassified draft white paper never contained any information that the Government maintained was classified and protected by Exemption 1.  (As discussed *supra*, note 1, the government did not argue that all portions of the OLC-DOD memorandum were classified.)  Indeed, the draft white paper was created as an attempt to inform the public about unclassified legal analysis without disclosing classified information. *Id.* ¶14.  Accordingly, regardless of the status of that document, it could not have affected the Court's other analysis on Exemptions 1 and 3.  If the Court intended to rely on a distinction between "acknowledgement" and "disclosure" rather than between "acknowledgement" and specific official adoption, that language appears only in the Exemption 1 analysis in the Court's opinion and thus cannot have affected the outcome.  The Court explicitly held that, regardless of whether or not there was segregable unclassified legal analysis in the OLC-DOD memorandum, the memorandum was properly withheld in full under Exemption 5. *See* Slip. Op. at 26.

Finally, the Plaintiff states repeatedly that the Government's position was unreasonable because, in FAC's estimation, there has been no harm to national security from the disclosures ordered by the Second Circuit.  *See, e.g.*, Pl's Motion at 14.  FAC, of course, is in no position to know how the disclosure ordered by the Second Circuit have affected the U.S. Government's liaison relationships with foreign partners that were premised on secrecy, or what adaptations have been made, or what the long-term effects of such disclosures could be.  Nor is Plaintiff in a position to evaluate the effect of such disclosures on attorney-client communications within the Government and on communications with Congress.  As the declarations submitted in this matter established and this Court agreed, there are likely to be such effects.  *See* Hudson Dec. ¶¶28, 32-34; 1st Bies Dec. ¶¶17-18; Slip Op.

### CONCLUSION

For the foregoing reasons, Defendants respectfully urge the Court to deny the motion for fees.

Respectfully submitted this 31st day of October, 2014.

JOYCE R. BRANDA
Acting Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director

By_____\s\\*Amy E. Powell*_____

AMY POWELL
Trial Attorney
Department of Justice
Civil Division
Federal Programs Branch
20 Massachusetts Avenue, N.W.,
Room 5377
Tel:  (202) 514-9836
Washington, D.C. 20001
Amy.Powell@usdoj.gov

*Attorneys for Defendant*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28