THOMAS R. BURKE (State Bar No. 141930)
JONATHAN L. SEGAL (State Bar No. 264238)
KATHLEEN CULLINAN (State Bar No. 287604)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California 94111
Telephone: (415) 276-6500
Facsimile: (415) 276-6599
Email: thomasburke@dwt.com; jonathansegal@dwt.com
kathleencullinan@dwt.com

Attorneys for Plaintiff
FIRST AMENDMENT COALITION

IN THE UNITED STATES DISTRICT COURT

THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| FIRST AMENDMENT COALITION,<br><br>                Plaintiff,<br><br>  vs.<br><br>U.S. DEPARTMENT OF JUSTICE,<br><br>                Defendant. | Case No. **CV 12-01013 CW**<br>[Assigned to the Hon. Claudia Wilken]<br><br>**REPLY IN SUPPORT OF PLAINTIFF FIRST AMENDMENT COALITION'S MOTION FOR ATTORNEYS FEES AND COSTS**<br><br>Date: TBD<br>Time: TBD<br>Place: Courtroom 2 - 4th Floor |

# I. INTRODUCTION

This litigation was one element in a national campaign to obtain transparency on a basic constitutional question: when can the Government act extra-judicially to take the life of a U.S. citizen who is a suspected terrorist? The Government has played legal and political games, first denying, then confirming facts, releasing information when it was politically expedient, and artfully parsing the statements of officials to maintain gossamer-thin arguments about what was, and was not, being stated, while simultaneously giving the appearance of openness.

At the outset, the Government insisted that it could not confirm or deny the existence of documents responsive to FAC's FOIA request – which facially excluded any intelligence or national security information[1] – without irreparable damage to national security and the ability of the Government to function.[2] It maintained this apparent fiction throughout briefing on the first set of summary judgment papers – right up until it reversed course and confirmed the existence of one memorandum, mooting the initial round of motions before this Court had a chance to rule. It was similarly intransigent with regard to the release of the OLC-DOD Memo and the confirmation of the existence of any other documents – it was against releasing them to FAC until it actually released them. The Government argues that FAC's positive result in this case was an anomaly caused solely by a Second Circuit opinion it steadfastly maintains is wrong, flawed, and incorrect.[3] While the importance of the Second Circuit's unanimous opinion cannot be denied –

---

[1] Specifically, the request stated that FAC was "not interested in factual information about intelligence sources and methods or U. S. military capabilities." Dkt. 1, Ex. A.

[2] Incredibly, at one point the Government claimed that the FBI Director – speaking to Congress – did not disclose that the Government was involved in the death of Anwar al-Awlaki when he said that "[d]ue to the coordinated efforts of our military, the intelligence community, law enforcement, and our international partners, we have captured or killed many al Qaeda leaders and operatives, including Osama bin Laden and Anwar al-Awlaki." Dkt. 38 at 9-10; Dkt. 27, Ex. O.

[3] Though not so flawed or incorrect from the Government's perspective as to be worth challenging in any way. The Government does not seriously refute that its decision not to seek en banc review or review by the Supreme Court was partially a political one – a decision that ensured that the author of the OLC-DOD memo would be confirmed to the federal appellate court after Sen. Rand Paul's publicized announcement that no vote would be taken on Mr. Barron's judicial appointment until the Administration made the OLC-DOD memo publicly available. Rand Paul, The New York Times, *Show Us The Drone Memos*, May 11, 2014, *available at*

DAVIS WRIGHT TREMAINE LLP

FAC suggests that the real anomaly in this litigation is the Court's initial opinion on summary judgment, which would have been decided differently if not for the Government's misleading characterization of the release and distribution of the White Paper.

If the Government had been forthright about the fact that it had released the White Paper to key Congressional committees but also to at least two publications, it is likely that the Court, in this case, would have ruled differently. This was especially true after the Second Circuit's decision came out and FAC filed its Motion for Reconsideration. At that critical juncture, the Government decided to forego an appeal in the Second Circuit *and* render this case moot simultaneously, by ensuring the public disclosure of the same memoranda sought in this FOIA litigation.[4] This unilateral change in position guaranteed FAC's success here, but robbed it of the opportunity to obtain a hearing on its Motion for Reconsideration *or* appeal the initial decision to the Ninth Circuit. It left the Parties and the Court in this bizarre situation: the Government claims that FAC lost this case, even though it has received all of the documents it initially sought, even though the Court's initially negative ruling was precipitated on an incomplete disclosure of information exclusively withheld by the Government, and even though this case was mooted by the Government's decision to capitulate and allow the disclosure of the requested memoranda before FAC could receive appellate review or even receive a decision on its Motion for Reconsideration.

## II. THE MOTION FOR ATTORNEYS FEES AND COSTS SHOULD BE GRANTED.

### A. This Court Has Recognized The Utility Of Multi-District FOIA Litigation.

From the beginning, the Government has sought to prevent adjudication of this dispute. In its initial Motion to Stay, the Government argued that proceeding in this forum would "unnecessarily compromise the Government's ability to protect privileged information…" Dkt.

---

http://www.nytimes.com/2014/05/12/opinion/show-us-the-drone-memos.html?hp&rref=opinion&_r=0

[4] Some of the attorneys who have represented the Government in the New York cases have worked on this case as well.

27 at 5 (quoting the Government's brief). This Court rejected this argument, and explicitly recognized that a victory in one of these courts would have significant implications for the other. "The only way that these proceedings will compromise the government's ability to withhold information is if a court determines that the information is not subject to a FOIA exemption, <u>in which case the government does not have a legitimate interest in withholding it from public disclosure</u>." Dkt. 27 at 6 (emphasis added). In deciding to allow this case to proceed concurrently with the litigation in the Southern District of New York, the Court embraced the value of multi-district litigation in the unique context of FOIA litigation. In this case, where FAC substantially contributed to the Government's unilateral change in position in this multi-district litigation involving a matter of extraordinary public interest, FAC's attorneys' fees request advances the interests of FOIA.

### B. FAC Has Succeeded In This Case.

The Government breathlessly and repetitively insists that FAC has "lost on every issue," and that its "loss in California led the Government to reconsider its position." Opp. at 1. Not only do these assertions mischaracterize FAC's arguments, they also ignore the unilateral change of position that the Government made after three years of hard-fought FOIA litigation on both coasts and the likelihood that FAC would have prevailed if the Government had correctly characterized its official disclosure of the White Paper. FAC is not arguing that its "loss in California" led the Government to do anything. Rather, FAC is entitled to recover its attorneys fees because the Government unilaterally capitulated in the Second Circuit and unilaterally changed its years-long position against disclosing the memoranda responsive to FAC's FOIA request because, in part, it wanted to cut off any possibility of further adverse rulings. While the Court initially issued an order granting summary judgment to the Government – to state anything else would be untruthful – the issues in this case were still quite alive after the Second Circuit's opinion came down. After that opinion, FAC's Motion for Reconsideration raised the prospect of an adverse ruling by this Court and the possibility of an appeal in the Ninth Circuit. The Government's desire to preserve the initial opinion factored into its <u>unilateral</u> decision to change its position in both the Second Circuit and to moot this litigation, and allow the disclosure of

DAVIS WRIGHT TREMAINE LLP

OLC-DOD Memo in the Second Circuit as well as the CIA Memo here.

A FOIA litigant has substantially prevailed if it obtains relief through "a voluntary or unilateral change in position by the agency." 5 U.S.C. § 552(a)(4)(E)(ii). Such a change occurred when the Government, for political and strategic reasons, opted to stop fighting in the Second Circuit and here, and turn over the documents sought by FAC. The Court, in its order following FAC's Motion for Reconsideration, ordered the parties to meet-and-confer *after* the Government determined whether it would appeal the Second Circuit's opinion. Dkt. 91.[5] The Government had a choice: it could capitulate in the Second Circuit and likely moot the current case, or it could continue to fight in the Second Circuit or Supreme Court *and* in this case, risking an adverse decision on FAC's Motion for Reconsideration *and* a possible appeal to the Ninth Circuit. At that point in the case, FAC had every reason to be confident and the Government had every reason to be pessimistic about its chances before this Court and at the Ninth Circuit given the sweeping nature of the Second Circuit opinion – and the clarification of FOIA law it provided in a nearly identical case. *See* Dkt. 88 at II.B. Unsurprisingly – given the additional political pressure surrounding the release of the OLC-DOD Memo and Judge David Barron's confirmation – the Government chose to cut its losses, forego an appeal of the Second Circuit decision,[6] and strive to preserve the Court's initial decision here. Indeed, had the Government decided to go forward with an *en banc* appeal or petition for *certiorari*, even if it achieved success in the Second Circuit case, it would still have had to deal with the prospect of FAC achieving a different result on reconsideration and appeal. Far from being irrelevant, FAC's request played the role that one would expect parallel, multi-district litigation would play. Appealing the Second Circuit decision and victory there would not have given the Government certainty, because FAC's case

---

[5] "The Court acknowledges that the time to appeal the Second Circuit's opinion has not yet passed. The parties need not meet and confer until after that deadline has passed." Dkt. 91.

[6] Given the unusual timing and procedural posture of the Second Circuit's decision, it is possible that the Government's case there may have been stronger than its case here. The Second Circuit considered evidence – especially the White Paper – which was not even before the trial court in that case. In this case, the release of the White Paper and a number of other disclosures that occurred during its pendency were considered by the Court and would have been in the record on appeal.

would still have existed.

Thus, FAC is not arguing that its loss in this Court compelled the Government to capitulate and provide FAC with the CIA Memo; FAC is arguing that the Government was unwilling to risk that FAC would prevail in its Motion for Reconsideration and/or on appeal to the Ninth Circuit. After three years of litigation in which the Government abandoned its secrecy in part for political expediency, the Government is wrong to insist that FAC's FOIA request was irrelevant. Opp. at 9. Indeed, it was the existence of this multi-District FOIA litigation concerning the same OLC legal memoranda that ensured that *even if* the Government could achieve a reversal through further appellate review of the Second Circuit's ruling, it could not foreclose a potential adverse ruling by this Court or the Ninth Circuit. And it is clear that FAC would have prevailed – and should prevail in its pending Motion to Vacate – now that the Government has more accurately characterized the nature of the official disclosure of the White Paper. *See* Dkt. 101-1; Dkt. 105.

The Court's position on whether the White Paper had been "officially disclosed" as opposed to being "officially acknowledged" constitutes the Second Circuit's sole ground for distinguishing this Court's ruling from that opinion. So it is understandable that in its opposition brief, the Government continues to tie itself up in knots regarding the importance of the White Paper and the omission of its release of the White Paper to TruthOut and the New York Times, insisting that such actions were of "no legal moment." However, this argument contradicts the Government's repeated stance in this case and other cases: that when a government official leaks a document, it is not an official disclosure that counts as a legal waiver or statement of position; but when a document is officially released by an agency, it is legally significant. Dkt. 105 at II.B. Given the disclosure that the White Paper was provided to multiple Congressional committees, and two media outlets, while all of them were investigating the legitimacy of the targeted killing program, there can be little doubt that the memoranda released in this case – whose contents are reflected in the White Paper – constituted the working law of the Government. Thus, but for the Government's failure to state that it officially released the White Paper – a statement the Court embraced in its initial decision – FAC likely would have prevailed in summary judgment and

DAVIS WRIGHT TREMAINE LLP

prevailed in the Ninth Circuit had FAC proceeded with an appeal.

Regardless, as it stands now, the Court has no need to find that FAC would have prevailed on the Motion for Reconsideration. Rather, it is obvious from the current facts that FAC has substantially prevailed by prosecuting this litigation. Detailed information about the U.S. Justice Department's position regarding the legality of the Government's targeted killing program is now public. At the outset of this case, the Government claimed it could not confirm or deny the existence of these legal memoranda lest it confirm that the Government was involved in al-Awlaki's death. This position was untenable, and was abandoned by the Government midway through this litigation, after FAC the Court spent considerable time and effort on these Glomar issues. Then, the Second Circuit ordered the release of the OLC-DOD Memo. Next, because FAC persisted – and presented the specter of an adverse ruling by this Court and possibly the Ninth Circuit *even if* the Government was successful in obtaining *en banc* review of the Second Circuit's decision and/or review by the Supreme Court, the Government unilaterally changed its position against continuing to resist public disclosure of this memoranda. Thus FAC achieved the goals it sought in filing and pursing this FOIA litigation.

### C. The Government Fails To Put Forth Evidence Rebutting FAC's Position.

The Government is wrong to assert that its release of the legal memoranda in question, and its contradictory and shifting litigation positions, were motivated solely by the Second Circuit's opinion. It has failed to put forth any evidence to rebut FAC's position that it has been motivated in part by the pressure generated by this case to change its positions and release the memoranda. Indeed, the Government is silent in disclosing, for example, why it decided to change its position on Glomar responses in the middle of this litigation, why it decided to capitulate in the Second Circuit despite the fact that it takes the position that the Second Circuit's unanimous decision has little to no basis in the law and is damaging to national security, and why it decided to concurrently release the CIA Memo to FAC at the same time as it did in the Second Circuit. (If this case was over with the Court's initial order, as the Government maintains, why wouldn't the Government stick to that position and simply let FAC's Motion for Reconsideration

DAVIS WRIGHT TREMAINE LLP

1 play out?) Indeed, the only clue FAC was given as to the Government's motivation for the
2 release of the CIA Memo in this case is the fact that the Government asked if the release of such a
3 memo, combined with an assurance that it and the OLC-DOD Memo were the only responsive
4 documents in the case, would address any substantive issues in the case. It is undeniable that at
5 no time during the meet-and-confer process did the Government say its release to FAC was
6 motivated by the Second Circuit – and it has failed to offer any contrary evidence on that point.

### D. The Government Provides No Legal Basis For Denying A Fees Motion.

While FAC has provided a number of applicable cases justifying an award of attorneys fees in this case, the Government has failed to introduce significant legal authority compelling an opposite result, and also cannot distinguish the cases that weigh in FAC's favor. When confronted with a decision it does not like, the Government dismissively insists that the decision is just wrong – even if the Government tacitly accepted the decision by failing to appeal it. Here, the Government insists that despite its decision to let the Second Circuit's opinion stand, the Second Circuit's "conclusions were demonstrably wrong," and constituted "an incorrect circuit court decision based on deeply flawed legal reasoning." Opp. at 11, 15. The Government treats the only other case addressing a targeted-killing memorandum, and the one most on point here, with a similar degree of contempt for the judiciary. *See* Ex. K, *Public Record Media v. DOJ*. The Government dismisses that decision, where the Court awarded attorneys fees to the plaintiff even though the plaintiff only received a clarification of an initial FOIA response[7] and where, unlike here, the Plaintiff never received a single document, as "plainly incorrect in light of the well-established standard for 'substantially prevailing'" and argues it is of no account because it was a mere "magistrate recommendation." (The Government fails to mention that the District Court adopted and upheld the recommendation twice in the face of its opposition.) The message of the Government's argument with respect to these two "wrong" cases is simple in its arrogance

---

[7] The Government's abandonment of Glomar responses in this case alone was a more significant victory than the plaintiff in *Public Record Media* achieved.

– that it can pick and choose which cases are entitled to its deference.[8]

In attempting to distinguish the other cases cited by FAC – the Government ignores key aspects of the procedural history in this case. For example, in distinguishing *Yonemoto v. Dep't of Veterans Affairs,* 549 Fed. Appx. 627 (9th Cir. 2013) and *Hajro v. USCIS,* 900 F. Supp. 2d 1034 (N.D. Cal. 2012), the only distinction the Government can point to is the lack of an earlier adverse ruling in those cases. However as pointed out above, the adverse ruling in this case was based on incomplete information *and* was under review by this Court until unilaterally mooted by the Government. Similarly, the Government attempts to distinguish *Exner v. FBI,* 443 F. Supp. 1349 (S.D. Cal. 1978) and *Harrison Bros. Meat Packing Co. v. Dep't of Agriculture,* 640 F. Supp. 402 (M.D. Pa. 1986), by stating that, in those cases, litigation clearly led to the release of documents. This is no distinction at all – the Government unconditionally released the OLC-CIA memorandum in this case. Additionally, in the case of *Exner*, the only difference caused by the litigation was that the document, which would have been released anyway, was expedited. FAC's cases are controlling.

The authorities cited by the Government are not applicable here. For example, in *Laughin v. Commissioner*, 117 F. Supp. 2d 997, 1002 (S.D. Cal. 2000), the court found that there was "no conceivable public purpose to the lawsuit" and "no reason to believe that its disclosure promotes the public interest as it appears to be nothing more than the private opinions of a single former government agent." The court recognized there was "no apparent public benefit to the release of such material; this information in no way furthers the FOIA's goal of 'shedding light on an agency's performance of its statutory duties…'" *Id.* Similarly, because the commercial incentive in that case was sufficient to support the litigation – there was no need to incentivize the suit with an award of fees. *Id.* at 1002-1003. Here, in contrast, the Government does not, and simply cannot claim that there is no public interest or that the aim of the suit was not to gain insight into

---

[8] The Executive Branch is co-equal, not superior, to the Judiciary, the Constitution does not give it the power to decide which federal court decisions are correct and worthy of being called authority, and which federal court decisions it gets to overrule. *See*, *e.g., Marbury vs. Madison,* 5 U.S. 137, 177 (1803) ("It is emphatically the province and duty of the judicial department to say what the law is.").

DAVIS WRIGHT TREMAINE LLP

the workings of an agency. *Hersh & Hersh v. U.S. Dept. of Health and Human Services,* 2008 WL 2725497 at *1 (N.D. Cal., 2008), is also distinguishable, as the plaintiff in that case received only 18 out of approximately 4000 documents sought. This is clearly distinguishable from this case, where FAC received all of the documents it sought – indeed, its primary goal in this case was to get the legal authority the Government relied upon when making its determination. Dkt. 77 at 10. And unlike *Waage v. IRS*, 656 F. Supp. 2d 1235, 1239 (S.D. Cal. 2009), there is no settlement in this case, only the Government's unilateral action.

## III. CONCLUSION

FAC's lawsuit embraces the spirit and purpose of FOIA. Seeking to contribute to the public's understanding of important constitutional questions of due process and the limits of Executive authority – FAC set out to uncover documents that clearly explained how the Government determined it was legal to kill a United States citizen without involvement of the Judiciary. Rather than simply release this memoranda in redacted form, over the last three years, the Government has sought to delay and obfuscate the issues, while shifting its position whenever politically expedient. It has tested the time and resources of FAC and the Court to very little end – electing to capitulate in the Second Circuit and circumvent FAC's pending Motion for Reconsideration. This capitulation, in New York and Oakland, constitutes a unilateral change in position. The Government's unjustified intransigence, in the face of an effort by fellow citizens merely to determine the Government's legal reasoning, should compel the Court to award fees.

DATED: This 14th day of November, 2014

DAVIS WRIGHT TREMAINE LLP


By: _____  */s/ Thomas R. Burke*
Thomas R. Burke
Attorneys for Plaintiff
FIRST AMENDMENT COALITION